**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVER-SITY,<br><br>    Plaintiff,<br><br>  v.<br><br>DOUGLAS BURGUM, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR, et al.,<br><br>    Defendants. | Case No. 1:25-cv-4285 (CJN) |

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

LEGAL BACKGROUND ............................................................................................................... 2

    I.      Federal Lands Recreation Enhancement Act ........................................................... 2

    II.     Administrative Procedure Act ................................................................................... 4

FACTUAL BACKGROUND .......................................................................................................... 4

STANDARD OF REVIEW ............................................................................................................. 6

ARGUMENT .................................................................................................................................. 6

    I.      Plaintiff lacks Article III standing. ........................................................................... 7

          A.     Plaintiff fails to establish associational standing. ....................................... 7

          B.     Plaintiff fails to establish organizational standing. .................................. 12

CONCLUSION ............................................................................................................................. 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................................................1, 11

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017) ............................................................................ 10

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ............................................................................. 6

*Chamber of Commerce v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ............................................................................. 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................... 10

*Env't Def. Fund v. FERC,*
  2 F.4th 953 (D.C. Cir. 2021) ............................................................................... 9

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ..........................................................................1, 2, 9, 11, 12

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ........................................................................... 12

*He Depu v. Yahoo! Inc.*,
  950 F.3d 897 (D.C. Cir. 2020) ............................................................................. 5

*Huron v. Berry*,
  12 F. Supp. 3d 46 (D.D.C. 2013) ......................................................................... 9

*Karst Envt. Educ. & Prot., Inc. v. EPA*,
  475 F.3d 1291 (D.C. Cir. 2007) ........................................................................... 4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ............................................................................................. 6

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
  507 U.S. 163 (1993) ............................................................................................. 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 7, 10

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989) ............................................................................................. 4

*N.Y. Republican State Comm. v. SEC*,
  927 F.3d 499 (D.C. Cir. 2019) ..................................................................10, 11, 12

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales,*
  468 F.3d 826 (D.C. Cir. 2006) ................................................................................................ 9

*Sierra Club v. EPA,*
  292 F.3d 895 (D.C. Cir. 2002) ................................................................................................ 7

*Spokeo, Inc. v. Robins,*
  579 U.S. 330 (2016) ....................................................................................................7, 10, 11

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ................................................................................................................. 6

*Stover v. Nat'l Park Serv.,*
  2025 WL 3467585 (D.D.C. Dec. 3, 2025) .............................................................................. 9

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................................................................. 10

*Town of Chester v. Laroe Estates, Inc.,*
  581 U.S. 433 (2017) ............................................................................................................... 7

*Trudeau v. FTC,*
  456 F.3d 178 (D.C. Cir. 2006) ............................................................................................... 4

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State,*
  454 U.S. 464 (1982) ............................................................................................................. 12

*Ward v. D.C. Dept. of Youth Rehabilitation Servs.,*
  768 F. Supp. 2d 117 (D.D.C. 2011) ....................................................................................... 5

**Statutes**

16 U.S.C. § 6804(a)(5) ................................................................................................................. 3

16 U.S.C. § 6801(11)(A)-(B) ....................................................................................................... 2

16 U.S.C. § 6801(7) ...................................................................................................................... 3

16 U.S.C. § 6802(a) .................................................................................................................. 1, 2

16 U.S.C. § 6804(a)(1) .............................................................................................................. 1, 3

16 U.S.C. § 6804(a)(10) ................................................................................................................ 5

16 U.S.C. § 6804(a)(2) ..................................................................................................... 1, 3, 5, 8

16 U.S.C. §§ 6801(3)-(4) .............................................................................................................. 3

16 U.S.C. §§ 6807(a)(3)(A)-(D) ................................................................................................... 3

5 U.S.C. § 706(2)(A), (D) ............................................................................................................. 4

U.S. Const. art. III, § 2, cl. 1 ......................................................................................................... 1

iii

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 2, 6, 13

**<u>INTRODUCTION</u>**

Plaintiff brings this lawsuit because it objects to the use of President Trump's image on a national park pass. But Plaintiff's aesthetic and political objections to the use of President Trump's image do not establish the injury in fact required to support Article III standing. Standing doctrine ensures that federal courts resolve only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. It does not provide a forum "for the vindication of the value interests of concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984). To hold otherwise would transform federal courts into "a system where 330 million citizens can come into federal court whenever they believe that the government is acting contrary to the Constitution or other federal law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Instead, Article III's injury-in-fact requirement "screens out plaintiffs who might," as here, "have only a general legal, moral, ideological, or policy objection to a particular government action." *Id.* at 381.

Congress enacted the Federal Lands Recreation Enhancement Act ("FLREA") to enable the Department of the Interior and the Department of Agriculture to collect and use recreation fees to provide access and recreational opportunities on federal recreational lands and waters. 16 U.S.C. § 6802(a). A critical part of FLREA is the "America the Beautiful—the National Parks and Federal Recreational Lands Pass" ("Interagency Pass"), which provides passholders access to certain federal recreational lands and waters. *Id.* § 6804(a)(1). Since 2006, Defendants have held, as FLREA requires, an annual competition to select an image for the Interagency Pass. *Id.* § 6804(a)(2). For the 2026 Interagency Pass, the Secretaries used the contest-winning photograph on the non-resident version of the Interagency Pass, and they used an image of President Trump alongside

1

President Washington ("Challenged Image") for the resident version of the Interagency Pass.[1] Plaintiff sued arguing that the use of the Challenged Image violated FLREA.

But Plaintiff fails to allege an injury-in-fact to a legally protected interest. Plaintiff has no legally protected interest in ensuring that the Interagency Pass's artwork is palatable to it or its members. Nor does the selection of the Challenged Image for the resident versions of the 2026 Interagency Pass subject Plaintiff's members to a so-called "Hobson's choice"—between suffering an ongoing aesthetic harm from purchasing an Interagency Pass with the Challenged Image or foregoing the Interagency Pass's access-related benefits, *see* Compl. ¶ 15, Dkt. 1—that could confer standing. Any injury that Plaintiff's members incur by choosing not to purchase the Interagency Pass would be self-inflicted and insufficient to confer standing. Instead, Plaintiff alleges only a legal objection to the Secretaries' alleged violation of FLREA—precisely the generalized injury to the public interest that the Supreme Court has time and again said does not support standing. *See Hippocratic Med.*, 602 U.S. at 381-82. Nor can Plaintiff establish organizational standing because it fails to allege any direct interference with its "core business activities." This Court should dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); (h)(3).

## LEGAL BACKGROUND

### I.    Federal Lands Recreation Enhancement Act

FLREA provides that "the Secretary may establish, modify, charge, and collect recreation fees" at federal recreational lands and waters. 16 U.S.C. § 6802(a).[2] And FLREA requires the

---

[1] Descriptions of the 2026 Resident and Non-Resident Interagency Passes are available at https://www.recreation.gov/interagency-pass/types/resident and https://www.recreation.gov/interagency-pass/types/nonresident (last visited March 23, 2026).

[2] FLREA defines "Secretary" to include the Secretary of the Interior and the Secretary of Agriculture, *see* 16 U.S.C. § 6801(11)(A)-(B), "Secretaries" to mean the Interior and Agriculture

Secretary to establish (and charge fees for) "an interagency national pass"—the Interagency Pass. *Id.* § 6804(a)(1). The Secretary is required to "establish the price at which the [Interagency Pass] will be sold to the public." *Id.* § 6804(a)(5).

The Interagency Pass is good "for a period of 12 months from the date of the issuance" and covers entrance fees and standard amenity recreation fees, whenever those fees are charged. *Id.* §§ 6804(a)(1), (4), (6)(A)(i)(I) . FLREA requires the Secretary to provide discounted or free Interagency Passes based on age and military service, as well as lifetime passes for persons with disabilities, military veterans, and Gold Star families, but the Interagency Pass (and the related lifetime pass) provides the passholder with the same benefits, regardless of how it is issued, *id.* §§ 6804(b)(1)-(3)—*i.e.*, covers entrance fees and standard amenity recreation fees whenever they are charged. Fee revenues must generally be used to benefit visitors, including facility maintenance and repair, improving visitor services, law enforcement, and habitat restoration directly related to wildlife-dependent recreation. *Id.* §§ 6807(a)(3)(A)-(D).

FLREA requires the Secretaries to hold "an annual competition to select the image to be used on the [Interagency Pass]." *Id.* § 6804(a)(2) . "The competition shall be open to the public and used as a means to educate the American people about Federal recreational lands and waters." *Id.*

---

Secretaries acting jointly, *id.* § 6801(10), "recreation fee" to include "an entrance fee, standard amenity recreation fee, expanded amenity recreation fee, or special recreation permit fee, *id.* § 6801(7), and "Federal recreational lands and waters" to include "lands or waters managed by a Federal land management agency"—*i.e.*, "National Park Service," "United States Fish and Wildlife Service," "Bureau of Land Management," "Bureau of Reclamation," or "Forest Service," *id.* §§ 6801(3)-(4).

## II.    Administrative Procedure Act

FLREA does not provide a private right of action, so Plaintiff must rely on the APA's cause of action for their statutory claims. *Karst Env't. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). The APA supplies a "limited cause of action for parties adversely affected by agency action," *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006), and allows a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed" and to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law," 5 U.S.C. § 706(1), (2)(A), (2)(D);  *see also Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989).

## FACTUAL BACKGROUND

Since its enactment, FLREA has "enable[ed] federal agencies to provide consistent, safe, and high-quality recreational opportunities on federal lands and waters." Compl. ¶ 24. FLREA's success "would not be possible without the … interagency Recreation Fee Program," which "enable[s] collection of fees from visitors at sites across the country, and facilitate[s] the use of those fees … to sustain and enhance visitor experiences." *Id.* The Secretaries' 2024 Report to Congress shows that in FY 2023, 4,630 recreation sites (out of roughly 34,600 recreation sites) charged recreation fees. *Id.* ¶ 25. And in FY 2023, the agencies collected $601.7 million in recreation fee revenue, with $482.3 million collected at specific recreation fee sites and $119.4 million collected from interagency pass sales. *Id.* ¶ 26. The Interagency Pass, which provides convenient and cost-effective access to various federal recreational lands and waters, is central to FLREA's Recreation Fee Program. *See id.* ¶ 28.

4

FLREA directs the Secretaries to hold an annual competition to select the image to be used on the Interagency Pass. *See* 16 U.S.C. § 6804(a)(2). The Secretaries and the National Park Service contracted with the National Parks Foundation to run the annual competition, and the Foundation partnered with Booz Allen Hamilton to run the competition website. *See* Compl. ¶ 33. The 2026 Interagency Pass competition opened on June 13, 2024, and ran through December 31, 2024. *See id.* ¶¶ 32, 47; *see also* 2024 Share the Experience Official Rules ("2024 Official Rules") at 1, attached as Exhibit A.[3] The contest rules provided that the winning photograph "may be featured on the 2026 [Annual] Pass." 2024 Official Rules at 4. In June 2025, the Foundation announced the winners of the 2024 competition, including the first-place winner—an image of Glacier National Park. *See* Compl. ¶ 38; *see also* 2024 'Share the Experience' Winning Photograph (last accessed March 23, 2026).

In November 2025, the Department of the Interior announced a "significant modernization of national park access." Compl. ¶ 39; *see also* Department of the Interior Announces Modernized, More Affordable National Park Access (last accessed March 23, 2026). This modernization included new digital recreation passes mandated by FLREA, *id.*, *see also* 16 U.S.C. § 6804(a)(10), along with a resident-focused fee structure that charged residents $80 and non-residents $250 for the Interagency Pass. *See* Compl. ¶ 40. Interior clarified that an image of President Trump and

---

[3] "In deciding a motion to dismiss, a court may … consider documents 'attached to or incorporated in the complaint.'" *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 901 (D.C. Cir. 2020). Plaintiff references the official contest rules in its Complaint but does not attach the rules themselves. *See* Compl. ¶¶ 4, 34, 43. For the Court's convenience, Defendants include those rules as Exhibit A. *See Ward v. D.C. Dept. of Youth Rehabilitation Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (courts may consider, on a motion to dismiss, "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (citation modified)).

5

President Washington would be on the resident Interagency Pass, while the contest-winning image of Glacier National Park would be on the non-resident Interagency Pass. *See id.* ¶ 42.

Two weeks later, Plaintiff sued claiming that the Secretaries violated FLREA and the APA by not using the contest-winning photograph on all versions of the Interagency Pass. *See* Compl. ¶¶ 45-52. Plaintiff asks the Court to "[v]acate and remand" the decisions related to the 2026 Interagency Pass for "further consideration and explanation," and to enjoin "use of any [Interagency Pass] that unlawfully displays an image of President Trump unless and until Defendants comply with [FLREA] and [APA]." *Id.* Prayer for Relief ¶¶ 2-3.

## STANDARD OF REVIEW

Standing is a threshold jurisdictional issue that must be addressed before considering the merits. *Steel Co. v. Citizens for a Better Env't* 523 U.S. 83, 94-95 (1998). The party asserting jurisdiction must establish by a preponderance of the evidence that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. *Id.* When evaluating a Rule 12(b)(1) motion, courts must accept the allegations in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). But courts need not draw inferences in a plaintiff's favor if those inferences are unsupported by facts alleged in the complaint, nor must a court accept a plaintiff's legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ARGUMENT

Plaintiff fails to show any injury in fact to a legally protected interest sufficient to support either associational or organizational standing. For these reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

### I.    Plaintiff lacks Article III standing.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must establish: (1) an injury in fact to a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) fairly traceable to the challenged action of the defendant; and (3) likely that the injury will be redressed by a favorable decision. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (quoting *Spokeo, Inc. v. Robins*, 579 U.S. 330, 338 (2016)). At the pleading stage, a plaintiff must "clearly allege facts demonstrating" each standing element. *Spokeo*, 578 U.S. at 338 (citation modified).

### A.  Plaintiff fails to establish associational standing.

To establish associational standing, an organization must show that "(1) at least one of its members would have standing to sue in [his or her] own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). Plaintiff fails to identify a single member allegedly injured by the Secretaries' use of the Challenged Image on the Interagency Pass. This failure is a sufficient basis to find that Plaintiff failed to show associational standing. *Chamber of Commerce v. EPA*, 642 F.3d 192, 199-200 (D.C. Cir. 2011) (plaintiff "must specifically 'identify members who have suffered the requisite harm'" (citation omitted)). But even assuming Plaintiff identified specific members, it still fails to show that the challenged decision injured any of its members' "legally protected interest[s]." *Lujan*, 504 U.S. at 560.

Construed generously, Plaintiff alleges injury to its members from: (1) the "Hobson's choice" of "participat[ing] in unlawful partisan activity they disagree with and being subjected to

7

a recurring aesthetic harm from buying and using an Interagency Pass adorned with Trump's visage" rather than the contest-winning image *or* "forgoing entirely the monetary and other benefits of buying" an Interagency Pass, Compl. ¶ 15; (2) reduced revenues to federal land management agencies that would diminish the visitor amenities that Plaintiff's members use and rely on, *id.* ¶¶ 11-12; (3) the "unlawful disregard of the public participation opportunities mandated by FLREA," *id.* ¶ 14.[4] None of these alleged injuries satisfy Article III's injury-in-fact requirement.

**Hobson's Choice.** Plaintiff alleges that its members face a "Hobson's choice" between "being subjected to a recurring aesthetic harm from buying and using an Interagency Pass adorned with [President] Trump's visage" or "forgoing entirely the monetary and other benefits of buying a pass."[5] Compl. ¶ 15. But this alleged harm does not constitute a concrete injury to a legally protected interest that gives rise to standing. FLREA—which allows certain agencies to collect and retain recreation fees to improve on-site facilities, maintain public lands, and provide on-site visitor services—does not secure a legally protected interest for Plaintiff's members in the use of an image on the Interagency Pass that appeals to their aesthetic interests. Plaintiff fails to include any allegations suggesting that any of its members have been excluded from, or otherwise denied access to, any federal recreational lands. Nor would Plaintiff's members suffer an injury "simply because [they] believe[] that the government is acting illegally,"—even if "their legal objection is

---

[4] Plaintiff also alleges that "the image on the new Annual Resident Pass … does not educate the public about public lands, as mandated by FLREA." Compl. ¶ 43. But FLREA requires Defendants to use the "*competition*"—not the pass image—"to educate the American people about Federal recreational lands and waters." *See* § 6804(a)(2)  (emphasis added); *accord* Compl. ¶¶ 4, 32, 46.

[5] To the extent Plaintiff suggests that it and its members have an aesthetic interest in enjoying the specific annual contest-winning image of Glacier National Park, Compl. ¶¶ 6, 15, the image is available for continued enjoyment on the non-resident version of the 2026 Interagency Pass, *id.* ¶¶ 42, 50, and online at https://www.sharetheexperience.org/spotlights. Plaintiff thus fails to show that it or its members will lose access to an image of a natural vista that holds aesthetic interest for them.

accompanied by a strong moral, ideological, or policy objection." *Hippocratic Med.*, 602 U.S. at 381. And Plaintiff fails to explain how its members' alleged harm from the use of the Challenged Image is unique from that of the public. "Viewed in full frame," these "alleged aesthetic injuries reflect nothing more than generalized grievances, which cannot support standing." *Env't Def. Fund v. FERC*, 2 F.4th 953, 970 (D.C. Cir. 2021).

Nor would Plaintiff's members' decision not to buy the Interagency Pass because of the Challenged Image satisfy Article III's injury-in-fact requirement. Any injury flowing from that decision would be self-inflicted and could not give rise to standing. *See Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a cognizable "injury," nor is it "fairly traceable to the defendant's challenged conduct"); *see also Stover v. Nat'l Park Serv.*, 2025 WL 3467585, at *3 n.2 (D.D.C. Dec. 3, 2025) ("If [the plaintiff] chose not to enter Hyde Park because of this principled objection, as she alleges she did in January 2024, that too would be a self-inflicted harm that would not satisfy the injury-in-fact requirement." (internal quotation marks omitted)); *accord See Huron v. Berry*, 12 F. Supp. 3d 46, 52 (D.D.C. 2013) ("Causation cannot exist when the injury alleged is self-inflicted."). Not only that but not buying an Interagency Pass does not prevent Plaintiff's members from accessing any federal recreational lands and waters—rather, the Interagency Pass provides that same access at a more favorable cost.

**Reduced Revenues.** Plaintiff alleges that its members rely on "proper functioning of FLREA to ensure a consistent and reliable funding stream for the creation, operation, and maintenance of the visitor amenities which they utilize and upon which they depend." Compl. ¶ 11. And Plaintiff speculates that if its members opt not to buy the Interagency Pass, the federal land management agencies may be "deprived of essential funding for their operations," which in turn

9

"would result in the diminishment of the amenities that the public, including Center members, rely upon." *Id.* ¶ 12. But these hypothetical injuries to the federal land management agencies' general operations and funding do not impair Plaintiff's (or its members') legally protected interests—rather, they are mere generalized grievances that cannot support standing.

Even assuming Plaintiff's attenuated causal chain—that use of the Challenged Image would result in fewer Interagency Pass sales, reduced revenue for federal land management agencies, and ultimately in diminished visitor amenities—could support an Article III injury, Plaintiff's allegations fail to show an injury. Plaintiff's allegations are far too general to show "actual or imminent" injuries—at most, Plaintiff alleges only "conjectural or hypothetical" *future* injuries. *Spokeo*, 578 U.S. at 339. But to plausibly allege a *future* injury, Plaintiff must show that its harm is either "certainly impending" or that there is a "substantial risk" it will occur, which in the standing context means that it must be "sufficiently imminent." *N.Y. Republican State Comm. v. SEC*, 927 F.3d 499, 504 (D.C. Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013), *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), and *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017)). Plaintiff relies on conjecture alone to allege that the Challenged Image will cause Interagency Pass sales to decline and reduce revenues available to federal land management agencies, much less that any such lost revenue will affect its members' ability to enjoy federal lands. *See Lujan*, 504 U.S. at 564 n.2 & 566 (injury must be "at least *imminent*," not a "conceivable" or "speculative possibility"). Indeed, Plaintiff fails to include any allegations to suggest that reduced Interagency Pass sales or reduced revenues are "certainly impending" or "sufficiently imminent." *N.Y. Republican State Comm.*, 927 F.3d at 504. Plaintiff therefore fails to

10

allege that any harm—such as a diminishment in available amenities—will occur at a certain point without a certain volume of Interagency Pass sales.[6]

**Generalized Objection.** Plaintiff also alleges that its members are harmed from the use of an image on the resident Interagency Pass that was not part of the annual image competition. Compl. ¶¶ 14, 42, 43. But Plaintiff must allege more than "a bare procedural violation, divorced from any concrete harm … [to] satisfy the injury-in-fact requirement." *Spokeo*, 578 U.S. at 341; *see also id.* ("Article III standing requires a concrete injury even in the context of a statutory violation."). So, Plaintiff must plead facts showing that this alleged violation of law harmed its members—or that they face the risk of actual and imminent harm—to satisfy Article III's injury-in-fact requirement. *Id.* But Plaintiff cannot show injury in fact "based only on an 'asserted right to have the Government act in accordance with law,'" *Hippocratic Med.*, 602 U.S. at 381 (quoting *Allen*, 468 U.S. at 754)—even if accompanied by strong ideological or policy objections.

Plaintiff alleges that the selection of the Challenged Image for the 2026 resident Interagency Pass harms "not just the winner of the most recent contest, but anyone, including [Plaintiff's] members, who competed in the contest or considered competing in the current or a future contest." Compl. ¶ 14. But Plaintiff fails to allege with specificity that *any* of its members submitted an entry for the image competition—much less the winning image—or otherwise suffered any concrete harm from Defendants' decision to use the Challenged Image for the 2026 resident Interagency Pass and the winning image for the 2026 non-resident Interagency Pass. And as much as

---

[6] For the same reasons, Plaintiff fails to show an injury in fact sufficient to support organizational standing—*i.e.*, "direct[] … interfere[nce] with [its] core business activities." *Hippocratic Med.*, 602 U.S. at 395. That is, Plaintiff fails to show that Interagency Pass sales have declined, that sales of the non-resident Interagency Pass will not cover any reduced revenues, or that any reduced funding to federal land management agencies is "certainly impending" or "sufficiently imminent." *See N.Y. Republican State Comm.*, 927 F.3d at 504.

Plaintiff's allegations relate to *future* contests, any such harm is far too speculative to support standing. *See N.Y. Republican State Comm.*, 927 F.3d at 504.

### B. Plaintiff fails to establish organizational standing.

To determine whether an organization has standing to sue, courts conduct the same inquiry as they do for individual plaintiffs. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). An organization cannot show standing based on "'the intensity of [its] interest' or because of strong opposition to the government's conduct." *Hippocratic Med.*, 602 U.S. at 394 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 486 (1982)). Rather, an organization must show that the defendant's conduct "directly affected and interfered with [its] core business activities." *Id.* at 395. Plaintiff fails to make that showing.

Plaintiff fails to allege that any conduct or decision by the Secretaries "directly affected [or] interfered with [its] core business activities," *id.*—*i.e.*, various advocacy and educational activities. *See* Compl. ¶¶ 10-11. Plaintiff broadly alleges that it relies "upon the proper functioning of FLREA to ensure a consistent and reliable funding stream for the creation, operation, and maintenance of the visitor amenities" and any "action by the Secretaries that would prevent, impair, or discourage" the purchase of interagency national passes "would result in the diminishment of the amenities," thereby "harming the Center and its members." *Id.* ¶¶ 11-13. But here too Plaintiff's standing is based on contingent future events that are several steps removed from its core business activities—Plaintiff fails to show that any potential reduced Interagency Pass sales will cause more than conjectural or hypothetical interference with its core business activities. *See supra* note 6. Nor does Plaintiff identify any organizational activities that have been impeded by the use

of the Challenged Image on the Interagency Pass. Plaintiff therefore fails to allege an injury in fact sufficient to support organizational standing.

## **CONCLUSION**

The Court should dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

Respectfully submitted this 23rd day of March 2026.

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

Peter M. Torstensen, Jr.
Deputy Assistant Attorney General


*/s/ Alexa V. Penalosa*
Alexa V. Penalosa (AZ 038005)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street NE
Washington, D.C. 20002
Phone: (202) 305-0492
Email: alexa.penalosa@usdoj.gov


*Attorneys for Defendants*

13