**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Plaintiff,*<br><br>v.<br><br>DOUGLAS J. BURGUM, Secretary, U.S. Department of the Interior, *et al.*,<br><br>*Defendants*. | Civil Action No.: 1:25-cv-04285 (CJN)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

DATED:    April 27, 2026

Respectfully submitted,

*/s/ Amy Atwood*
Amy R. Atwood Greenwald (D.C. Bar No. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

*Attorney for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES --------------------------------------------------------------------------- i

LIST OF EXHIBITS ---------------------------------------------------------------------------------- v

LIST OF ACRONYMS AND SHORT NAMES -------------------------------------------------- vi

INTRODUCTION ------------------------------------------------------------------------------------- 1

LEGAL BACKGROUND ---------------------------------------------------------------------------- 6

    A. The Federal Lands Recreation Enhancement Act ----------------------------------------- 6

    B. The Recreation Fees Program under FLREA --------------------------------------------- 6

    C. The America the Beautiful-The National Parks and Federal Recreational Lands Pass -- 11

    D. The Share the Experience Photo Contest ------------------------------------------------ 13

FACTUAL BACKGROUND ------------------------------------------------------------------------ 15

    A. The Recreation Fee Program and Its Revenues ----------------------------------------- 15

    B. Implementation of the America the Beautiful Pass ------------------------------------- 15

    C. The 2026 America the Beautiful Pass --------------------------------------------------- 17

ARGUMENT ----------------------------------------------------------------------------------------- 24

    I. THE CENTER HAS ASSOCIATIONAL STANDING. ------------------------------------ 24

        A. The Center Has Members Who Would Have Standing to Sue in Their Own Right. ------------------------------------------------------------------------------------------------- 24

        1. Plaintiff's Members Have Legally Cognizable Interests in the ATB Pass. ------------ 25

            a. The Secretaries' FLREA Violations Result in Injury-in-Fact to the Interests of Plaintiff's Members. ------------------------------------------------------------------- 30

            b. The Injuries-in-Fact of the Center's Members are Fairly Traceable to Defendants' Unlawful Use of the Trump Image on the 2026 Pass. ----------------------------- 34

            c. The Requested Relief Will Redress the Injuries of Plaintiff's Members. --------- 36

        2. The Interests of the Center's Members are Germane to its Purpose. ------------------ 37

        3. Neither the the Center's Claim Nor Its Requested Relief Require Its Members to Participate in this Lawsuit. ----------------------------------------------------------------- 38

    II. THE 2026 AMERICA THE BEAUTIFUL—THE NATIONAL PARKS AND FEDERAL RECREATIONAL LANDS PASS IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO FLREA. --------------------------------------------------------------- 38

    III. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO PLAINTIFF AND GRANT THE REQUESTED RELIEF. ----------------------------------------------------- 41

## TABLE OF AUTHORITIES

### CASES

*Adams v. U.S. Forest Serv.*, 671 F.3d 1138 (9th Cir. 2012)-------------------------------------------- 11

*\*Allied-Signal v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) -- 43

*\*Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024) ------------------- 34, 36

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334 (D.C. Cir. 2003)----------- 33

*Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) ----------------------- 38

*\*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ---------------------------------------- 32, 36

*\*Dep't of Com. v. New York*, 588 U.S. 752 (2019)------------------------------------------------ 42

*\*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)------ passim

*Kotab v. BLM*, 546 F.Supp.3d 1012 (D. Nev. 2021)------------------------------------------------ 30

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)----------------------------------------------- 30

*Melkumyan v. Power*, No. 21-2700, 2022 U.S. Dist. LEXIS 130888 (D.D.C. July 22, 2022) ----- 5

*Murthy v. Missouri*, 603 U.S. 43 (2024)----------------------------------------------------- 32, 36

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826 (D.C. Cir. 2006)---- 36

*Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*, No. 25-4316 (RJL), 2026 LX 157394

(D.D.C. Mar. 31, 2026) --------------------------------------------------------------------- 41

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) --------------------------------------------- 26

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)--------------------------------------------------- 30

*\*Sturgeon v. Frost*, 587 U.S. 28 (2019)-------------------------------------------------------- 41

*Summers v. Earth Is. Inst.*, 555 U.S. 488 (2009) ---------------------------------------------- 30

*\*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)---------------------------------------------- 30

*United States v. Smith*, 740 F.Supp.2d 1111 (D. Ariz. 2010) ---------------------------------- 11

*Warth v. Seldin*, 422 U.S. 490, 504 (1975)----------------------------------------------------- 38

### STATUTES

16 U.S.C. § 6801(1) ---------------------------------------------------------------------------- 7

16 U.S.C. § 6801(2) ---------------------------------------------------------------------------- 8

i

\*16 U.S.C. § 6801(3)------------------------------------------------------------------------------- 6, 16

\*16 U.S.C. § 6801(4)-------------------------------------------------------------------------------- 3

\*16 U.S.C. § 6804(a)(8) ---------------------------------------------------------------------------- 2

16 U.S.C. § 6801(15)------------------------------------------------------------------------------- 7

16 U.S.C. § 6802------------------------------------------------------------------------ 6, 7, 8, 12

16 U.S.C. § 6803------------------------------------------------------------------------------------ 7

\*16 U.S.C. § 6804 ------------------------------------------------------------------------------- 27

\*16 U.S.C. § 6804(a)------------------------------------------------------------------------ 14, 15, 21

16 U.S.C. § 6804(a)(1)------------------------------------------------------------------------ 15

\*16 U.S.C. § 6804(a)(2) ------------------------------------------------------------------------ passim

16 U.S.C. § 6804(b) ------------------------------------------------------------------------- 15

16 U.S.C. § 6806(b) ------------------------------------------------------------------------- 11

16 U.S.C. § 6806(c) --------------------------------------------------------------------------- 8, 11, 28

16 U.S.C. § 6808------------------------------------------------------------------------------- 12

16 U.S.C. § 6810(d) ------------------------------------------------------------------------- 14

\*5 U.S.C. § 706(2)(A)------------------------------------------------------------------------ 43

Expanding Public Lands Outdoor Recreation Experiences Act was enacted on January 4, 2025.
138 Stat. 2836 ---------------------------------------------------------------------------- 21

Land and Water Conservation Fund Act of 1965, Pub. L. No. 88-578, 78 Stat. 897 (1964) ------- 9

Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, §
315(a), 110 Stat. 1321, 1321-204 (1996) ----------------------------------------------------- 10

Water Resource Development Acts, most recently in 2024 (Pub. L. No. 118-272, 138 Stat. 2992
(2024)------------------------------------------------------------------------------------------- 7

## OTHER AUTHORITIES

110 S. RPT. 350 (2008) ----------------------------------------------------------------------- 16

2026 H.R. 7251; 119 H.R. 7251 (Jan. 27, 2026); 2026 S. 3735; 119 S. 3735 (Jan. 29, 2026) --- 25

Chief Official White House Photographer, Wikipedia
https://en.wikipedia.org/wiki/Chief_Official_White_House_Photographer (last visited Apr. 23, 2026)----------------------------------------------------------------------------------------------- 23

Exec. Order No. 14314, 90 Fed. Reg. 30201 (July 9, 2025) ----------------------------------------- 20

*Federal Lands Recreation Enhancement Act: Hearing Before the Subcomm. on National Parks of the Com. on Energy and Natural Resources*, 109th Cong. 11 (2005) ------------------------ 13

H.R. Rep. No. 108-790 (2004)------------------------------------------------------------------------- 11

*Recreation Fees: Hearing on S. 2473 and S. 2607 Before the Subcomm. on Energy and Nat. Res.*, 107th Cong. 17 (2002) ----------------------------------------------------------------- 10, 13, 15, 30

S. Rep. No. 108-233 (2004) --------------------------------------------------------------------------- 10

S. REP. NO. 110-377 (2008) --------------------------------------------------------------------------- 31

**LIST OF EXHIBITS**

| Exhibit | Full Citation | Short Name |
|---|---|---|
| 1 | AMERICA THE BEAUTIFUL: The National Parks and Federal Recreational Lands Annual Pass (Screenshot), *from* https://www.doi.gov/video/digital-park-passes | Trump Image |
| 2 | News Release, *Department of the Interior Announces Modernized, More Affordable National Park Access,* DOI et al. (Nov. 25, 2025) | DOI News Release |
| 3 | News Release, *2024 "Share the Experience" Winning Photographs Showcase the Beauty of America's Public Lands*, National Park Foundation, June 17, 2025 (excerpts) | Contest Winner Announcement |
| 4 | Akshay Joshi, *Glacier National Park* (photograph) | Glacier NP Image |
| 5 | Share the Experience 2024 Contest Official Rules | 2024 Contest Rules |
| 6 | Screenshot: 2026 Digital Resident Annual Pass (Recreation.gov), *from* https://www.recreation.gov/pass | 2026 Resident Annual Pass (Rec.gov) |
| 7 | REPORT TO CONGRESS: THE RECREATION FEE PROGRAM AUTHORIZED BY THE FEDERAL LANDS RECREATION ENHANCEMENT ACT (2024) (excerpts) | 6TH TRIENNIAL RPT. |
| 8 | U.S. GOV'T ACCOUNTABILITY OFF., GAO-02-10, RECREATION FEES: MANAGEMENT IMPROVEMENTS CAN HELP THE DEMONSTRATION PROGRAM ENHANCE VISITOR SERVICES (2001) (excerpts) | RECREATION FEES MGMT. (GAO) |
| 9 | BARRY T. HILL, U.S. GOV'T ACCOUNTABILITY OFF., GAO-04-745T, RECREATION FEES: COMMENTS ON THE FEDERAL LANDS RECREATION ENHANCEMENT ACT, H.R. 3283 (2004) (excerpts) | COMMENTS ON FLREA (GAO) |
| 10 | FEDERAL LANDS RECREATION ENHANCEMENT ACT SECOND TRIENNIAL REPORT TO CONGRESS (2009) (excerpts) | 2ND TRIENNIAL RPT. |
| 11 | TRIENNIAL REPORT TO CONGRESS: IMPLEMENTATION OF THE FEDERAL LANDS RECREATION ENHANCEMENT ACT (2012) (excerpts) | 3RD TRIENNIAL RPT. |
| 12 | IMPLEMENTATION OF THE FEDERAL LANDS RECREATION ENHANCEMENT ACT: TRIENNIAL REPORT TO CONGRESS (2015) (excerpts) | 4TH TRIENNIAL RPT. |
| 13 | IMPLEMENTATION OF THE FEDERAL LANDS RECREATION ENHANCEMENT ACT: TRIENNIAL REPORT TO CONGRESS (2021) (excerpts) | 5TH TRIENNIAL RPT. |

| 14 | Screenshot: 2026 Digital Resident Annual Pass, *from* U.S. Geological Survey, *from* https://www.recreation.gov/pass https://store.usgs.gov/2026-resident-annual-pass | 2026 Digital Resident Annual Pass (USGS) |
|----|---|---|
| 15 | Screenshot: 2026 Digital Resident Annual Pass, K. Suckling (Feb. 28, 2026) | 2026 Digital Resident Annual Pass, K. Suckling |
| 16 | AMERICA THE BEAUTIFUL: The National Parks and Federal Recreational Lands Annual Pass (Screenshot) (Glacier NP), *from* https://www.doi.gov/video/digital-park-passes | 2026 Nonresident Annual Pass |
| 17 | Screenshot: 2026 Digital Nonresident Annual Pass, *from* U.S. Geological Survey | 2026 Digital Nonresident Annual Pass (USGS) |
| 18 | Screenshot: 2026 Digital Resident Annual Pass, *from* Recreation.gov | 2026 Digital Nonresident Annual Pass (Rec.gov) |
| 19 | Share the Experience 2025 Contest Official Rules | 2025 Contest Rules |
| 20 | Table: America the Beautiful Annual Passes (2014-2025) | Table |
| 21 | Amanda Heidt, *Trump's face on national parks pass is illegal, experts say*, SFGate.com, Dec. 4, 2025 | Heidt, *SFGate.com* |
| 22 | Sam Hill, *DOI cracks down on stickers covering Trump's face on national park passes*, SFGate.com, Jan. 5, 2026 | Hill, *SFGate.com* |
| 23 | FAQs, Digital America the Beautiful Pass, *from* https://help.recreation.gov/helpcenter/en/digital-america-the-beautiful-passfaq?id=kb_article&sysparm_article=KB0012246 | FAQs |

## LIST OF ACRONYMS AND SHORTNAMES

| | |
|---|---|
| America the Beautiful Pass | America the Beautiful-The National Parks and Federal Lands Pass |
| ATB Pass | America the Beautiful-The National Parks and Federal Lands Pass |
| Contest | Share the Experience Photo Contest |
| DOI | U.S. Department of the Interior |
| Federal Recreation Agencies | National Park Service, Fish and Wildlife Service, Bureau of Land Management, Bureau of Reclamation, Forest Service |
| FWS | Fish and Wildlife Service |
| NPF | National Park Foundation |
| NPS | National Park Service |
| USDA | U.S. Department of Agriculture |

**INTRODUCTION**

In late November 2025, the Secretary of the U.S. Department of the Interior ("Secretary")

and the National Park Service ("NPS") unveiled the image to be used on the annual America the

Beautiful-The National Parks and Federal Lands Pass in 2026. Exhibit ("Ex.") 1 (2026 Digital

Resident Annual Pass, *from* Recreation.gov); Ex. 2 (News Release, *Department of the Interior*

*Announces Modernized, More Affordable National Park Access,* DOI et al. (Nov. 25, 2025) (DOI

News Release); Declaration of Amy Atwood ("Atwood Decl.") ¶ 1.[1]  As shown below, the image

featured President Donald Trump:



*Id.*

However, the "Trump Image" did not win—indeed, it would not have been eligible to

enter—the 2024 Share the Experience Photo Contest ("Contest"). Ex. 3 (*2024 "Share the*

*Experience" Winning Photographs Showcase the Beauty of America's Public Lands*, National

---

[1] Defendants are Douglas J. Burgum, in his official capacity as Secretary of the U.S. Department
of the Interior ("Secretary Burgum"); the U.S. Department of the Interior ("DOI"); the National
Park Service ("NPS"); Brooke Rollins, in her official capacity as Secretary of the U.S.
Department of Agriculture; and the U.S. Department of Agriculture ("USDA").

Park Foundation, June 17, 2025) ("Contest Winner Announcement").  That prize was awarded to the photographer who entered the following image featuring Glacier National Park:



*Id.*; Ex. 4 (Akshay Joshi, *Glacier National Park* (photograph)) ("Glacier NP Image"); Atwood Decl. ¶ 8.

The contrast between the two images is striking.  In one, a "breathtaking view at Glacier National Park unfolds as towering mountain peaks rise above alpine waters," as described by the announcement. Ex. 3 (Contest Winner Announcement) 3.  In the other, a politician's portrait glowers, positioned in the foreground against a dark canvas with George Washington's portrait pasted behind.  Devoid of Federal recreational lands or waters, the Trump Image could not qualify for entry in the Share the Experience Photo Contest, let alone win. *See* Ex. 5 (Share the Experience 2024 Contest Official Rules) ("2024 Contest Rules"); *infra* 16-17 (discussing rules of eligibility).

Yet, as mandated by Congress in the Federal Lands Recreation Enhancement Act, the Contest is the only lawful way for Secretary Burgum and the Defendants to select the image to be featured on the Annual Pass. 16 U.S.C. § 6804(a)(2); *id.* § 6804(a)(8) ("The Secretary may

2

not establish any national recreation pass, except as provided in this section.").  For the 2026

Annual Pass, that was the Glacier NP Image which—like every other Annual Pass Defendants

have sold since 2007—features "Federal recreational lands and waters" and can be "used as a

means to educate the American people about Federal recreational lands and waters." *Id.* §

6804(a)(2); *see also id.* § 6801(4) (defining "Federal recreational lands and waters" to means

"lands or waters managed by a Federal land management agency").  That is not what happened

here.

Thus, Plaintiff challenges Defendants' use of the Trump Image on the 2026 Annual Pass,

which went on sale on January 1, 2026 and remains the only national interagency pass available

to American citizens and residents. Ex. 6 (2026 Resident Annual Pass (Rec.gov)) (noting 2026

Pass is available only to U.S. citizens and residents); Suckling Decl. ¶ 19; Atwood Decl. ¶ 7.

3



The 2026 Pass depicts a politically partisan design that alienates Americans who do not support President Trump.  In addition to being inconsistent with FLREA and Defendants' own prior practice, it is inconsistent with their own prior announcement, five months earlier, that the Glacier NP Image *would* be featured on the 2026 Annual Pass. Ex. 3 (Contest Winner Announcement).

Plaintiff filed this case on December 10, 2025, a few weeks after Secretary Burgum's announcement. ECF No. 1. Ex. 2 (DOI News Release).  Since then, Defendants have focused their attention on questioning Plaintiff's standing to bring this case by filing a Motion to Dismiss

4

on March 23, 2026. ECF No. 9 (Motion to Dismiss).  However, as shown by the declarations

from five of its members and leadership in support of this Motion, the Center has standing to

challenge Defendants' unlawful use of the image on the 2026 Pass. ECF No. 15 (First Amended

Complaint ("FAC")) ¶¶ 10-19; Declaration of Ryan Deibert ("Deibert Decl."); Declaration of

Stephen Raher ("Raher Decl."); Declaration of Melanie Topham ("Topham Decl."); Declaration

of Brett Hartl ("Hartl Decl."); Declaration of Kierán F. Suckling ("Suckling Decl.").[2]

Each is an American citizen who purchases the America the Beautiful Pass due to the

cost-effectiveness and convenience it provides, as well as its educational, cultural, and aesthetic

qualities.  They would do so again in 2026.  Yet, with Defendants' use of the Trump Image, they

will not buy the 2026 Pass.  Doing so would mean that every time they were to reach in their

wallets and use it—to take their families on vacation, create memories, visit special places, go

somewhere new, i.e., to *recreate*—they would be reminded again of partisan politics in this

country, not of beautiful place where Americans of all political stripes may gather and take pride

in the spaces we all share.  As a result, their monetary, recreational, educational, environmental,

cultural, spiritual, and aesthetic interests in the America the Beautiful Pass, as well as the special

places on public lands they use it for, are harmed.

Defendants' decision is arbitrary, capricious, and contrary to FLREA in violation of the

APA.  The issues presented are legal in nature, and there are no material facts in dispute.  Thus,

Plaintiff respectfully requests the Court to grant summary judgment in its favor on its Claim for

---

[2] Defendants' Motion to Dismiss, ECF No. 11, is rendered moot by Plaintiff's First Amended
Complaint. ECF No. 15. *Melkumyan v. Power*, No. 21-2700, 2022 U.S. Dist. LEXIS 130888, at
*5 n.2 (D.D.C. July 22, 2022) (additional citation omitted).

Relief.  To remedy Defendants' violations of FLREA and APA, the Center respectfully requests the Court to grant declaratory relief to Plaintiff and to vacate the Secretaries' use of an image of President Trump instead of the Contest-winning photograph of Federal recreational lands and waters on the Annual Pass, as FLREA requires. ECF No. 15 (FAC) at ¶¶ 52-61 and Prayer for Relief at ¶¶ 1-2.[3]

## LEGAL BACKGROUND

### A.  The Federal Lands Recreation Enhancement Act

Congress passed FLREA in December 2004 as part of the 2005 Consolidated Appropriations Act, Pub. L. No. 108-447, 118 Stat. 3377 (2004).  In addition to establishing the national interagency America the Beautiful Pass, the law directs five "Federal Recreation Agencies"—NPS, Fish and Wildlife Service ("FWS"), Bureau of Land Management, Bureau of Reclamation, and Forest Service, *see* 16 U.S.C. § 6801(3)—to collect fees at recreation sites on "Federal recreational lands and waters," *id.* § 6801(4), and specifies how they may expend the revenues, *id.* § 6802(a) (authorizing the Secretary to "establish, modify, charge, and collect recreation fees at Federal recreational lands and waters"). *See also id.* § 6802(b) (criteria for establishing and changing recreation fees); *id.* § 6802(d) (limitations on recreation fees); *id.* § 6807 (limitations on expenditures).[4]

_____

[3] Nevertheless, should the Court conclude that issues of material fact remain in dispute, Plaintiff would respectfully request that the Court order the parties to confer and submit a joint proposed schedule for production of an administrative record of Defendants' decisionmaking concerning the 2026 ATB Pass.

[4] In addition to these five agencies, the U.S. Army Corps of Engineers, which manages about 12 million acres of public lands across the nation, is authorized to collect recreation fees under

**B.  The Recreation Fees Program under FLREA**

Under FLREA's scheme, each of five "Federal Recreation Agencies" may collect recreation fees for public access to, and use of, areas and facilities on certain areas of lands they manage in accordance with criteria and procedural requirements. *Id.* §§ 6802 and 6803.[5]

FLREA authorizes four kinds of "recreation fees" for visitors and users of specific recreation fee area. In general, these consist of "entrance fees" and "amenity fees."  Entrance fees are fees collected "to enter onto lands managed by [NPS] or [FWS.]" *Id*. §§ 6801(1) and 6802(e). Such units of public lands include national parks and national wildlife refuges. *Id* § 6802(e)*.* Also, "expanded amenity recreation fees" may be charged by NPS and FWS, in addition to entrance fees, at units with "specific or specialized facilit[ies], equipment, or service[s]." *Id.* § 6802(g).

The other three Federal Recreation Agencies—BLM, USFS, and BuRec—may charge "standard amenity recreation fees" at national conservation areas, national volcanic monuments, visitor and interpretive centers, and at areas with "significant opportunities for outdoor recreation" and "substantial Federal investments" as well as certain amenities like parking areas, toilets, trash receptables, interpretive signs or exhibits, picnic tables, and security services. *Id.* §§ 6801(15) and 6802(f).  In addition, BLM, BuRec, and USFS may charge expanded amenity fees

---

biennial Water Resource Development Acts, most recently in 2024 (Pub. L. No. 118-272, 138 Stat. 2992 (2024)).  This Motion focuses on the five agencies in the statute.

[5] As used herein and in FLREA, "recreation areas" and "recreation sites" or "recreation fee sites" are used interchangeably to refer to a specific area of Federal recreation lands and waters where use by the public is allocated. *See, e.g., id.* § 6802(f)(4) (describing areas where standard amenity fees may be charged).

at areas with tent or trailer spaces, picnic tables, drinking water, access roads, agency personnel,

visitor protection, refuse containers, bathrooms, and firepits. *Id.* §§ 6801(2) and 6802(g).[6]

FLREA also establishes a "special account" at the U.S. Treasury for each Federal

Recreation Agency to deposit recreation fee revenues collected at recreation areas they manage.

*Id.* § 6806(a).  Generally, 80 percent of fee revenues collected at a specific unit or area must be

expended by the managing Federal Recreation Agency at the same unit or area. *Id.* §

6806(c)(1)(A).

The following table illustrates the proportion of Federal public lands under each Federal

Recreation Agency's management authority where FLREA fees are collected:

| Agency | Total Number of Recreation Sites | Total Number of Recreation Sites Collecting Fees | Percentage of Recreation Sites Collecting Fees |
|---|---|---|---|
| NPS | 429 | 157 | 37% |
| FWS | 568 | 131 | 23% |
| BLM | 3,400 | 402 | 9% |
| BuRec | 245 | 4 | 2% |
| USFS | 30,000 | 3,936 | 13% |

Ex. 7 (REPORT TO CONGRESS: THE RECREATION FEE PROGRAM AUTHORIZED BY THE FEDERAL

LANDS RECREATION ENHANCEMENT ACT (2024) (excerpts) ("6th TRIENNIAL RPT.") 8.

---

[6] The fourth kind of recreation fee is a "special recreation permit," a special license that allows organized, large gatherings of 75 or more people to take place on Federal recreational lands and waters—e.g., family reunions, weddings, competitions, and group camps, etc. *Id.* § 6801(13) (defining "special recreation permit"); *id.* § 6802h) (setting forth procedures and criteria for special recreation permit applications). Special recreation permits account for a small portion of fee revenues sent to the agencies.

Before FLREA, recreation fees on Federal public lands were governed by the Land and Water Conservation Fund Act of 1964, which (in part) allowed NPS and other Federal Recreation Agencies to charge entrance and recreation user fees at public lands they administered for scenic, scientific, historical, cultural, or recreational purposes, subject to Congressional oversight. Land and Water Conservation Fund Act of 1965, Pub. L. No. 88-578, 78 Stat. 897 (1964) ("Land and Water Act"). The revenues were deposited into a fund in the U.S. Treasury for appropriations by Congress. *Id.*

Several interagency passes were available to the public under the Land and Water Act: the Golden Eagle Passport for $65; the Golden Age Passport, free to people over 62; and the Golden Access Passport, provided at no cost to blind individuals and those with disabilities. Ex. 8 (U.S. GOV'T ACCOUNTABILITY OFF., GAO-02-10, RECREATION FEES: MANAGEMENT IMPROVEMENTS CAN HELP THE DEMONSTRATION PROGRAM ENHANCE VISITOR SERVICES (2001)) (excerpts) 21-22 ("RECREATION FEES MGMT. (GAO)").  The Golden Eagle Passport covered entrance fees to all Federal recreational sites—essentially, all NPS units where entrance fees were collected. *Id.* at 21. However, it did not cover "user fees" at such sites. *Id.*  With the emergence in 2001 of the "National Parks Pass" (also "National Parks Passport"), which covered entrance fees at NPS units, the many national passes led to public confusion. *Id.* at 22.; *see also* Ex. 9 (BARRY T. HILL, U.S. GOV'T ACCOUNTABILITY OFF., GAO-04-745T, RECREATION FEES: COMMENTS ON THE FEDERAL LANDS RECREATION ENHANCEMENT ACT, H.R. 3283 (2004)) (excerpts) (explaining recreation sites "do not consistently accept agency and interagency passes, resulting in visitor confusion and, in some cases, overlapping or duplicative fees for the same or similar activities").

9

Meanwhile, public visitation of Federal recreation sites grew, leading to deteriorating facilities, amenities, and roads. *Id.* at 9. Revenues deposited into the U.S. Treasury were inadequate and inconveniently required Congressional appropriations to be expended for backlogged maintenance, repair, and enhancement projects. *Id.* at 1-2. As the backlog grew, the Federal Recreation Agencies appealed to Congress for expanded authority for a recreation fees pilot program, to "demonstrate the feasibility of user-generated cost recovery for the operation and maintenance of recreation areas or sites and habitat enhancement projects on Federal lands." Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 315(a), 110 Stat. 1321, 1321-204 (1996).

Hence, the Recreational Fee Demonstration Program ("Fee Demo") began in 1996 and was reauthorized through a series of legislative riders through 2005. S. Rep. No. 108-233, at 1-2 (2004). Fees for admission to public lands were initially collected at 10-50 demonstration sites, eventually growing to 100. *Id.* at 2. Unlike the Land and Water Act, Fee Demo required no Congressional appropriation to expend fee revenues; a special account for each land management agency was established at the U.S. Treasury. *Id.* Eighty percent of recreation fees revenues and site-specific agency pass revenues deposited into the special accounts were available to fund projects where they were collected, with the remainder available for allocation agency wide. *Id.*

Golden Passes continued to be sold during the Fee Demo pilot program. *Recreation Fees: Hearing on S. 2473 and S. 2607 Before the Subcomm. on Energy and Nat. Res.*, 107th Cong. 17 (2002) ("*Sen. Com. Hrg. (2002)*"). Meanwhile, NPS introduced the National Parks Pass in 2001. *Id.* For $50 a year, it covered entrance and amenity fees at parks, monuments, and other

recreation fee sites even though the $65 Golden Passes already covered entrance fees to national parks, monuments, and other areas under NPS's as well as FWS's management authority. *Id.*

As Fee Demo progressed land managers embraced their expanded ability to charge fees to use public lands, leading to controversy and litigation. *See*, *e.g.*, *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1141-42 (9th Cir. 2012) (describing history of USFS's practice under Fee Demo of charging fees solely for parking, undesignated parking, and picnicking along roads or trail-sides).[7] Hence, Congress enacted FLREA (in part) "to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation fee authority." *Id.* (quoting H.R. Rep. No. 108-790(l), at 14 (2004)).

Congress incorporated aspects of Fee Demo into the new law. Like Fee Demo, the Act authorizes the Federal Recreation Agencies to collect and expend fee revenues without first obtaining Congressional appropriations. 16 U.S.C. § 6806(b)(2). Like Fee Demo, 80 percent of fee revenues are earmarked for qualified expenditures at the recreation areas where collected, *id.* § 6806(c)(1)(A)-(B), with the remainder allocated agency-wide. *Id.* § 6806(c)(2).

At the same time, Congress sought to apply lessons learned from Fee Demo. In addition to delineating authorized expenditures, certain other expenditures are expressly prohibited under

---

[7] For example, USFS began to charge fees for using any portion of a national forest—e.g., for using only a roadside picnic table—but no other amenities like bathrooms, parking areas, agency-maintained roads, parking areas, dispersed campsites, boat launches, or trails. *Id.* (noting FLREA prohibits USFS from charging fees for recreational visitors who park a car, camp at undeveloped sites, picnic along roads or trail-sides, or hike without using facilities or services); *see also United States v. Smith*, 740 F.Supp.2d 1111 (D. Ariz. 2010) (dismissing citation for failure to pay recreation fee for parking at undeveloped trailhead, fee was beyond USFS's authority under FLREA); *id.* at 1115-1116 (discussing Fee Demo).

FLREA. Id. § 6802(d)(1).[8]  The Secretaries also must submit reports to Congress every three years, *id.* § 6808.  Six triennial reports have been produced to date. *See* Ex. 7 (6TH TRIENNIAL RPT.).[9]

### C. The America the Beautiful—The National Parks and Federal Recreational Lands Pass

Through FLREA, Congress also expressly ended the overlapping single-agency, multi-tier, national, regional, and site-specific passes that had existed under the prior scheme.  The myriad Golden Passes, National Parks Pass, and regional and site-specific passes had confused many who could not get a "clear understanding of the difference between entrance fees and users fees" or why, for example, "the Golden Eagle passport is accepted in some situations and locations and not others." Ex. 8 (RECREATION FEES MGMT. (GAO)) 21-22.[10]  The Government Accountability Office ("GAO") reported in 2001 that "agency and interagency passes [we]re not consistently accepted," leading to "visitor confusion and, in some cases, overlapping fees for the same or similar activities." *Id.* at 16-17; *see also id*. (noting "[t]hese issues have concerned

---

[8] To summarize, the Federal Recreation Agencies may not charge visitors solely for using parking areas, overlooks, scenic areas, and highways, or undeveloped or dispersed areas without Federal investment; or for general access, driving, walking, boating, hiking, and horseback riding. *Id.*

[9] Most of the agencies' triennial reports to Congress may be found here: https://doi.sciencebase.gov/flrea (last visited April 23, 2026). *See* Ex. 7 (6TH TRIENNIAL RPT.); Ex. 9-12 (2ND, 3RD, 4TH, 5TH TRIENNIAL REPORTS (excerpts)).

[10] As the GAO pointed out, [f]or a 1-day hike in Olympic National Park, users pay a $10 per vehicle entry fee (good for 1 week), whereas hikers using trailheads in Olympic National Forests are charged a daily user fee of $5 per vehicle for trailhead parking." Ex. 8 (RECREATION FEES MGMT. (GAO) 17.  And "holders of the interagency Golden Eagle Passport … are able to use it to enter Olympic National Park but … not … to pay the Forest Service's trailhead parking fee because that fee is a user fee." *Id.*

agency managers for a number of years but have yet to be resolved").[11]  Hence, the "America the

Beautiful Pass-The National Parks and Federal Recreational Lands Pass" was born. *Id*. § 6804(b)

(emphasis added); *Sen. Com. Hrg. (2002)*, *supra* 10, at 9, 13 (statement of DOI Assistant

Secretary Lynn Scarlett) (proposing "a new annual interagency pass" to "consolidate the Golden

Passes" and "expand the National Parks Pass to all participating agencies and seamless service to

the citizen").[12]

The new Annual Pass simplified and standardized entrance and amenity fees at all

Federal recreation fee areas nationwide, including national parks and monuments, wildlife

refuges, national forests, BLM lands, and more. With the new Pass, sightseers in Utah and

---

[11] As DOI Assistant Secretary Scarlett told a Senate subcommittee in 2005:

> Senator, over the last several years, as we have operated the recreation fee demo
> program, one of the things that became increasingly clear as we did visitor
> surveys was that many visitors were very confused about the multiplicity of
> passes. We probably had actually more complaints about people who would buy
> a National Parks Pass and then not understand that there were different Federal
> agencies that managed different lands, and they would show up at the Forest
> Service and think that the Park Pass was applicable there. So that complexity and
> confusion was a significant driver behind ultimately our support for the America
> the Beautiful interagency pass. We thought it would reduce that confusion and
> still give a very affordable option, coupled with some of these regional options,
> and then of course, site-specific fee options.

*Federal Lands Recreation Enhancement Act: Hearing Before the Subcomm. on National Parks
of the Com. on Energy and Natural Resources*, 109th Cong. 11*, at 12-13 (2005) ("*S. Com. Hrg.
(2005)*") (comments of Asst. Secretary Scarlett responding to Hawai'i Senator Daniel K. Akaka,
D-HI).

[12] As Assistant Secretary Scarlett explained in 2005, the new America the Beautiful Pass
"combine[d] the expanded benefits of the Golden Eagle Pass with the professional design and
marketing of the National Parks Pass" and would "eliminate[] confusion over the various current
passes." *S. Com. Hrg. (2005)*, *supra* 12, at 8 n. 11 (statement of DOI Assistant Secretary
Scarlett).

13

Nevada "c[ould] visit the majestic rock formations of Bryce and Zion National Parks, explore Flaming Gorge National Recreation Area on the Ashley National Forest and hike through BLM-managed Red Rock Canyon National Conservation Area using a single pass." Ex. 10 (FEDERAL LANDS RECREATION ENHANCEMENT ACT SECOND TRIENNIAL REPORT TO CONGRESS (2009) (EXCERPTS)) ("2ND TRIENNIAL RPT.") 26.

Congress phased out Golden and National Parks Passes in favor of the ATB Pass as the only national interagency pass for all recreational fee areas on Federal lands. Certain demographics could receive one of the "four Pass types" at a discount or no cost, including: (1) seniors citizens aged 62 and above who may obtain the Pass for $20 annually or $80 for their lifetime; and free "lifetime passes" for (2) people with disabilities, (3) veterans, (4) Gold Star families, and (5) members of the Armed Forces and their families.[13] Volunteers of the Federal Recreation Agencies may receive a complimentary ATB Pass. *Id.* § 6810(d).[14]

Thus, Congress was clear that the America the Beautiful Pass was to stand alone as the sole national interagency annual pass. *Id.* § 6804(a)(1) (emphasis added). The new Pass would

---

[13] The Secretaries establish the price at which the ATB is sold to the public, *id.* § 6804(a)(5). Since 2007, the price has remained $80 per year. Ex. 7 (6TH TRIENNIAL RPT.) 27; Ex. 10 (2ND TRIENNIAL RPT.) 34.

[14] As DOI Assistant Secretary Scarlett told a Senate subcommittee in 2002:

> We envision the interagency pass would include new and expanded standard benefits that are consistent across agencies and more inclusive than benefits under the Golden Eagle Pass; we envision the pass to be provided to seniors at steep discounts and to the disabled community free of charge; and we envision the pass retaining the look and program qualities of the National Park Passport.

*S. Com. Hrg. (2002), supra* 10, at 13.

14

"serve multiple purposes," including by being "durable and convenient to purchase and use" and a collectible symbol of enthusiasm for Americans' shared public lands. Ex. 11 (TRIENNIAL REPORT TO CONGRESS: IMPLEMENTATION OF THE FEDERAL LANDS RECREATION ENHANCEMENT ACT (2012) (excerpts)) ("3rd TRIENNIAL RPT.") 56.  Certain "pass types" are authorized, *id*. *Accord*, Ex. 11 (4TH TRIENNIAL RPT.) 14; Ex. 13 (IMPLEMENTATION OF THE FEDERAL LANDS RECREATION ENHANCEMENT ACT: TRIENNIAL REPORT TO CONGRESS (2021) (excerpts)) ("5TH TRIENNIAL RPT.") 25; Ex. 7 (6TH TRIENNIAL RPT.) 3, 27-29.  Congress explicitly prohibited the Secretaries from establishing "any national recreation pass, except as provided in" FLREA. 16 U.S.C. § 6804(b)(9).

### D.  <u>The Share the Experience Photo Contest</u>

The America the Beautiful Pass, the size of a credit card, features the Contest-winning image on one side and on the other, the passholder's name and signature as well as a barcode, expiration date, and terms of use. Ex. 1 (Trump Image); Ex. 6 (2026 Resident Annual Pass (Rec.gov)); Atwood Decl. ¶ 5; Suckling Decl. ¶ 19 (digital version)).  The image changes every year on January 1 and is offered through December 31.  Yet, the ATB Pass may be purchased at any time during the year and remain valid throughout the 12th month from the date of purchase. 16 U.S.C. § 6804(a)(4).

When it consolidated the other national interagency passes under the new ATB Pass through FLREA, Congress sought to build on the successes of prior passes and market the new ATB Pass to generate enthusiasm (as well as revenue) for public lands.  It established a Pass that could provide a beautiful image from a public participation Contest that could be appreciated while valid for the cost-effectiveness and convenience it provides, as well collected for its own

educational, cultural, and aesthetic attributes, for memories of trips taken, or as a symbol of pride in America's shared public lands and waters. *E.g.*, 110 S. RPT. 350, at 6 (2008) (statement of Katherine H. Stevenson, NPS Acting Asst. Director, Business Services) ("The new passes are more convenient to purchase, are more durable, and are designed with a collectible image of public lands.").

Therefore, Congress included FLREA § 805, which requires the Secretaries to hold an annual photography contest to select the winning image that will appear on the Annual Pass for a year, and requires the Contest to be open to all U.S. residents and "used as a means to educate the American people about Federal public lands." 16 U.S.C. § 6804(a)(2). Thus:

> The Secretaries shall hold an annual competition to select the image to be used on the National Parks and Federal Recreational Lands Pass for a year. The competition shall be open to the public and used as a means to educate the American people about Federal recreational lands and waters.

*Id.* "Federal recreational lands and waters" are "lands or waters managed by a Federal land management agency." *Id.* § 6801(3).

Only U.S. residents may enter, and "employees, officers, directors, agents, or representatives" of the Federal Recreation Agencies expressly may not. *Id.* at 1; *accord*, Ex. 19 (Share the Experience 2025 Contest Official Rules) ("2025 Contest Rules") 1. To be eligible, photographs must be entered by an amateur photographer who "capture[d] a moment … on America's federal public lands and waters … ." Ex. 5 (2024 Contest Rules) 2.

Entries are judged on: "(i) originality, (ii) artistic composition, (iii) technical quality, (iv) photographic technique, and (v) whether [they] showcase[] the best of America's recreational opportunities." *Id.* at 4. The National Park Foundation and Booz Allen Hamilton, the Contest

16

Sponsors, will disqualify a photograph when it is not "a fair and accurate representation of what the photographer witnessed," or if it is "noticeably and/or excessively altered," or has "generative fill" or was "fully generated," or "presents resource or public use management concerns," or is "highly controversial, inappropriate, indecent or obscene." *Id.*[15]

## FACTUAL BACKGROUND

### A.  The Recreation Fee Program and Its Revenues

Revenues from the annual recreation fee have steadily increased since enactment of FLREA.  In Fiscal Year 2023, the agencies collected $601.7 million in total, with $119.4 million of that total coming from sales of interagency passes. Ex. 7 (6TH TRIENNIAL RPT.) 21-22.  Most revenue came from NPS, with lesser amounts from the Forest Service, Bureau of Land Management, Fish and Wildlife Service, and Bureau of Reclamation. *Id.* at 21.

### B.  Implementation of the America the Beautiful Pass

Since FLREA's passage, the issuance of the Annual Pass has been a great success.  It is purchased by hundreds of thousands of people annually, generates tens of millions of dollars for maintenance of recreational areas on public lands, and draws tens of thousands of entries to the Contest every year. Ex. 7 (6TH TRIENNIAL RPT.) 3, 31, 32; Ex. 13 (5TH TRIENNIAL RPT.) 25. Since 2007, when the Secretaries began selling the ATB Pass, "participants have submitted more than 208,000 photographs of the nation's federal lands." Ex. 13 (5TH TRIENNIAL RPT.) 25.

---

[15] The 2025 Contest Rules, which were released on June 17, 2025, further specify that "[o]nly images from those national parks and federal recreational lands that charge an entrance or standard amenity fee, for which the [ATB] Pass can be utilized, will be considered for the grand prize." Ex. 15 (2025 Contest Rules) 4.

17

The table below depicts 12 images from each America the Beautiful Annual Pass since 2014. Ex. 20 (Table: America the Beautiful Passes: 2014-2025) ("Table, ATB Passes"); Suckling Decl. ¶ 18.  In reverse chronological order, the images depict: Everglades National Park (2025), Wupatki National Monument (2024), Sequoia & Kings Range National Park (2023), San Juan National Forest (2022), Redwood National Forest (2021), Bridger-Teton National Forest (2020), Acadia National Park (2019), Aransas National Wildlife Refuge (2018), Glen Canyon National Recreation Area (2017), Arctic National Wildlife Refuge (2016),  Pictured Rocks National Lakeshore (2015), and Nantahala National Forest (2014). *Id.* ¶ 18.



As the table shows, each Pass's image appears unaltered, captures a beautiful moment on Federal recreational lands or waters, is educational, and is not controversial or inappropriate. 16 U.S.C. § 6804(a)(2); Ex. 5 (2024 Contest Rules); Ex. 19 (2025 Contest Rules).

### C. The 2026 America the Beautiful Pass

Consistent with this annual practice, on June 17, 2025 the National Park Foundation ("NPF") announced the first-place winner of the 2024 Contest, an image of Glacier National Park attributed to photographer Akshay Joshi:



Ex. 3 (Contest Winner Announcement) 2.  The agencies described it as "[a] breathtaking view at Glacier National Park unfold[ing] as towering mountain peaks rise above alpine waters." *Id*. Further, NPF stated the image "will be featured on the 2026 America the Beautiful Annual Pass." *Id.*[16]

In early July 2025, President Trump signed Executive Order 14314. Exec. Order No. 14314, 90 Fed. Reg. 30201 (July 9, 2025) ("Exec. Order 14314").  The order directed the DOI

---

[16] Also, NPF and Booz Allen, "in partnership with" the Federal Recreation Agencies, announced the launch of the 2025 Contest, which ran through December 2025. *Id.* at 2, 3.

Secretary "to develop a strategy to increase revenue and improve the recreational experience at national parks by appropriately increasing entrance fees and recreation pass fees for nonresidents in areas of the National Park System that charge entrance fees." *Id.* § 2.  The order further directed the DOI Secretary to "rescind any rules found to be "unnecessarily restrictive," *id.* § 2(f), and to "grant American residents preferential treatment" for access to public lands. *Id.*  The order did not mention the imagery to be used on the Annual Pass, or the Contest. *Id.*

On November 25, 2025, DOI and NPS issued a news release announcing changes in the America the Beautiful Pass. Ex. 2 (DOI News Release).  Specifically, the release stated that "all annual passes" would feature "new," "updated", "refreshed… artwork" and "modernized graphics" in 2026, with "bold, patriotic designs that honor America's landscapes, heritage and outdoor legacy." *Id.*  The changes coincided with recent FLREA amendments requiring digitization of the Annual Pass by January 1, 2026, 16 U.S.C. § 6804(a)(10).[17]

In the release, DOI did not actually unveil the "refreshed" and "modernized graphics," nor did it reveal that the Secretaries were planning to replace the Glacier NP Image with the Trump Image. Ex. 2 (DOI News Release).  Nor did it mention when, or whether, the Secretary will return the Interagency Pass Program to once again using the Contest-winning photographs on the Annual Pass, as FLREA requires. 16 U.S.C. § 6804(a)(2).

---

[17] The Expanding Public Lands Outdoor Recreation Experiences Act was enacted on January 4, 2025. 138 Stat. 2836. It amended FLREA § 805 to require the Secretaries to "establish a digital version" of the Annual Pass by January 1, 2026 "that is able to be stored on a mobile device[.]" 16 U.S.C. § 6804(a)(10).

20

The agencies also announced a "new resident-focused fee structure," under which "the Annual Pass will cost $80 for residents and $250 for nonresidents." Ex. 2 (DOI News Release). According to Secretary Burgum, this was to "'ensure that … international visitors contribute their fair share'" toward maintaining recreation sites on Federal public lands. *Id.*

In a video the same day, Secretary Burgum revealed that in addition to the new resident-based fee structure, the Annual Pass itself—not just its price—would be divided into two separate passes: (1) a "Nonresident" Annual Pass; and (2) a "Resident" Annual Pass, for American citizens and residents. *Id.*; Ex. Nos. 1, 6, 14-15, 16-18; Atwood Decl. ¶ 4 (video transcription).  Thus, Secretary Burgum began the two-and-a-half minute video, entitled "Digital Parks Pass Announcement," as follows:

> This year, we're making it easier and more affordable for every American to experience the beauty and freedom of our public lands. Starting in 2026, United States residents will be able to purchase an annual interagency pass for just 80 dollars. This incredible pass gives the holder access to all of our 63 flagship National Parks, hundreds of National Historic Sites and Battlefields and our over 200 million acres of amazing U.S. National Forests.
>
> And for our international visitors, a new 250 dollar pass ensures they contribute their fair share to help preserve and maintain these treasured places.

Atwood Decl. ¶ 4 (transcription).  At the 40-second mark, the $250 Nonresident Annual Pass is portrayed in the video, featuring the Glacier NP Image:

21



Ex. 16 (Screenshot: 2026 Non-resident Annual Pass).  Secretary Burgum continued:

> We're also unveiling commemorative new designs for our park passes. We're offering new designs on our Annual Pass, the Volunteer Pass, the Military Pass, and our Senior Pass. It is the department's honor to showcase the America the Beautiful Pass, honoring America's 250th Anniversary and the generations who've protected our lands.

Atwood Decl. ¶ 4.  At about the 45-second mark, a "commemorative" Resident Annual Pass is revealed, featuring President Trump. *Id.*; Ex. 1 (2026 Annual Pass).



22

The image is described as an "Official White House Photo" attributed to Daniel Torok, the Chief Official White House photographer.[18]

A flurry of media attention and public outcry followed the late November announcement and persisted throughout December 2025, while Plaintiff brought this lawsuit. *See*, *e.g.*, Ex. 21 (Amanda Heidt, *Trump's face on national parks pass is illegal, experts say*, SFGate.com (Dec. 4, 2025)). Some passholders who found the Trump Image to be offensive began to use stickers to cover the face of the Pass—both "'as a form of protest and an effort to restore … the pass's aesthetic purpose.'" Ex. 22 (Sam Hill, *DOI cracks down on stickers covering Trump's face on national park passes*, SFGate.com, Jan. 5, 2026) (quoting Boulder, Colorado artist). In early January 2026, DOI reportedly updated its "Void if Altered" rules and directed NPS staff to void altered Passes, even if such alterations were solely on the Pass's front as opposed to the reverse, where the bar code, terms, expiration date, and passholder signature are found. *Id.*

DOI staff reportedly emailed NPS regional staff in early January 2026, to "clarify" that "[d]efacing the pass in any way, including writing on it or adding stickers or other coverings, is a form of altering the pass" and prohibited, even on the front side of the Pass only. *Id.*; Ex. 23 (FAQs, Digital America the Beautiful Pass) ("FAQs") 14 (advising "America the Beautiful Passes are void if altered, including both digital and physical passes," and "[s]tickers on physical passes are considered an alteration and may void the pass").[19]

---

[18] *See* Chief Official White House Photographer, Wikipedia https://en.wikipedia.org/wiki/Chief_Official_White_House_Photographer (last visited Apr. 23, 2026).

[19] As a DOI public affairs specialist stated via email to a reporter, the changes were meant "'to provide[] additional clarification to help avoid confusion and support visitor interactions due to

23

The 2026 Resident Annual Pass featuring the Trump Image went on sale January 1, 2026 for $80. Ex. Nos. 1, 6, 14, 15, 18.  As a result, an American citizen or resident, younger than 62 years old, cannot buy any Annual Pass—other than the Resident Annual Pass with the Trump Image in physical or digital form. *See* Ex. 23 (FAQs) 14.  Nor can they "deface" the Trump Image on the front of the Pass without risk of it being voided. Ex. 22 (Hill, *SFGate.com*). Meanwhile, nonresidents receive a "Nonresident Annual Pass"—a national interagency annual pass lacking FLREA authority, 16 U.S.C. § 6804(a)(2)—with the Glacier NP Image, but they must pay $250 to do so. Ex. 23 (FAQs); Ex. 17 (Screenshot: 2026 Digital Nonresident Annual Pass); Atwood Decl. ¶ 7-8.

---

the volume of questions received from staff and visitors.'" Ex. 22 (Hill, *SFGate.com*) 2-3 (quoting Elizabeth Peace, DOI Senior Public Affairs Specialist).



In late January 2026, bills to amend FLREA § 805(a)(2) were introduced in the House and Senate to "prohibit the use of the image of living political figures on the America the Beautiful—the National Parks and Federal Recreational Lands Pass." 2026 H.R. 7251; 119 H.R. 7251 (Jan. 27, 2026); 2026 S. 3735; 119 S. 3735 (Jan. 29, 2026). The bill would amend FLREA §805(a)(2) with the following strikeout and amended language shown in italics:

> (2) Image ~~competition~~ for recreation pass. The Secretaries shall hold an annual competition to select the image to be used on the National Parks and Federal Recreational Lands Pass for a year. The competition shall be open to the public

25

and used as a means to educate the American people about Federal recreational lands and waters. *The image used on the National Parks and Federal Recreational Lands Pass may not include a living current or former elected official or other living political figure.*

*Id.* (emphasis added). These bills remain pending.

## ARGUMENT

### I.  THE CENTER HAS ASSOCIATIONAL STANDING.

The Center has associational standing to prosecute its claim for relief. As demonstrated below: (1) the Center has members who would have standing to sue in their own right because the Secretaries' Action has harmed and continues to harm their environmental, recreational, cultural, spiritual, and financial as well as aesthetic interests, and will continue to cause harm unless the Action is set aside and remanded as the Center requests; (2) the interests of these members are germane to those of the Center's mission to protect public lands, endangered species and their habitats; and (3) neither the Center's claim nor the relief requested requires that its members participate in the lawsuit because no third parties are required to adjudicate Plaintiff's claim for relief. *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

### A.  The Center Has Members Who Would Have Standing to Sue in Their Own Right.

To begin, the Center has individual members with legally protected interests in the ATB Pass that are harmed by the Secretaries' actions and redressable by the relief requested.

Notably, the four declarants are all American citizens and thus cannot purchase an "Annual Nonresident Pass" featuring the Glacier NP Image. *See* Deibert Decl. ¶ 2; Raher Decl. ¶ 2; Topham Decl. ¶ 2; Hartl Decl. ¶ 2; Ex. 5 (2024 Contest Rules). None qualify to buy one of the five pass types, i.e., for seniors, people with disabilities, veterans, military families, volunteers.

26

Ex. 7 (6TH TRIENNIAL RPT.) 6 (Pass Types); 16 U.S.C. § 6804. As Americans, the only national annual interagency pass available for them to purchase is the 2026 Pass with the Trump Image. Ex. 23 (FAQs) 14.

They also cannot buy the 2026 Pass and obscure the imagery on the front that they find to be aesthetically offensive, for example, by using stickers or decals or a sleeve for the 2026 Pass, because doing so would void the pass or result in them being denied entry. Ex. 23 (FAQs) 14.

### 1. Plaintiff's Members Have Legally Cognizable Interests in the ATB Pass.

As demonstrated below and in the declarations submitted in support of the Center's standing by four members, these members have recreational, monetary, educational, environmental, cultural, and aesthetic interests in obtaining a legally-compliant ATB Pass, due to its cost-effectiveness and convenience and aesthetic value, as well as in the Federal public lands and amenities, which the ATB Pass makes more convenient for them to visit and use.

As these members state in their declarations, they visit recreational areas on public lands and have used the ATB Pass to do so. Deibert Decl. ¶¶ 15-16; Raher Decl. ¶¶ 10, 13, 19;. Topham Decl. ¶¶ 13, 22; Hartl Decl. ¶¶ 9-11.  For example, Center member Ryan Deibert states he and his family have purchased the Pass due to the value and convenience that it offers; within the same year, it provided them access to many national parks and dozens of recreation areas managed by BLM and USFS in the Pacific Northwest and Southwest. Deibert Decl. ¶ 14-15. Center member Stephen Raher frequently visits federal public lands with his Annual Pass due to the convenience it provides him in using national forests in Oregon and Washington as well as national parks, monuments, and historic sites and wilderness areas. Raher. Decl. ¶¶ 6-7, 9-10.

27

Member Melanie Topham grew up in Utah and has purchased an Annual Pass for many years to take her family to five national parks in Utah known as the "Big 5"—Arches, Bryce Canyon, Canyonlands, Capital Reef, and Zion National Parks—as well as other national parks, national monuments, and national forests. Topham Decl. ¶¶ 5-11, 23-24.

Brett Hartl, the Center's government affairs director, has purchased the ATB Pass annually since 2018. Hartl Decl. ¶¶ 6-11, 14.  A former seasonal NPS park ranger, he carries his Pass in his wallet to visit national forests and national parks, primarily in Arizona, nearly every week. *Id.* ¶¶ 6, 10.

The Center's standing declarants detail the importance of such special places to them. They describe how they visit them for recreation, education, the environment, taking family vacations, creating memories, learning U.S. history, hiking, biking, skiing, and viewing and photographing landscapes and wildlife. Deibert Decl. ¶ 8, 10; Raher Decl. ¶ 6, 8; Topham Decl. ¶ 9; Hartl Decl. ¶¶ 5-11.  They appreciate the cost-effectiveness and convenience that the ATB Pass provides them in pursuit of those interests. Deibert Decl. ¶¶ 14, 16; Raher Decl. ¶ 10; Topham Decl. ¶ 22; Hartl Decl. ¶ 9.

At the same time, they appreciate knowing that the revenue collected by the Federal Recreation Agencies, including revenue from sales of the ATB Pass, is used to maintain and enhance recreation sites and other projects that directly benefit public lands. Deibert Decl. ¶ 14; Raher Decl. ¶ 13; Topham Decl. ¶ 22; 16 U.S.C. § 6806(d) ("Revenues collected from the sale of the [ATB] Pass shall be deposited in the special accounts established for the Federal land management agencies … .").  This includes projects that benefit them directly. *See* Raher Decl. ¶ 13; Ex. 7 (2nd Triennial Rpt. (excerpts)) 7, 9 (describing trail construction project at the Ft.

28

Vancouver National Historic Site); Topham Decl. ¶¶ 19, 23 ("These projects and others like them are directly beneficial to my family and me."); Ex. 11 (3RD TRIENNIAL RPT.) 26 (describing trail construction and maintenance projects in Arches National Park). They further appreciate that most of the price they pay for the Annual Pass goes toward funding projects at the same recreation areas where they were purchased. Raher Decl. ¶ 13; Topham Decl. ¶ 23; Hartl Decl. ¶ 11.

The Center's standing declarants also have educational, cultural, and aesthetic interests in obtaining a legally compliant ATB Pass, including its imagery, because the images on the ATB Passes that conform to the statutory mandate educate them about Federal public lands and waters, wildlife, habitat, and places of historical and cultural significance. Raher Decl. ¶ 11-12 (prior passes have "educated me about federal lands that I did not previously know about"). The images stir curiosity about new places they have yet to visit. Raher Decl. ¶ 12. In addition, they value and have interest in the pass's imagery due to its aesthetic attributes—i.e., for the serenity, natural beauty, and landscapes it depicts. Topham Decl. ¶ 25, 28; Deibert Decl. ¶ 20; Raher Decl. ¶ 11 (explaining that "the Annual Pass from 2021-22 features a photograph of Redwood National and State Parks, which I visited for the first time less than a month ago, and where I was able to hike through a one-of-a-kind landscape that looked very much like the image on the 2021-22 pass").

Moreover, the passes serve as tangible mementos of trips taken in the past. Deibert Decl. ¶ 17 (stating that the passes "have become keepsakes in their own right" for "the incredible adventures we shared as a family during each of those years"); Raher Decl. ¶ 11 ("I save my Annual Passes after their expiration as keepsakes," they are "tangible reminder[s] of my time in

29

that place"). And further, the images foster a sense of pride and shared reverence for the special places that are depicted—a reverence shared in common with other visitors to these places, including fellow Americans of all political stripes. Raher Decl. ¶ 11, 16; Topham Decl. ¶ 27; Deibert Decl. ¶ 12, 20.

Furthermore, these recreational, monetary, educational, environmental, cultural, and aesthetic interests are the same interests that Congress intended FLREA to protect. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (observing that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts—such as … monetary harm …") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-341 (2016)); *id*. at 414 (finding "monetary harms readily qualify as concrete injuries under Article III"); *Kotab v. BLM*, 546 F.Supp.3d 1012, 1019 (D. Nev. 2021) ("In [*Nat'l Wildlife Fed'n*], the Supreme Court reasoned that 'recreational use and aesthetic enjoyment' are among the *sorts* of interests that [statutes like NEPA and FLREA] were specifically designed to protect.") (emphasis in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990)); *see also Summers v. Earth Is. Inst.*, 555 U.S. 488, 494 (2009) ("[I]f … harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice").

They are also the same interests that the Secretaries sought to advance before Congress two decades ago. As DOI Assistant Secretary Scarlett testified to a Senate committee in 2002, "we want to ensure" through recreation fee authority that "federal lands continue to play [an] important role in American life and culture." *Sen. Com. Hrg. (2002)*, *supra* 10, at 10. She elaborated:

30

> As the Committee is aware, our federal lands boast scenic vistas, breathtaking landscapes, and unique natural wonders. On these lands, many patriotic symbols, battlefields, memorials, historic homes, and many other types of sites tell the story of America. Federal lands have provided Americans and visitors from around the world special places for recreation, education, reflection and solace. The family vacation to these destinations is an American tradition.

*Id.*[20] As USDA Undersecretary Mark Rey testified to a House subcommittee in 2008, "[t]he new [ATB] passes are more convenient to purchase, are more durable, and are designed with a collectible image of public lands." S. REP. NO. 110-377 (2008).  Hence, with the ATB Pass:

> A sightseer in Utah and Nevada can view the majestic rock formations of Bryce and Zion National Parks, explore Flaming Gorge National Recreation Area on the Ashley National Forest and hike through the BLM-managed Red Rock Canyon National Conservation Area using a single pass.

*Id.* at 16. Indeed, as the Center's member declarants make clear, the Annual Pass has been successful in achieving the policy objectives which led Congress to enact it. Topham Decl. ¶ 13 (describing trips to Arches, Bryce Canyon, Canyonlands, and Capital Reef National Parks, Grand Staircase Escalante National Monument, and the Uinta-Wasatch-Cache National Forest using the ATB Pass); Deibert Decl. ¶¶ 16-18 (describing trips to Painted Hills Unit of the John Day Fossil Beds, Steens Mountain Wilderness, Alvord Desert Wilderness Study Area, Malheur National Wildlife Refuge and Hart Mountain National Antelope Refuge).

---

[20] Thus, "[f]ulfilling this mission requires that we maintain visitor-serving facilities and services, preserve natural and historic resources, and enhance visitor opportunities. Such efforts require an adequate and steady source of funding." *Id.*

31

a. **The Secretaries' FLREA Violations Result in Injury-in-Fact to the Interests of Plaintiff's Members.**

Plaintiff's protected interests, described above, are harmed by the Secretaries' decision to use the Trump Image on the 2026 Pass, and those harms are "concrete, particularized, and actual or imminent." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

In their declarations, the Center's members describe the Hobson's choice they face as a result of the Secretaries' unlawful decision: either purchasing a pass that will cause them ongoing aesthetic injury every time they use it, or refraining from purchasing the 2026 America the Beautiful Pass, with attendant adverse effects on their finances and ability to visit public lands, due to the Secretaries' decision to use the Trump Image rather than a competition-winning image of Federal recreational lands and waters. Deibert Decl. ¶¶ 20-21; Raher Decl. ¶ 17; Topham Decl. ¶ 27; Hartl Decl. ¶ 12. This injury is directly analogous to those that have been recognized by the Supreme Court. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) ("*Laidlaw*")  (finding standing when members submitted declarations averring that the defendant's unlawful actions caused them "to curtail their recreational use of [a] waterway" out of concerns that such use "would subject them to "aesthetic" as well as other "harms").

As a result of the Secretaries' unlawful action, the Center's members will not purchase the 2026 Pass due to the aesthetic injury it would subject them to each time they would use it. They simply refuse to do so, because of what it depicts and what it does not. Deibert Decl. ¶ 21 ("… I currently cannot bring myself to purchase this Annual Pass with its offensively partisan

32

imagery"); Topham Decl. ¶ 27 ("I will not buy a pass until his (or any politician's) image is not on the pass."). As Brett Hartl states, "I do not want to see a picture of President Trump every time I use my pass or open my wallet[,]" so "I will not purchase a pass that features an image of President Trump." Hartl Decl. ¶ 12.

For example, Ryan Deibert recalls how a New Year's Day calendar reminder prompted him to buy a new pass, when he was "dismayed, shaken and deeply angered to see that this pass, which had come to symbolize open access to our revered, shared and nonpartisan public lands, has been replaced with such partisan political imagery." Deibert Decl. ¶ 20. Stephen Raher too "[wa]s dismayed that the Secretaries … decided to feature a picture of the current president on the 2026 Annual Pass[,]" Raher Decl. ¶ 15. Melanie Topham, whose last pass expired March 31, 2026, "felt angry to learn that this pass, which has become an emblem of so many of my best memories and experiences, had been co-opted and used by a partisan politician in this way." Topham Decl. ¶ 27. Each makes clear that they cannot purchase a pass that would confer tangible benefits due to the unlawful imagery, and that they would feel the same way even if it was another politician's image on the Pass. Deibert Decl. ¶ 20; Raher Decl. ¶ 17; Topham Decl. ¶ 27-28; Hartl Decl. ¶ 12. This is functionally identical to the members in *Laidlaw* whose sworn statements were that they would elect to use and enjoy a resource but for the unlawful conduct of the defendant. *See* 528 U.S. at 184; *see also ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003) (explaining that, applying *Laidlaw*, "an injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions").

33

In addition, the Center's members are injured by the unlawful substitution of the Trump Image for what FLREA requires. The 2026 Pass with the Trump Image does not provide an educational image about Federal recreational lands and waters as FLREA requires, and as they had come to appreciate about the Annual Pass. Rather than foster a shared cultural connection to Americans' shared public lands, as Congress intended, it conveys a message that "[o]ur public lands are not actually ours; they belong only to the political supporters of our current President." Deibert Decl. ¶¶ 20, 22 (the 2026 Pass "has already eroded my sense of belonging with and within [our shared public lands]"); Raher Decl. ¶¶ 17, 18 ("I … find the use of the image of President Trump on the 2026 pass to be an act of hostility by my own government toward anyone who, like me, does not support the current administration's policies … ."). To avoid purchasing the 2026 Pass with the Trump Image and suffer the aesthetic and visceral effects of doing so, Stephen Raher felt compelled to purchase a new pass before he needed to, which caused him monetary harm as it has resulted in him paying twice as much for one month. Raher Decl. ¶¶ 19-23. These aesthetic and monetary harms are "de facto"—i.e., they "actually exist[]"—thus, they are "sufficiently concrete to qualify as injury-in-fact." *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1226 (D.C. Cir. 2024).

In addition, these members' injuries-in-fact are ongoing and will persist unless overturned or reversed, hence they are also "actual and imminent." *Id.* at 1225 (citing *Laidlaw*, 528 U.S. at 180). Without the benefits of the 2026 Pass, when they do visit public lands, they must pay more to enter and use such places, causing monetary harm that is actual, imminent, and ongoing. . Deibert Decl. ¶¶ 19-22; Raher Decl. ¶¶ 19-23; Topham Decl.¶¶ 29-31; Hartl Decl. ¶¶ 14-15. Alternatively, they must pay more to enter and use such places, causing monetary harm

34

that is actual and ongoing, Raher Decl. ¶ 23, and imminent as it is substantially probable in the future, Deibert Decl. ¶¶ 21-22; Topham Decl. ¶ 30; Hartl Decl. ¶ 15.  Either that, or they will have to reduce or eliminate future visits, causing actual and imminent injuries to their recreational, environmental, educational, cultural, and aesthetic interests in continuing to frequent such areas. Topham Decl. ¶ 29-30; Hartl Decl. ¶¶ 11,15 ("I will either have to spend more money or reduce my use of public lands.").  Again, being forced to choose between two such options, either of which is harmful to their concrete, longstanding interests, is a cognizable injury for standing purposes. *See Laidlaw*, 528 U.S. at 184.

For example, Ryan Deibert, whose last pass expired December 31, 2025, has been without a new annual pass since January 1, 2026. Deibert Decl. ¶ 20-22.  Without the option to purchase the 2026 Pass, he will have to rely on a Northwest Forest Pass and "a hodgepodge of standard entrance and amenity fees" at each recreation area on Federal public lands. *Id*. ¶ 22.  He estimates this will cost him $50 more annually than he would have paid with an Annual Pass. *Id*.

Melanie Topham's pass recently expired, and because she too refuses to buy the 2026 Pass due to the Trump Image, she expects to pay additional money for one-time entrance fees—about $410 in 2026, instead of $80. Topham Decl. ¶¶ 29.  Either that, or she must avoid visiting some recreation areas she otherwise would have gone to. *Id*. ¶ 29.

Brett Hartl's current pass expires in June 2026. Hartl Decl. ¶ 11.  Because he uses his Pass weekly, *id*. ¶¶ 6, 10, he will have to pay $45 more annually for his frequent visits to national forests and national parks. *Id*. ¶ 14.

These harms are not speculative; they have already occurred and are ongoing, and will continue unless and until they are remedied by the Court.

**b.    The Injuries-in-Fact of the Center's Members are Fairly Traceable to Defendants' Unlawful Use of the Trump Image on the 2026 Pass.**

The injuries-in-fact to the legally protected interests of the Center's members are "fairly traceable" to the Secretaries' decision to use the Trump Image on the 2026 America the Beautiful Pass. *Murthy v. Missouri*, 603 U.S. at 44 (citing *Clapper*, 568 U.S. at 409). As discussed above, far from being speculative these injuries have manifested already and are ongoing, and stem directly from the Secretaries' unlawful actions in violation of FLREA. Deibert Decl. ¶ 21 (stating "I currently cannot bring myself to purchase this Annual Pass with its offensively partisan imagery"); Raher Decl. ¶ 20 (explaining "I find the use of a politically partisan image on the 2026 pass to be deeply offensive and therefore refuse to own one in my name"); Topham Decl. ¶¶ 27-28; Hartl Decl. ¶ 12 ("Because I believe that the conservation of our public lands, the right of every person to enjoy and recreate on those lands in whatever way they deem fit, and the conservation legacy of those lands, should never be political, I will not purchase a pass that features an image of President Trump."). All such injuries sustained by the Center's member declarants are attributable to the Secretaries' illegal act in using the Trump Image on the 2026 America the Beautiful Pass.

Contrary to Defendants' likely protest in response, these harms are not "self-inflicted." *ALDF*, 111 F.4th at 1225 (citing *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006)). The Center's member declarants—U.S. citizens who are ineligible to obtain the 2026 Pass in any type or form other than the America the Beautiful Pass—all attest that they were regular or frequent purchasers of the America the Beautiful Annual Pass, until now. Deibert Decl. ¶¶ 2, 15-16 ; Raher Decl. ¶¶ 2, 10; Topham Decl. ¶¶ 2, 22;

36

Hartl Decl. ¶¶ 2, 9-10.  However, where all prior Annual Passes depicted competition-winning images of Federal recreational lands and waters, the 2026 Pass is dramatically different, resulting in a dramatically different impact of the Pass on the passholder. Deibert Decl. ¶¶ 20-21; Raher Decl. ¶¶ 15-16; Topham Decl. ¶¶ 27-28; Hartl Decl. ¶ 12; *see also* Ex. 16; Suckling Decl. ¶ 18 (Table, ATB Passes) (depicting all America the Beautiful Passes from 2014-2025).

With the Trump Image, the 2026 America the Beautiful Annual Pass lacks the qualities, features, and benefits they had come to expect from the Annual Pass each year, placing them in the untenable (and unlawful) position of either purchasing a pass that causes them serious aesthetic harm each time they use it, or avoiding purchasing and thereby securing monetary and other benefits it as they had planned. Deibert Decl. ¶¶ 20-22; Raher Decl. ¶¶ 17-20; Topham Decl. ¶¶ 27-28; *see also* Hartl Decl. ¶ 15 ("I will decline to purchase a new Interagency Annual pass in July of this year").  They are avoiding purchasing the 2026 Pass solely because it fails to feature the aesthetic, educational, and cultural attributes they expect and have come to value (and that is required by law), and instead features an image that causes—and were they to purchase the Pass, would continue to cause, on an ongoing basis—aesthetic harm along with anger, dismay, sadness, alienation, and confusion. Deibert Decl. ¶¶ 20-22; Raher Decl. ¶ 17; Topham Decl. ¶ 27; Hartl Decl. ¶ 15.  Their aversion to purchasing the Pass is attributable only to Defendants' unlawful conduct, not that of the Center's member declarants or any other third parties not before the Court.  In short, this is no more a self-inflicted injury than that deemed sufficient in *Laidlaw*, where the organizational members, due to the defendant's conduct, felt obligated to avoid a resource they would otherwise have enjoyed (and had enjoyed in the past).

Therefore, the injuries to the Center's members are the result of Defendants' actions and

37

easily satisfy the "fairly traceable" threshold. *Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (plaintiffs show associational standing when they "show that, 'absent the [government's allegedly unlawful actions], there is a substantial probability that they would [not be injured] and that, if the court affords the relief requested, the [injury] will be removed'") (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)) (additional citations omitted).

### c. The Requested Relief Will Redress the Injuries of Plaintiff's Members.

To remedy Defendants' FLREA violations, the Center is requesting declaratory relief, vacatur of the Secretaries' decision to use the Trump Image on the 2026 Pass, or indeed any image other than a Contest-winning image of Federal recreational lands or waters. ECF No. 15 (FAC) 18 (Prayer for Relief). If the Court affords the relief the Center is requesting, there is a substantial probability—indeed, a certainty—that the injuries to their interests "will be removed." *Chamber of Commerce*, 642 F.3d at 201 (plaintiff has standing when "it can show that, 'absent the [government's allegedly unlawful actions], there is a substantial probability that they would [not be injured] and that, if the court affords the relief requested, the [injury] will be removed'") (quoting *Warth*, 422 U.S. at 504). As the Center's declarants attest, this relief will remedy the injuries to the protected interests of the Center's members explained above.

### 2. The Interests of the Center's Members are Germane to its Purpose.

The monetary, recreational, educational, environmental, cultural, spiritual, and aesthetic interests of its members that the Center "seeks to protect are germane to [its] purpose." *Chamber of Commerce*, 642 F.3d at 199. As discussed by the Center's co-founder and executive director Kieran Suckling in his declaration filed in support of summary judgment, the Center for

38

Biological Diversity is a 501(c)(3) organization founded in 1989 with over 93,000 active members. Suckling Decl. ¶¶ 5-6. The Center's mission is to work through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. *Id.* ¶ 7. Central to the Center's work is the protection of the lands, waters, and climate that species need to survive and thrive. *Id.* ¶ 8.

Thus, a major portion of the Center's work focuses on protecting public lands due to their rich legacy of biological diversity and their critical importance in providing habitat and refuge for so many of the species the Center works to save from extinction. *Id.* ¶ 9. As well as protecting public lands from destructive resource extraction, the organization campaigns to ensure that federal funds earmarked by Congress for public lands conservation are fully expended towards this purpose. *Id.* ¶ 10. A public engaged and educated about the value of public lands for recreation and wildlife habitat, as fostered by the ATB, furthers the Center's mission to protect these public lands.

### 3. Neither the Center's Claim Nor Its Requested Relief Require its Members to Participate in this Lawsuit.

Last, neither the Center's claim nor requested relief require the participation of its members as plaintiffs. There are no third parties, not before the Court, whose actions or choices

have affected or will determine whether the interests of the Center and its members continue to

be harmed.

## II. THE 2026 AMERICA THE BEAUTIFUL—THE NATIONAL PARKS AND FEDERAL RECREATIONAL LANDS PASS IS ARBITRARY AND CAPRICIOUS AND CONTRARY TO FLREA.

As demonstrated above, the Center has standing to bring this case and receive the relief it

requests.  For the following reasons, the Court should grant summary judgment to Plaintiff,

declare the 2026 Pass with the Trump Image to be unlawful, and set it aside.

Since 2007, Defendants have used the image that was selected through the annual Share

the Experience Photo Contest on the America the Beautiful Pass. Consistent with this practice,

Defendants appeared on course to feature the Glacier NP Image on the 2026 America the

Beautiful Annual Pass as of June 2025, Ex. 3 (Contest Winner Announcement).  Yet, five

months later they abruptly changed course.  By November 2025, what was to be a "breathtaking

view" of "towering mountains above glacial waters," *id.*, was suddenly slated for "refreshed

visuals" and "bold patriotic designs." Ex. 2 (DOI News Release).  In a subsequent decision, they

clarified that the new annual "Resident Pass" would bear the Trump Image, while an entirely

new "Annual Nonresident Pass" would bear the Glacier NP Image. Ex. 4 (Glacier NP Image).

This decision was patently arbitrary and capricious and contrary to FLREA.  First, it is

contrary to FLREA's clear directive that the ATB Pass—i.e., the singular "National Parks and

Federal Recreational Lands Pass" for residents and non-residents alike—feature the image

selected through the Share the Experience Photo Contest. 16 U.S.C. § 6804(a)(2) (*emphasis*

added).  Nothing in FLREA permits Defendants to deviate from its requirements for how the

Pass is administered—including to use "bold, patriotic designs" instead of the Contest winning

40

image. Ex. 2 (DOI News Release).  FLREA does not allow for use of any digitally rendered collage "designs" on the Pass at all; the Contest Rules expressly forbid "generative fill," "fully generated" photographs, or photographs that are "highly controversial" or "inappropriate." Ex. 5 (2024 Contest Rules).  Further, FLREA requires that to be eligible for the Contest, a photograph must be entered into the Contest by the photographer who captured the moment on Federal recreational lands and waters, certainly not a digital collage of two politicians that purports to "honor[]" "America's landscapes, heritage and outdoor legacy" as represented with a design featuring a photograph of the President taken by the White House photographer. Ex. 2 (DOI News Release).  The 2026 Pass with the Trump Image violates all these Rules.

Because of this, and because the 2026 Pass fails to feature any image of "lands or waters managed by a Federal land management agency," *id*. § 6801(4), it necessarily follows that the 2026 Pass cannot be used to educate the American people about their public lands, as FLREA also requires, 16 U.S.C. § 6804(a)(2).  Indeed, Defendants cannot claim otherwise.  While there are likely infinite ways to delineate and regulate any particular lands or waters, Defendants will not be able to point to an instance when the terms themselves—terms which describe fundamental terrestrial components of Earth's surface—have been construed so broadly as to encompass a living politician. *See*, *e.g.*, *Sturgeon v. Frost*, 587 U.S. 28, 49 (2019) (delineating statute's applicability to lands and waters under differing ownership); *cf. Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*, No. 25-4316 (RJL), 2026 LX 157394, at *28 (D.D.C. Mar. 31, 2026) ("The stronger reading of this history is that Congress means what it says!").

No viable rationale for their actions can be found elsewhere. It cannot be found in any Federal Register publication or decision document. Therefore, Defendants' rationale for using

41

the Trump Image on the 2026 Pass, as set forth in the November 25, 2026 News Release, only serves to underscore the capriciousness of their actions.

At minimum, the Trump Image would have to have been selected via the image competition. For that to occur, it would have had to have been entered in the 2025 Contest by the person who took it. It would have had to capture a moment on Federal lands or waters and meet all other Contest Rules, as Defendants appear to concede. *See* ECF No. 9 (Mot. to Dismiss) (discussing Share the Experience Photo Contest Rules). Indeed, they would appear to be correct; the Contest Rules are the procedures by which the image selection is to occur. 16 U.S.C. § 6804(a)(7) ("The Secretaries shall issue guidelines on administration of the [ATB] Pass, which shall include agreement on … marketing and design … .").

Moreover, there is no legal basis for the Nonresident Annual Pass to be found in the law, so Defendants cannot claim that their abrupt creation of one now somehow renders their conduct lawful with regard to the Pass that is currently available to American citizens and residents. *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (explaining courts are not required to "ignore the disconnect between the decision made and the explanation given" where the agency's position is "contrived" and "pretexual").

FLREA allows for just *one* national interagency pass, the America the Beautiful Pass. FLREA contains no restriction on who may purchase the ATB Pass or somehow forbids nonresidents from purchasing it; the pass is available to anyone without qualification. *Id.* § 6804(a)(1) ("The Secretaries shall establish, and may charge a fee for, an interagency national pass to be known as the 'America the Beautiful-*the* National Parks and Federal Recreational Lands Plass' … .") (emphasis added). The plain language of FLREA §805(a)(2) is clear: it

42

requires that *the* America the Beautiful Pass feature an image of Federal recreational lands or waters selected via the annual Contest. 16 U.S.C. § 6804(a)(2).

The Secretaries' decision not to use the photograph that won the 2025 Share the Experience Photo Contest on the America the Beautiful Pass during the 12 months of 2026, and instead to substitute a photo of Donald Trump—for reasons that bear no connection to the underlying statute—constitutes final agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law within the meaning of the APA, 5 U.S.C. § 706(2)(A). In conclusion, the 2026 Annual Resident Pass as announced by DOI was not lawfully issued under FLREA, and must be set aside.

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO PLAINTIFF AND GRANT THE REQUESTED RELIEF.

For all the foregoing reasons, summary judgment should be granted to the Center under Fed. R. Civ. P. 56 and LCvR 7(h). Plaintiff respectfully requests the Court to declare Defendants to be in violation of the Federal Lands Recreation Enhancement Act and the APA, 5 U.S.C. § 706(2)(A). In addition, Plaintiff requests the Court to vacate and remand Defendants' decisions related to the 2026 America the Beautiful passes for further consideration and explanation. Vacatur is appropriate here as there can be no doubt that the Secretaries "chose [in]correctly" with regard to the 2026 America the Beautiful Pass. *Allied-Signal v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Not vacating their decision will be disruptive to the interests of Plaintiff as demonstrated by its standing declarants. *Id.* Vacatur will not be disruptive to Defendants, it will merely result in them reverting to their original decision to use the Contest-winning image on the America the Beautiful Pass this year.

43

DATED:         April 27, 2026              Respectfully submitted,

                                           */s/ Amy Atwood*
                                           Amy R. Atwood Greenwald (D.C. Bar No. 470258)
                                           Center for Biological Diversity
                                           P.O. Box 11374
                                           Portland, OR 97211-0374
                                           (971) 717-6401
                                           atwood@biologicaldiversity.org

                                           *Attorney for Plaintiff*