William S. Eubanks II
DC Bar No. 987036
Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com

Daniel Rohlf
OR Bar No. 990069
Earthrise Law Center
*Pro Hac Vice Application Pending*
10101 S. Terwilliger Blvd.
Portland, OR 97219
(503) 768-6707
rohlf@lclark.edu

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS BURGUM, Secretary, | ) | |
| U.S. Department of the Interior, | ) | Civil Action No. 1:25-cv-04285 |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, | ) | (PROPOSED) BRIEF OF |
| | ) | AMICUS CURIAE IN |
| NATIONAL PARK SERVICE, | ) | SUPPORT OF PLAINTIFFS' |
| | ) | MOTION FOR SUMMARY |
| BROOKE ROLLINS, Secretary, | ) | JUDGMENT |
| U.S. Department of Agriculture, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii-iii

INTERESTS OF AMICI CURIAE.......................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

ARGUMENT ......................................................................................................................... 2

    I. Congress Enacted the FLREA and Established the Annual Photograph Competition to
    Engage and Educate the Public. ....................................................................................... 2

    II. The Executive May Not Rewrite FLREA Without Usurping Congress's Legislative
    Role. ................................................................................................................................ 5

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (D.C. Cir. 2000). ..................................................................................8

*Clinton v. City of New York*,
524 U.S. 417 (1998)......................................................................................................6

*Kendall v. U.S. ex rel. Stokes*,
37 U.S. 524 (1838).........................................................................................................5

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)......................................................................................................8

*Marbury v. Madison*,
5 U.S. 137 (1803)...........................................................................................................5

*Navajo Nation v. Azar*,
302 F. Supp. 3d 429 (D.D.C. 2018). .......................................................................... 10

*Train v. City of New York*,
420 U.S. 35 (1975)..........................................................................................................8

*U.S. v. Johnson*,
529 U.S. 53 (2000)....................................................................................................... 10

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014)...................................................................................................7, 8

*Vill. of Barrington v. Surface Transp. Bd.*,
636 F.3d 650 (D.C. Cir. 2011). ................................................................................... 10

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)...................................................................................................6, 8

**Statutes**

16 U.S.C. § 6804(a)(2)...............................................................................................3, 4

54 U.S.C. § 100101(a). ....................................................................................................2

U.S. Const. art. I, § 1......................................................................................................5

U.S. Const. art. II, § 3. ...................................................................................................5

**Other Authorities**

Wallace Stegner, *The Best Idea We Ever Had,*
      in *Marking the Sparrow's Fall: The Making of the American West* (1998)......................2

## **INTRODUCTION**

Over 150 years ago, the United States created the world's first national park, and with it established an ideal for appreciating natural heritage and protecting it for future generations that has spread around the world. Since then, Congress and the Executive Branch have worked together to designate national parks with the explicit purpose of creating shared natural spaces that both preserve important ecological, cultural, and historical values and permit the entirety of the American public to draw joy and inspiration from visiting these iconic public lands.

Unfortunately, for the first time ever, the agency charged with protecting and managing our national parks has forced the public to focus on political imagery rather than natural beauty during national park visits, in the process flouting specific provisions of federal law. Such efforts to replace participatory traditions with imagery centered on a particular political figure undermine the foundational principle that the nation's parks are nonpartisan spaces intended for the enjoyment of all.  Subverting a clear statutory mandate for the sake of personal and political branding also usurps Congressional power and has profound constitutional implications. Amici encourage this court to recognize that the issues in this case are far from trivial, but touch deeply on public engagement in and enjoyment of our shared lands. Moreover, the need for Executive Branch agencies to faithfully carry out the will of Congress is never a trivial matter; protecting the separation of powers and ensuring that the separate branches of government discharge their functions under the Constitution is a core ideal of our democratic compact.

## **INTERESTS OF AMICI CURIAE**

Amici include the following members of the House of Representatives in the One Hundred Nineteenth Congress: Rep. Pramila Jayapal; Rep. Jared Huffman; Rep. Mike Quigley; Rep. Bonnie Watson Coleman; Rep. Steve Cohen; Rep. Nydia Velázquez; Rep. Paul Tonko;

1

Rep. Dina Titus; Rep. André Carson; Rep. Sarah Elfreth; Rep. Andrea Salinas; Rep. Seth Magaziner; Rep. Debbie Dingall; Rep. Dave Min; and Rep. Ed Case.

As members of Congress, Amici have a vested interest in preserving the relationship that the public has with America's national parks, which writer and conservationist Wallace Stegner called "the best idea we ever had," and described them as "absolutely American, absolutely democratic; they reflect us at our best." Wallace Stegner, *Marking the Sparrow's Fall: The Making of the American West* 135, 137 (1998). Congress has specifically enacted the Federal Lands Recreation Enhancement Act (FLREA) to preserve these values and educate the public about public lands. Amici thus have a strong and cogent interest in preserving the statute's mechanisms for inspiring the public to visit and draw inspiration from national parks.

Additionally, as members of Congress, Amici are sworn to uphold the Constitution and have a deep and abiding respect for the importance of separation of powers. The U.S. Constitution charges Congress with enacting legislation; lawmakers in turn rely on federal agencies to faithfully implement these policy judgments as written in statute. In enacting the FLREA, Congress relied on the Executive Branch to implement the statute consistent with its plain text in order to advance the educational and preservation goals enshrined in the law. Thus, Amici also have an interest in enforcing the mandate of the statute to uphold the constitutional separation of powers.

## **ARGUMENT**

### I.    **Congress Enacted the FLREA and Established the Annual Photograph Competition to Engage and Educate the Public**

The national parks system was developed out of a sense of profound respect for our nation's ecological and cultural heritage. National parks preserve America's most spectacular landscapes and strive to "leave them unimpaired for the enjoyment of future generations." 54

2

U.S.C. § 100101(a). But beyond preservation, national parks serve vital educational functions that foster a sense of shared responsibility and stewardship. Thus, they do more than protect the land—they cultivate engaged citizens and reflect a core democratic ideal that our institutions derive their legitimacy from meaningful public participation in the decisions that shape them. This educational purpose is enshrined in the language of the statute itself; the FLREA specifically identifies the photo contest for selecting the image on the annual park pass as promoting public education about national parks. Every year millions of people enter our parks using their annual passes, and every year a new generation of visitors leaves with a deeper understanding of Americans' shared history and a lasting commitment to preservation of the nation's natural and historic heritage. The images on the annual passes serve an important function in showcasing natural wonders to prospective visitors and educating them about recreational opportunities within the parks.

Over twenty years ago, Congress enacted the FLREA and established the photography competition to further the goals of preservation and education. *See* 16 U.S.C. § 6804(a)(2) ("The Secretaries shall hold an annual competition to select the image [appearing on the annual pass]… [t]he competition shall be open to the public and used as a means to educate the American people about Federal recreational lands and waters.") According to the 2021 FLREA Report to Congress, between 2006 and 2021, over 208,000 photographs were submitted to the Share the Experience contest. Each photograph represents an individual member of the public engaging with the landscapes the nation has worked hard to preserve.

Seeing the plethora of photographs contained on the Share the Experience contest website and the winning photographs featured on the Annual Pass in previous years inspires more people to visit national parks. The competition highlights the unique beauty of our natural landscapes

3

and enshrines places that will exist long after the people who took the photographs have gone. This is part and parcel with the very core of national parks themselves—the idea of preserving the landscape for present visitors and future generations alike. Abandoning the photography contest in favor of partisan political imagery not only undermines the statutory commitment to preserving and celebrating these lands for future generations, it undercuts the educational value of the annual passes by shifting the focus away from the landscapes themselves and their power to inspire the public to experience them. This decision to substitute images of political leaders for natural scenes, in combination with the Department of the Interior's efforts to void any altered 2026 annual passes, promotes political division rather than non-partisan enjoyment of public lands. This radical shift in policy flies in the face of the broad democratic ideals that guide the enactment and management of the national park system.

Beyond the goals of the national parks and FLREA, the decision to use an image of the current president on the parks pass, rather than the contest-winning image of Glacier National Park, runs counter to the clear mandate of the FLREA. The statute states simply and unambiguously that "[t]he Secretaries *shall* hold an annual competition to select the image to be used on the National Parks and Federal Recreational Lands Pass." 16 U.S.C. § 6804(a)(2) (emphasis added). The Secretary's decision to disregard the clear mandate of the FLREA goes against Congress's intent in enacting the statute and, as discussed below, poses obvious separation-of-powers concerns. Furthermore, the statute makes clear that Congress did not authorize the contest as a mere promotional tool, but expressly required that it be "used as a means to educate the American people about Federal recreational lands and waters." 16 U.S.C. § 6804(a)(2). This language is a deliberate legislative judgment that public participation and exposure to these lands are themselves mechanisms of education and stewardship. In light of the

4

profoundly important ideals embedded in the photo contest and American citizens' relationship with national parks themselves, as well as Congress' clear statutory mandate, this Court should remedy the Secretary of Interior's disregard of the explicit language from Congress.

II.    **The Executive May Not Rewrite the FLREA Without Usurping Congress' Legislative Role**

> It was urged… that the postmaster general was alone subject to the direction and control of the President…. This is a doctrine that cannot receive the sanction of this court. It would be vesting in the President a dispensing power, which has no countenance for its support in any part of the constitution; and is asserting a principle, which… would be clothing the President with a power entirely to control the legislation of congress, and paralyze the administration of justice.
> - *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 608 (1838).

The faithful execution of the law is not a novel or partisan principle developed to check any particular administration: it is an intentional system that has defined the relationship between Congress and the Executive since the founding of the Republic. The Constitution gives Congress the power to make laws and requires the Executive to carry those laws into effect as written. When executive branch officials depart from clear statutory commands, they transgress the separation of powers by assuming authority the Constitution assigns to Congress alone. Courts have recognized that where a statute imposes a specific duty on an executive officer, the Executive has no discretion to set it aside. *See Marbury v. Madison*, 5 U.S. 137, 166 (1803). This assertion rests on a basic constitutional premise: Congress writes the law, and the Executive must faithfully execute it. U.S. Const. art. I, § 1; art. II, § 3. That allocation of power is not a matter of etiquette or convenience. It is a structural safeguard designed to preserve democratic accountability, protect individual liberty, and maintain the rule of law itself by ensuring that binding national policy is made by the branch constitutionally empowered to formulate the law.

5

This separation of powers is more than a safeguard; it is a necessary condition of constitutional democracy. The American people govern themselves through law enacted by their elected representatives, and that system cannot function if the Executive is free to treat legislation adopted by Congress as merely advisory. When the Executive declines to carry out the law as written, it does more than frustrate Congress's will. It undermines their ability to carry out their duty and disenfranchises their constituents. For that reason, the Executive may not enact, amend, or repeal statutes, nor may they substitute their own policy preferences for Congress's enacted commands. *Clinton v. City of New York*, 524 U.S. 417, 438 (1998); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The principle is straightforward: once Congress has spoken, the Executive's duty is to implement the law, not to revise it. That duty applies equally, no matter the scope of the subject. In matters of separation of powers, the manner or degree of the transgression is irrelevant: the constitutional wrong arises the moment the Executive departs from Congress's command.

Congress has an obvious and substantial institutional interest in the faithful execution of the laws it enacts and the maintenance of the separation of powers. That interest arises not merely because Congress drafts statutes and expects the Executive to implement them, but because members of Congress themselves swear an oath to support and defend the Constitution and serve as representatives of the People in the lawmaking process. When Congress exercises the legislative power vested in it by Article I, it does so on behalf of the People and through the constitutional procedures that give enacted law its democratic legitimacy. Faithful execution of duly enacted laws is therefore indispensable to Congress's ability to discharge its own constitutional duty. Congress must make difficult judgments on behalf of the American people when drafting legislation, a task the Constitution assigns to the elected representatives of the

6

people. Lawmakers cannot uphold their duty in any meaningful sense if the Executive may at will disregard the product of Congress's deliberations.

The injury produced by the substitution of an executive preference for a process Congress established by statute radiates well beyond any institutional harm to the legislative branch. It diminishes democratic accountability by severing national policy from the branch answerable to the people for making law. It erodes the rule of law by signaling that clear statutory commands may be softened, revised, or ignored by the President and the Executive Branch when they believe the laws adopted by Congress somehow prove inconvenient or misguided. And it distorts the separation of powers by allowing the Executive to claim, in practice, a power to revise legislative judgments it does not possess. In that sense, the Executive's failure to perform its constitutional duty is not a discrete administrative violation. It is a structural offense with ripple effects for Congress, for the People, and for the constitutional order itself.

A mistaken application of law is one thing; a decision to depart from Congress's unambiguous command absent a statutory basis is another. The former may suggest an error. The latter raises the more serious constitutional question of whether the Executive has assumed for itself a power to revise legislative judgments—a power it does not possess. When executive officials knowingly substitute their own preferred course for the one Congress prescribed, they do not simply fail to execute the law faithfully—they assume authority to revise and create it. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) (the power of executing the laws "does not include a power to revise clear statutory terms…").

This is not a case in which the Executive was asked to resolve ambiguity, fill a statutory gap, or choose among competing permissible interpretations of uncertain text. Nor is it a case in which the agencies merely pushed at the margins of their authority by attempting to give binding

7

effect to policy preferences without complying with the law that governs rulemaking. Those forms of executive overreach into Congress's authority are serious enough, and courts have rightly rejected them because the Constitution does not permit the Executive to expand its own power by recasting legislation in administrative form.[1] The conduct alleged here is more straightforward. Congress did not speak vaguely. It did not leave the relevant questions open. It used mandatory terms. The FLREA says the Secretaries "shall" establish the pass, "shall" hold the annual competition to select the image used on the pass, and "may not" establish other national recreation passes except as provided by statute. Here, the Executive did not misunderstand an unclear directive or adopt an impermissible interpretation of an ambiguous provision; it simply chose a course different from the one Congress required. That is not an interpretation. It is not gap-filling. It is not an implementation. It is a refusal to follow the law as written, and thus a particularly stark violation of the separation of powers.

Recent Supreme Court precedent confirms that the Executive may not invoke interpretive discretion to depart from clear Congressional commands. In *Loper Bright*, the Court rejected the practice of deferring to agency interpretations of ambiguous statutes, reaffirming that it is the Judiciary, not the Executive, that has the final authority to interpret the law. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 398–400 (2024). The Court emphasized that "agencies have no special competence in resolving statutory ambiguities," and may not use interpretation

---

[1] *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (rejecting presidential seizure of steel mills absent constitutional or statutory authority); *Train v. City of New York*, 420 U.S. 35, 42–46 (1975) (holding the Executive could not refuse to allot funds Congress directed to be allotted); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020–23 (D.C. Cir. 2000) (rejecting agency attempt to use a purported guidance document as a binding norm without following the procedures required for legislative rulemaking); *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 327–28 (2014) (warning that allowing agencies to rewrite statutory terms to suit their own sense of policy would "deal a severe blow to the Constitution's separation of powers").

as a means of effectively rewriting the law. *Id.* at 400–01. That principle applies with even greater force where, as here, Congress has spoken in mandatory terms and left no ambiguity to resolve. Where the statute is clear, the Executive's duty is to follow it, not re-interpret it. Any contrary approach would allow agencies to exercise the very lawmaking authority constitutionally reserved for Congress.

The Executive nevertheless created new resident and nonresident annual passes, assigned different prices to them, and placed political images on the resident pass instead of the contest-winning Glacier National Park photograph selected through the congressionally required public process. That matters not simply because these particular choices concern a popular public-lands program, but because they present the clearest possible separation-of-powers problem. This case illustrates the very constitutional injury described above: the Executive's substitution of its own preferences for Congress's enacted commands. Here, Congress enacted a specific statutory scheme governing the America the Beautiful Pass and used mandatory language to direct how that scheme must operate. Congress thus made the relevant policy choices itself. It decided what pass would exist, how additional passes would be limited, and how the image on the pass would be selected. The Executive's role was not to revisit those choices, but to carry them into effect. The agency's actions in this case are not the implementation of Congress's design but departures from it. They reflect an executive judgment that Congress's instructions may be modified, rearranged, or partially disregarded when agencies prefer a different outcome.

This case is a particularly stark example of why Congress has a substantial institutional interest in faithful execution of the laws it enacts. The FLREA leaves no meaningful discretion on the points at issue here. Congress's repeated use of "shall" was deliberate, and its prohibition that the Secretary "may not" establish any other national recreation pass contained no exceptions.

9

Where Congress uses mandatory language and then expressly forecloses alternatives, the

Executive cannot characterize deviation as mere administration. At that point, deviation becomes

revision. And revision of statutory policy is a legislative power granted only to Congress. Even

modest departures are constitutionally significant because they assert the power to decide which

parts of Congress's directive will be honored and which will be set aside. That is an authority the

Executive does not possess. *See U.S. v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress

provides exceptions in a statute, it does not follow that courts [or agencies] have authority to

create others."); *Navajo Nation v. Azar*, 302 F. Supp. 3d 429, 439 (D.D.C. 2018) (finding that a

statute "'unambiguously foreclose[s] the agency's statutory interpretation . . . by prescribing a

precise course of conduct other than the one chosen by the agency'" (quoting *Vill. of Barrington

v. Surface Transp. Bd.*, 636 F.3d 650, 659 (D.C. Cir. 2011))).

If tolerated here, such conduct would signal that clear statutory commands may be

disregarded whenever the Executive deems it inconvenient—an outcome the Constitution does

not permit. The Executive must follow the law as Congress wrote it. That is why Amici have a

strong interest in this case, and why the Court should reject any attempt to recast these actions as

lawful implementation rather than what they are: a marked and deliberate departure from

Congress's command (as well as the agency's past policy and practice). What is at stake is not

simply a pass or a photograph, but the enduring principle that the Executive must obey

Congress's laws.

10

**CONCLUSION**

For these reasons, this Court should declare Defendants in violation of the Federal Lands Recreation Enhancement Act and, additionally, vacate and remand Defendant's decisions concerning the 2026 Annual America the Beautiful passes.

Respectfully submitted,

*/s/ William S. Eubanks II*
William S. Eubanks II (local counsel)
DC Bar No. 987036
Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com

*/s/ Daniel Rohlf*
Daniel Rohlf
OR Bar No. 990069
*Pro Hac Vice Application Pending*
10101 S. Terwilliger Blvd.
Portland, OR  97219
(503 768-6707
rohlf@lclark.edu

Counsel for *Amicus Curiae*

11