**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>DOUGLAS BURGUM, SECRETARY, U.S. DEPARTMENT OF THE INTERIOR, *et al*.,<br><br>        Defendants. | Case No. 1:25-cv-4285-CJN |

<u>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

     I.     Legal Background ................................................................................................ 2

     II.    Factual Background ............................................................................................ 3

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT .................................................................................................................... 5

     I.     Plaintiff Lacks Article III Standing. ................................................................. 6

          A.     Plaintiff fails to establish associational standing ..................................... 6

              1.     Hobson's Choice ............................................................. 8

              2.     Plaintiff's Legal and Partisan Objections Do Not Confer Standing .................................................................................11

              3.     Reduced Revenues .........................................................11

          B.     Plaintiff's alleged harm is self-inflicted and causation cannot exist......... 14

CONCLUSION................................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984)............................................................................................1, 11

*Am. Legion v. Am. Humanist Ass'n*,
    588 U.S. 29 (2019).................................................................................................. 9

*Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*,
    317 F.3d 334 (D.C. Cir. 2003) .............................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................... 12

*Ass'n of Am. Physicians & Surgeons v. Sebelius*,
    901 F. Supp. 2d 19 (D.D.C. 2012) ........................................................................ 13

*Attias v. Carefirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017) .............................................................................. 12

*Bhd. of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.*,
    457 F.3d 24 (D.C. Cir. 2006) .......................................................................... 14, 15

*Bowen v. Kendrick*,
    487 U.S. 589 (1988)................................................................................................. 6

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................... 5

*Cape Cod Charter Boat Ass'n v. Burgum*,
    810 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................... 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................... 12

*\*Env't Def. Fund. v. Fed. Energy Regul. Comm'n*,
    2 F.4th 953 (D.C. Cir. 2021) ............................................................................. 9, 10

*\*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)......................................................................................1, 2, 6, 11

*Haase v. Sessions*,
    835 F.2d 902 (D.C. Cir. 1987) ............................................................................... 7

*Humane Soc'y of U.S. v. Babbitt*,
    46 F.3d 93 (D.C. Cir. 1995) ..................................................................................11

*Huron v. Berry*,
    12 F. Supp. 3d 46 (D.D.C. 2013) .......................................................................... 14

*In re Navy Chaplaincy*,
   534 F.3d 756 (D.C. Cir. 2008) ...................................................................................... 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...................................................................................................... 5

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
   507 U.S. 163 (1993) ...................................................................................................... 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...................................................................................................... 1

*\*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 6, 10, 13

*N.Y. Republican State Comm. v. Sec. & Exch. Comm'n*,
   927 F.3d 499 (D.C. Cir. 2019) ............................................................................... 12, 13

*Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006) .................................................................................... 14

*Petro-Chem Processing, Inc. v. EPA*,
   866 F.2d 433 (D.C. Cir. 1989) .................................................................................... 15

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ...................................................................................... 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................................ 5

*Stover v. Nat'l Park Serv.*,
   2025 WL 3467585 (D.D.C. Dec. 3, 2025) ................................................................... 14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...................................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................................... 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...................................................................................................... 7

*United Transp. Union v. Interstate Com. Comm'n*,
   891 F.2d 908 (D.C. Cir. 1989) .................................................................................... 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) .................................................................................................. 6, 9

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) .............................................................................. 3

iii

**Statutes**

16 U.S.C. § 6801(10) ............................................................................................................... 2

16 U.S.C. § 6801(11)(A)-(B) ................................................................................................... 2

16 U.S.C. § 6801(3) ................................................................................................................. 2

16 U.S.C. § 6801(4) ................................................................................................................. 2

16 U.S.C. § 6801(7) ................................................................................................................. 2

16 U.S.C. § 6802(a) ................................................................................................................. 2

16 U.S.C. § 6804 ...................................................................................................................... 3

16 U.S.C. § 6804(a) ................................................................................................................. 1

16 U.S.C. § 6804(a)(1) ............................................................................................................ 3

16 U.S.C. § 6804(a)(10) .......................................................................................................... 4

16 U.S.C. § 6804(a)(2) ............................................................................................................ 3

16 U.S.C. § 6804(a)(4) ............................................................................................................ 3

16 U.S.C. § 6804(a)(5) ............................................................................................................ 3

16 U.S.C. § 6804(a)(6)(A)(i)(I) .............................................................................................. 3

16 U.S.C. § 6804(b)(1)-(3) ...................................................................................................... 3

16 U.S.C. § 6807(a)(3)(A)-(D) ............................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 5

Fed. R. Civ. P. 12(h)(3) ........................................................................................................... 5

iv

**INTRODUCTION**

Plaintiff asks this Court to halt the sale of a national park pass, even though the 2026 passes will only be sold for the next six months. Why? Because it objects to the use of President Trump's image on the pass. But Plaintiff's aesthetic and political objections to the use of a particular image do not establish the injury-in-fact necessary to support Article III standing. *See Allen v. Wright*, 468 U.S. 737, 756 (1984) (federal courts are not a forum "for the vindication of the value interests of concerned bystanders" (citation omitted)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). To hold otherwise would transform federal courts into "a system where 330 million citizens can come [in]to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Article III's injury-in-fact requirement instead "screens out [a] plaintiff[] who might," as here, "have only a general legal, moral, ideological, or policy objection to a particular government action." *Id.* at 381.

A critical part of the Federal Lands Recreation Enhancement Act ("FLREA") is the "National Parks and Federal Recreational Lands Pass" ("Interagency Pass"), which provides passholders nationwide access to federal recreational lands and waters at a flat-yearly rate. 16 U.S.C. § 6804(a). Defendants have held, as FLREA requires, an annual competition to select an image to be displayed on the Interagency Pass.[1] For the 2026 Interagency Pass, Defendants used the contest-winning photograph on the non-resident version, and they used an image of President Washington and Trump ("Challenged Image") on the resident version.

---

[1] Defendants are Douglas Burgum, in his official capacity as Secretary of the U.S. Department of the Interior; the U.S. Department of the Interior; the National Park Service; Brooke Rollins, in her official capacity as Secretary of the U.S. Department of Agriculture; and the U.S. Department of Agriculture. First Am. Compl. ("Am. Compl."), Dkt. No. 15.

Plaintiff's initial Complaint failed to allege facts sufficient to support Article III standing. And Plaintiff's Amended Complaint is more of the same. Rather than bolster the standing allegations in its Amended Complaint, Plaintiff resorts to declarations appended to their premature motion for summary judgment. Even if this Court considers those declarations, they fail to cure Plaintiff's standing deficiencies. To start, Plaintiff's aesthetic, educational, and political objections to the use of President Trump's image fail to satisfy the injury-in-fact and causation requirements for Article III standing. Nor does the use of the Challenged Image subject Plaintiff's members to a "Hobson's choice" that could confer standing. Any alleged injury that Plaintiff's members incur by choosing not to purchase the 2026 Interagency Pass would be self-inflicted and insufficient to confer standing. Instead, Plaintiff asserts only a legal objection to Defendants' alleged FLREA violation—precisely the generalized injury to the public interest that courts routinely conclude does not support standing. *Hippocratic Med.*, 602 U.S. at 381-82. This Court should dismiss Plaintiff's First Amended Complaint for lack of subject-matter jurisdiction with prejudice.

## BACKGROUND

### I.  Legal Background

FLREA provides that "the Secretary may establish, modify, charge, and collect recreation fees" at federal recreational lands and waters.[2] 16 U.S.C. § 6802(a). And FLREA requires the Secretary to establish (and charge fees for) "an interagency national pass"—the Interagency Pass.

---

[2] FLREA defines "Secretary" to include the Secretary of the Interior and the Secretary of Agriculture, 16 U.S.C. § 6801(11)(A)-(B), "Secretaries" to mean the Interior and Agriculture Secretaries acting jointly, *id.* § 6801(10) , "recreation fee" to include "an entrance fee, standard amenity recreation fee, expanded amenity recreation fee, or special recreation permit fee[,]" *id.* § 6801(7), and "Federal recreational lands and waters" to include "lands or waters managed by a Federal land management agency"—*i.e.*, "National Park Service," "United States Fish and Wildlife Service," "Bureau of Land Management," "Bureau of Reclamation," or "Forest Service[,]" *id.* §§ 6801(3)-(4) .

*Id.* § 6804(a)(1).  The Secretary is required to "establish the price at which the [Interagency Pass] will be sold to the public."  *Id.* § 6804(a)(5).

The Interagency Pass is good "for a period of 12 months from the date of the issuance" and covers entrance fees and standard amenity recreation fees, wherever those fees are charged.  *Id.* § 6804(a)(1), (4), (6)(A)(i)(I).  FLREA requires the Secretary to provide discounted or free Interagency Passes based on age and military service, as well as lifetime passes for persons with disabilities, military veterans, and Gold Star families.  *Id.* § 6804(b)(1)-(3).  The Interagency Pass and lifetime passes provide all passholders with the same benefits—*i.e.*, covers entrance fees and standard amenity recreation fees wherever they are charged.  *See id.* § 6804.  Fee revenues must generally be used to benefit visitors, including facility maintenance and repair, improving visitor services, law enforcement, and habitat restoration directly related to wildlife-dependent recreation.  *Id.* § 6807(a)(3)(A)-(D).

FLREA requires the Secretaries to hold "an annual competition to select the image to be used on the [Interagency Pass]."  *Id.* § 6804(a)(2).  The competition is "open to the public and used as a means to educate the American people about Federal recreational lands and waters."  *Id.*

## II.    Factual Background

The Secretaries and the National Park Service have contracted with the National Parks Foundation and Booz Allen Hamilton to coordinate and run the annual image competition.  Am. Compl. ¶ 40.  The image competition for the 2026 Interagency Pass opened on June 13, 2024, and ran through December 31, 2024.  *Id.* ¶ 56; *see also* 2024 Share the Experience Official Rules ("2024 Official Rules") at 1, attached as Exhibit A.[3]  The contest rules state that the winning

---

[3] Plaintiff references the official contest rules in its First Amended Complaint but does not attach the rules themselves. *See* Am. Compl. ¶¶ 4, 41, 50, 55.  For the Court's convenience, Defendants include those rules as Exhibit A.  *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d

photograph "may be featured on the 2026 [Interagency] Pass." 2024 Official Rules at 4.  In June 2025, the National Parks Foundation announced the winners of the 2024 competition, including the first-place winner—an image of Glacier National Park.  Am. Compl. ¶ 57.

In November 2025, the Department of the Interior announced a "significant modernization of national park access."  *Id.* ¶ 46; *see also* Dep't of the Interior Announces Modernized, More Affordable National Park Access, Dep't of Interior (last updated Dec. 18, 2025), https://www.doi.gov/pressreleases/department-interior-announces-modernized-more-affordable-national-park-access.  This modernization included new FLREA-mandated digital recreation passes, Dep't of the Interior Announces Modernized, More Affordable National Park Access, *supra*; *see also* 16 U.S.C. § 6804(a)(10), along with a resident-focused fee structure for the Interagency Pass.  Am. Compl. ¶ 47.  Interior also announced that an image of Presidents Washington and Trump would be displayed on the resident version of the 2026 Interagency Pass, while the contest-winning image of Glacier National Park would be displayed on the non-resident version of the pass.  *Id.* ¶ 49.

Two weeks later, Plaintiff sued claiming that Defendants violated FLREA and the APA by not using the contest winning image on all versions of the Interagency Pass.  Compl. ¶¶ 45-52, Dkt. No. 1.  Plaintiff asked the Court to "[v]acate and remand" the decisions related to the 2026 Interagency Pass for "further consideration and explanation," and to enjoin "use of any [Interagency Pass] that unlawfully displays an image of President Trump unless and until Defendants

---

117, 119 (D.D.C. 2011) (courts may consider, on a motion to dismiss, "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (citation omitted)).

comply with [FLREA] and [the APA.]" *Id.* Prayer for Relief ¶¶ 2-3. Plaintiff now seeks the very same relief in its First Amended Complaint.[4] Am. Compl. Prayer for Relief ¶¶ 2-3.

## STANDARD OF REVIEW

Standing is a threshold jurisdictional issue that must be addressed before considering the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of proof on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. *Id.* When evaluating a Rule 12(b)(1) motion, courts must accept the allegations in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). But courts need not draw inferences in a plaintiff's favor if those inferences are unsupported by facts alleged in the complaint, nor must a court accept a plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). If the court determines it lacks subject-matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(b)(1), (h)(3) .

## ARGUMENT

Article III standing requires a plaintiff to establish: (1) an "injury-in-fact" to a legally protected interest that is concrete and particularized; (2) that the injury is "fairly traceable to the challenged" conduct rather than the action of a third party; and (3) that it is likely, as opposed to

---

[4] In March 2026, Defendants moved to dismiss Plaintiff's complaint. Dkt. No. 9. Plaintiff responded by amending its complaint, Dkt. No. 15, and moving for summary judgment, Dkt. No. 16. At Defendants request, *see* Dkt. Nos. 13, 24, this Court stayed briefing on Plaintiff's Motion for Summary judgment "[b]ecause resolution of standing issues through a motion to dismiss may obviate the need to address merits issues[.]" Minute Order (May 6, 2026).

speculative, that the injury will be redressed by a favorable judicial decision. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiff fails to establish an injury-in-fact to a legally protected interest sufficient to support associational standing because none of its identified members would have standing to sue. Rather, the harms alleged by Plaintiff's members are self-inflicted and not caused by the Defendants' actions. The Court should dismiss Plaintiff's First Amended Complaint with prejudice.

## I.      Plaintiff Lacks Article III Standing.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. To establish standing, a plaintiff must show: (1) an "injury in fact" to a legally protected interest that is "concrete and particularized;" (2) that is "fairly traceable to the challenged [conduct] of the defendant;" and is (3) likely, as opposed to speculative, that the injury will be redressed by a favorable judicial decision. *Summers*, 555 U.S. at 493.

### A.      Plaintiff fails to establish associational standing.

To establish associational standing,[5] an organization must show that "(1) at least one of its members would have standing to sue in [his or her] own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). And the organization's member—like an

---

[5] Plaintiff does not assert organizational standing. *See generally* Am. Compl. Nor could it. An organization cannot show standing based on "the 'intensity of [its] interest' or because of strong opposition to the government's conduct[.]" *Hippocratic Med.*, 602 U.S. at 394 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982), *abrogated in part on other grounds by Bowen v. Kendrick*, 487 U.S. 589 (1988)). Rather, an organization must show that the defendant's conduct "directly affected and interfered with [its] core business activities." *Id.* at 395. Plaintiff fails to make that showing here.

individual plaintiff—must establish standing for each claim asserted and each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).

The injuries that Plaintiff's members allege fall into two broad categories. [6]  First, Plaintiff alleges that its members face a "Hobson's choice" of "participat[ing] in unlawful partisan activity they disagree with and being subjected to a recurring aesthetic harm from buying and using an [Interagency Pass] adorned with [President] Trump's visage" rather than the contest-winning image *or* "forgoing entirely the monetary and other benefits of buying" an Interagency Pass. [7]  Am. Compl. ¶ 15.  Second, Plaintiff speculates that people may choose not to purchase the Interagency Pass, which could result in reduced revenues for federal land management agencies, which then may diminish the visitor amenities that Plaintiff's members use and rely on.  Am. Compl. ¶¶ 11-12.  Neither alleged harm satisfies Article III's injury-in-fact requirement.

---

[6] Plaintiff attached five declarations from its members to its Motion for Summary Judgment, which is now stayed.  Mem. in Supp. of Mot. Summ. J. 26, Dkt. No. 16-2; Decl. of Kierán F. Suckling ("Suckling Decl."), Dkt. No. 16-4; Decl. of Ryan Deibert ("Deibert Decl."), Dkt. No. 16-5; Decl. of Stephen Raher ("Raher Decl."), Dkt. No. 16-6; Decl. of Melanie Topham ("Topham Decl."), Dkt. No. 16-7; Decl. of Brett Hartl ("Hartl Decl."), Dkt. No. 16-8.  Despite amending its Complaint contemporaneously with moving for summary judgment, Plaintiff only included allegations from two declarants—Ryan Deibert and Melanie Topham.  Am. Compl. ¶¶ 16-17.  While Plaintiff should not be allowed to rely on allegations that they could have included in its amended complaint but chose not to, we address those declarations here given courts' broad authority to consider declarations when evaluating standing on a motion to dismiss.  *See Cape Cod Charter Boat Ass'n v. Burgum*, 810 F. Supp. 3d 1, 10 (D.D.C. 2025), *appeal filed*, No. 25-5455 (D.C. Cir. Dec. 17, 2025).  But when the issue under review is limited to Article III standing, considering such declarations does not convert this motion to dismiss into a motion for summary judgment.  *See Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987).

[7] As part of its "Hobson's choice" theory of harm, Plaintiff's members allege injuries stemming from their recreational and educational interests.  *See, e.g.*, Raher Decl. ¶ 23 (alleging recreational and educational interests will be harmed if he "must choose to refrain from visiting these areas due to [his] refusal to buy an [Interagency Pass] with politically partisan imagery").  Plaintiff also broadly alleges that its members' decision not to purchase the Interagency Pass will harm their cultural interests.  Am. Compl. ¶¶ 17-18.  But none of the declarants allege any cultural injury.

7

### 1. Hobson's Choice.

Plaintiff alleges that its members face a "Hobson's choice" between "being subjected to a recurring aesthetic harm from buying and using an [Interagency Pass] adorned with [President] Trump's visage" or "forgoing entirely the monetary and other benefits of buying a pass."[8]  Am. Compl. ¶ 15; Deibert Decl. ¶¶ 21-22; Topham Decl. ¶¶ 27-30.  But this argument is misplaced. Plaintiff's members allege aesthetic injuries are nothing more than generalized grievances, which cannot support standing.  And any alleged harm to the pecuniary interests of Plaintiff's members because of their independent decision not to purchase the Interagency Pass is purely self-inflicted and is neither cognizable nor traceable to Defendants' challenged conduct.  Thus, any alleged harm stemming from this so-called Hobson's choice cannot support Article III standing.

***Aesthetic Injury.***  Plaintiff's members allege that they must choose between looking at the Challenged Image and spending more money or reducing how often they visit public lands.  *See e.g.*, Topham Decl. ¶¶ 27, 30 (alleging she will not purchase a pass until the Challenged Image is removed and she "may have to spend additional time looking into other passes or additional money and time waiting in lines to pay one-time entrance or amenity fees"); Deibert Decl. ¶ 22 (alleging he will not purchase the Interagency Pass until it is "once again offered with an image of our shared public lands," and until then "expect[s] this will cost me more monetarily (approximately $50 annually), or it will cause me to limit my use of recreation areas on public lands"); Hartl Decl. ¶¶ 11, 15 (alleging that when his current annual Interagency Pass expires, he will "either have to

---

[8] To the extent Plaintiff suggests that its members have an aesthetic interest in enjoying the specific annual contest-winning image of Glacier National Park, the image is available for continued enjoyment on the non-resident version of the 2026 Interagency Pass, and online at Contest Spotlights, Share the Experience https://www.sharetheexperience.org/spotlights (last visited May 22, 2026) (scroll down to "2024 Share the Experience Winners").  Am. Compl. ¶¶ 6, 13, 15, 18-19; Suckling Decl. ¶ 16; *see* Deibert Decl. ¶ 20.  Plaintiff thus fails to show that its members will lose access to an image of a natural vista that holds aesthetic interest for them.

spend more money or reduce [his] use of public lands . . . or in the alternative have[] to look at an image of the President every time [he] choose[s] to recreate on public lands").

But Plaintiff's members do not have a legally protected interest in an image that appeals to their aesthetic interests.  And even if Plaintiff's members had such an interest, none of the declarations Plaintiff submitted show how the individual member will suffer aesthetic harm.  To establish an aesthetic injury, a plaintiff must show that "[their] specific aesthetic interests" are harmed, by describing their particular "use[] and enjoy[ment] [of] the land" beyond "mere incidental viewership," and they must further identify how they *will have to* alter their behavior.  *Env't Def. Fund. v. Fed. Energy Regul. Comm'n (EDF)*, 2 F.4th 953, 969-70 (D.C. Cir. 2021).  The D.C. Circuit has routinely concluded that there is "nothing in the existing case law to suggest that a person who incidentally views something unpleasant has suffered an injury-in-fact for purposes of standing." *See e.g.*, *EDF*, 2 F.4th at 970; *see also Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 84 (2019) (Gorsuch, J., concurring) ("Offended observer standing cannot be squared with this Court's longstanding teachings about the limits of Article III."); *Valley Forge*, 454 U.S. at 485 ("psychological consequence[s] … produced by observation of conduct with which one disagrees … is not an injury sufficient to confer standing.").

In this case, Plaintiff's members allege nothing more than incidental viewership of the Challenged Image—and in some cases, fail even to allege that.  Two declarants allege that they have refrained from purchasing the Interagency Pass because they construe the use of the Challenged Image as "offensively partisan imagery[,]" providing nothing more than bare allegations of "aesthetic injuries" from the imagery.  Deibert Decl. ¶ 21; Hartl Decl. ¶ 12.  But allegations that they are personally offended are insufficient to establish concrete and particularized injuries for standing purposes.  *EDF*, 2 F.4th at 969-70; *see also In re Navy Chaplaincy*, 534 F.3d 756, 763

9

(D.C. Cir. 2008) ("[M]ere personal offense to government action does not give rise to standing to sue."). Meanwhile, another declarant affirmatively asserts that the "images of natural spaces on America's public lands" are "not a factor in our decision to purchase the pass," undermining Plaintiff's claim of aesthetic injury. Topham Decl. ¶ 25. Yet another declarant has an Interagency Pass with a different image that will last through December 31, 2026, and as such, does not have to look at the Challenged Image. Raher Decl. ¶¶ 20-21. "Viewed in full frame, [Plaintiff's members'] alleged aesthetic injuries reflect nothing more than generalized grievances, which cannot support standing." *EDF*, 2 F.4th at 970 (citing *Lujan*, 504 U.S. at 573-74).

*Access to Federal Lands.* Nor has Plaintiff demonstrated the other side of its supposed "Hobson's choice"—that its members face the prospect of being excluded from any federal recreational lands or being forced to spend more money. Each declarant concedes that they *will continue visiting and recreating on federal lands*, with or without the purchase of the Interagency Pass. *See generally* Am. Compl.; *see also* Deibert Decl. ¶ 22 ("I expect that I will instead purchase a Northwest Forest Pass . . . ."); Topham Decl. ¶ 29 ("[T]o visit these sites this year we may be willing to pay higher one-time entrance fees . . . ."); Hartl Decl. ¶ 14 (explaining he will "purchas[e] individual passes at each location" he visits); Raher Decl. ¶ 22 ("I will undoubtedly purchase a Northwest Forest Pass . . . ."); Suckling Decl. ¶ 19 ("I purchased a 2026 America the Beautiful Pass."). Thus, Plaintiff's allegations show that its members' ability to visit recreational areas on public lands is not impaired. *Cf. Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003) (injury is established "when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions").

10

### 2.  Plaintiff's Legal and Partisan Objections Do Not Confer Standing.

Plaintiff also alleges that the use of an image on the Interagency Pass that was not part of the annual image competition violates FLREA and thus harms its members.  Am. Compl. ¶¶ 6, 14-16, 19.  But this argument is misplaced.

Plaintiff's members do not suffer a cognizable injury "simply because [they] believe[] that the government is acting illegally"—even if "their legal objection is accompanied by a strong moral, ideological, or policy objection."  *Hippocratic Med.*, 602 U.S. at 381.  Nor can Plaintiff establish an injury "based only on an 'asserted right to have the Government act in accordance with law,'" *id.* (quoting *Allen*, 468 U.S. at 754)—even if accompanied by strong ideological or policy objections.  Article III's injury-in-fact requirement "screens out plaintiffs who might," as here, "have only a general legal, moral, ideological, or policy objection to a particular government action."  *Id.*; *see also Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995) (general emotional harm "cannot suffice for injury-in-fact for standing purposes").  And that is all Plaintiff alleges here—a collective, generalized, and subjective objection to what they consider "partisan imagery" or imagery.  Deibert Decl. ¶ 21; *see* Hartl Decl. ¶ 12; Raher Decl. ¶ 17; Topham Decl. ¶ 27; Suckling Decl. ¶¶ 16, 20.  Plaintiff thus fails to allege a particularized harm sufficient to show Article III standing.

### 3.  Reduced Revenues

Plaintiff alleges that its members rely on "proper functioning of FLREA to ensure a consistent and reliable funding stream for the creation, operation, and maintenance of the visitor amenities which they utilize and upon which they depend."  Am. Compl. ¶ 11; *see* Suckling Decl. ¶ 20; Topham Decl. ¶ 23.  And Plaintiff speculates that if its members opt not to buy the Interagency Pass, the federal land management agencies may be "deprived of essential funding for their

11

operations[,]" which in turn "would result in the diminishment of the amenities that the public, including Center members, rely upon[.]"  Am. Compl. ¶ 12.  But these hypothetical injuries to the federal land management agencies' general operations and funding do not impair Plaintiff's (or its members') legally protected interests—rather, they are mere generalized grievances that cannot support standing.  *See United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) (courts must distinguish "allegations of facts … from allegations that are really predictions").  Even assuming Plaintiff's attenuated causal chain—that use of the Challenged Image would result in fewer Interagency Pass sales, reduced revenue for federal land management agencies, and ultimately, diminished visitor amenities—could support an Article III injury, Plaintiff's allegations fail to show a concrete injury to its members.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (explaining that at the pleading stage, the Court is required to make only *reasonable* inferences in a plaintiff's favor).  Plaintiff's allegations are far too general to show "actual or imminent" injuries.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted).  At most, Plaintiff alleges only "conjectural or hypothetical" *future* injuries.  *Id.* (citation omitted).

But to plausibly allege a future injury, Plaintiff must show that its harm is either "certainly impending" or that there is a "substantial risk" it will occur, which in the standing context means that it must be "sufficiently 'imminent.'"  *N.Y. Republican State Comm. v. Sec. & Exch. Comm'n*, 927 F.3d 499, 504 (D.C. Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013), *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), and *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017)).  Plaintiff relies on no more than mere conjecture to allege that the Challenged Image will cause Interagency Pass sales to decline.  *See* Suckling Decl. ¶ 20 (explaining he is "*concerned* that there will be a loss in revenues from sales" (emphasis added)).  And based on that conjecture, Plaintiff asks this Court to assume that *any* reduction in sales of the

12

Interagency Pass will result in a reduction in federal agency revenue, and in turn, will affect its members' ability to enjoy federal lands. *Id.* (alleging that loss in revenues from sales will "mean less funding" for "maintenance, repair, and enhancement of our public lands and other purposes related to the use and enjoyment by all visitors"); *see also* Am. Compl. ¶ 12 (Plaintiff alleging "any such decline in funding would result in the diminishment of the amenities that the public, including [those that Plaintiff's] members, rely upon").

But to show Article III standing, mere conjecture does not suffice. A plaintiff's asserted injury must be "at least *imminent*," not just "conceivable" or a speculative possibility. *Lujan*, 504 U.S. at 564 n.2 & 566 (citation omitted). Plaintiff does not suggest—nor could it—that reduced Interagency Pass sales or reduced revenues are "certainly impending" or "sufficiently 'imminent.'" *N.Y. Republican State Comm.*, 927 F.3d at 504 (citations omitted). Plaintiff fails to allege any harm—such as a diminution in visitor amenities—will occur at a certain point without a certain volume of Interagency Pass sales.

In sum, the chain of inferences that Plaintiff asks the Court to make—the use of the Challenged Image will result in less Interagency Pass sales; a decrease in pass sales will diminish funding available to federal land management agencies; and the reduction in funding will diminish the amenities that Plaintiff's members rely upon —is too speculative to satisfy the injury requirement. *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 901 F. Supp. 2d 19, 33 (D.D.C. 2012), (attenuated chain of hypothetical events fails to show Article III standing), *aff'd*, 746 F.3d 468 (D.C. Cir. 2014). Aside from its assumption that there will be reduced sales of the Interagency Pass (and thus reduced revenues), Plaintiff fails to explain how the activities and amenities would be diminished. Simply put, Plaintiff's allegations fail to support the inference that its members are, or will be, harmed by the Defendants' use of the Challenged Image on the 2026 Interagency Pass.

B.    **Plaintiff's alleged harm is self-inflicted and causation cannot exist.**

Any injury flowing from Plaintiff's members' decision not to buy the 2026 Interagency Pass is a self-inflicted harm that cannot establish injury-in-fact or causation for Article III standing. *Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a cognizable "injury," nor is it "fairly traceable to the defendant's challenged conduct"); *see also Stover v. Nat'l Park Serv.*, Civ. A. No. 24-639, 2025 WL 3467585, at *3 n.2 (D.D.C. Dec. 3, 2025) ("If [the plaintiff] chose not to enter Hyde Park because of this principled objection, as she alleges she did in January 2024, that too would be a 'self-inflicted harm' that would not satisfy the injury-in-fact requirement." (citation omitted)), *appeal filed*, No. 25-5459 (D.C. Cir. Dec. 19, 2025); *Huron v. Berry*, 12 F. Supp. 3d 46, 52 (D.D.C. 2013) ("Causation cannot exist when the injury alleged is self-inflicted."), *aff'd sub nom.  Huron v. Cobert*, 809 F.3d 1274 (D.C. Cir. 2016); *Bhd. of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.*, 457 F.3d 24, 29 (D.C. Cir. 2006) (to the extent that the plaintiff suffered a harm "voluntarily, [it] is simply not fairly traceable to the challenged action of the agency" (citation modified)).

Each declarant concedes that *they chose* not to purchase the 2026 Interagency Pass.  *Nat'l Family Planning* 468 F.3d at 831 (no cognizable injury where the "supposed dilemma . . . because the association's asserted injury appears to be largely of its own making"); Deibert Decl. ¶ 21; Raher Decl. ¶ 17; Topham Decl. ¶ 27; Hartl Decl. ¶ 12.  It is thus *their* decision—and not Defendants'—that will require them to spend more money to access public lands.  *See e.g.*, Deibert Decl. ¶¶ 21-22 (explaining he "cannot bring [himself] to purchase this Annual Pass" and instead, will instead purchase an alternative pass which will cost "more monetarily"); Hartl Decl. ¶ 14 (asserting that he "will decline to purchase a new Interagency Annual pass in July of this year" and for this

14

reason, he expects "to spend more money by purchasing individual passes" at the locations he visits.); Topham Decl. ¶¶ 27, 30 (explaining she "will not buy a pass" and "may have to spend additional time looking into other passes or additional money"); Raher Decl. ¶ 22 (speculating that he "will not buy" a new Interagency Pass when her current one expires on December 31, 2026, and he will "incur additional entrance fees in excess of $40" in 2027). Such self-inflicted injuries do not support standing where they are "so completely due to the [complainant's] own fault as to break the causal chain." *Bhd. of Locomotive Eng'rs*, 457 F.3d at 28 (alteration in original) (quoting *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989)). None of these alleged harms are sufficient to show standing because they are self-inflicted and thus not fairly traceable to Defendants' conduct.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

Respectfully submitted this 22nd day of May 2026.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General

*/s/ Alexa V. Penalosa*
ALEXA V. PENALOSA (AZ 038005)
JENNIFER A. NAJJAR (CO 50494)
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street NE

15

Washington, D.C. 20002
Phone: (202) 294-3569 (Penalosa)
Email: alexa.penalosa@usdoj.gov

*Attorneys for Defendants*

16