**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,

      *Plaintiff,*

    v.

BURGUM, *et al.*,

      *Defendants.*

Civil Action No.: 1:25-cv-04285 (CJN)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

DATED: June 5, 2026

Respectfully submitted,

*/s/ Amy Atwood*
Amy R. Atwood Greenwald (D.C. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

Ivan Ditmars (D.C. CA00243)
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7100
iditmars@biologicaldiversity.org

*Attorneys for Plaintiff*

**RECEIVED**

JUNE 5 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ------------------------------------------------------------------------------iii

INTRODUCTION ------------------------------------------------------------------------------------------1

LEGAL BACKGROUND ---------------------------------------------------------------------------------2

   A.  Motions to Dismiss under Rule 12(b)(1) --------------------------------------------------2

   B.  The Federal Lands Recreation Enhancement Act ----------------------------------------3

       1.  The America the Beautiful—The National Parks and Federal Lands Recreation Lands Pass----------------------------------------------------------------------4

       2.  Free and Discounted Pass Types, and the Digital Version --------------------5

       3.  The Annual Image Competition -----------------------------------------------6

FACTUAL BACKGROUND ------------------------------------------------------------------------------7

   A.  The 2024 Share the Experience Photo Contest ------------------------------------------8

   B.  The 2026 America the Beautiful Pass -----------------------------------------------------8

ARGUMENT------------------------------------------------------------------------------------------- 11

   I.  PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES FACTS THAT ESTABLISH EACH ELEMENT OF ARTICLE III ASSOCIATIONAL STANDING WHICH MAY BE FURTHER CONFIRMED BY THE DECLARATIONS FROM ITS MEMBERS. ------------------------------------------------------------------------------- 11

      A.  The Center Has Members Who Could Sue in Their Own Right Due to Actual and Ongoing Injuries to Their Legally Protected Interests That Are Caused by Defendants' Conduct and Redressable by a Favorable Ruling from The Court. ------------------------------------------------------------------------------- 12

         1.  Plaintiff's Members Have a Personal Stake in a Legally Compliant Annual Pass. ------------------------------------------------------------------------------- 13

         2.  Plaintiff's Protected Interests in a Lawful Annual Pass are Being Injured by Defendants' Use of the Trump Image on the 2026 Pass. ---------------------- 18

         3.  The Injuries to the Center's Members are Fairly Traceable to Defendants' Unlawful Use of the Trump Image on the 2026 Pass.------------------------ 20

4.  The Requested Relief Will Redress the Injuries of Plaintiff's Members. ---- 24

B.  The Interests of the Center's Members are Germane to its Organizational Interests. ------------------------------------------------------------------------------------ 25

C.  Neither the the Center's Claim Nor Its Requested Relief Require Its Members to Participate in this Lawsuit. ----------------------------------------------------------- 26

II.  DEFENDANTS' ARGUMENTS ARE WITHOUT MERIT. ------------------------------ 26

A.  The Harms to Plaintiff's Interests Are Neither Attenuated Nor Speculative; They Have Already Manifested.------------------------------------------------------------- 26

B.  The Harms to Plaintiff's Individual Members Are Not Subjective or Merely Emotional, Ideological, or Political. ----------------------------------------------- 27

C.  Plaintiff's Amended Complaint Alleges Plausible Economic Injuries-in-Fact from Reduced Revenues from Annual Pass Sales Due to Use of the Trump Image on the 2026 Pass ----------------------------------------------------------------------------- 30

III. IF THE COURT GRANTS DEFENDANTS' MOTION IT SHOULD DISMISS WITHOUT PREJUDICE AND PROVIDE LEAVE TO AMEND. ----------------------- 33

CONCLUSION------------------------------------------------------------------------------------- 33

## TABLE OF AUTHORITIES

**Cases**

*Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024) ........................22, 23, 32

*Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ........................................................ 31

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334 (D.C. Cir. 2003).................22

*Cape Cod Charter Boat Ass'n v. Burgum*, 810 F.Supp.3d 1 (D.D.C. 2025) ..................................... 11

*Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192 (D.C. Cir. 2011).......................23, 24, 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). 18, 19, 22, 23

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019).................... 31

*Kotab v. BLM*, 546 F.Supp.3d 1012 (D. Nev. 2021.................................................................. 11, 17

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990) ....................................................... 2, 3, 17

*Nat'l Parks Cons. Assn. et al. v. U.S. Dep't of the Interior*, No. 1:26-CV-10877-AK, 2026 WL

    1601790 (D. Mass. June 4, 2026) .............................................................................................. 14

*Pope v. Yazam, Inc.*, No. 1:24-CV-03540 (CJN), 2026 WL 877484 (D.D.C. Mar. 31, 2026)...........3

*Sandoval v. U.S. Dep't of Justice*, 322 F.Supp.3d 101 (D.D.C. 2018) ................................................3

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002) .................................................................... 2, 11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................... 17

*Summers v. Earth Is. Inst.*, 555 U.S. 488 (2009) .............................................................................. 17

*Texas Corn Producers v. U.S. Env't Prot. Agency*, 141 F.4th 687 (2025) ....................................... 31

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...................................................................... 3, 17

*Warth v. Seldin*, 422 U.S. 490 (1975)......................................................................................... 23, 24

**Statutes**

16 U.S.C. § 6801(3) ............................................................................................................... 3

16 U.S.C. § 6801(4) ............................................................................................................... 4

16 U.S.C. § 6802(a) ............................................................................................................... 3

16 U.S.C. § 6802(b) ............................................................................................................... 4

16 U.S.C. § 6802(d) ............................................................................................................... 4

16 U.S.C. § 6804(a)(1) ........................................................................................................... 4

*16 U.S.C. § 6804(a)(2) ............................................................................................... 6, 7, 10

16 U.S.C. § 6804(a)(4) ........................................................................................................... 1

*16 U.S.C. § 6804(a)(9) ......................................................................................................... 6

16 U.S.C. § 6806(c)(1)(A) .................................................................................................... 15

16 U.S.C. § 6806(d) ............................................................................................................. 15

16 U.S.C. § 6807 ................................................................................................................... 4

Pub. L. No. 118-234, 138 Stat. 2836 (2024) ......................................................................... 6

**Other Authorities**

*Federal Lands Recreation Enhancement Act: Hearing Before the Subcomm. on Nat'l Parks of the Com. on Energy and Natural Resources*, 109th Cong. 11*, at 12-13 (2005) .................................... 4

110 S. Rpt. 350, at 6 (2008) .................................................................................................. 6

S. Hrg. 109-11 ....................................................................................................................... 6

S. REP. NO. 110-377 (2008) ............................................................................................. 5, 16

**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 32

Rule 12(b)(1) ........................................................................................................................ 27

v

## **INTRODUCTION**

Plaintiff's claim is not rooted in mere ideological displeasure with a political figure, but in concrete and particularized injuries to the judicially cognizable interests of individual members of Plaintiff, the Center for Biological Diversity ("the Center"), a 501(c)(3) nonprofit organization dedicated to protecting endangered species.[1]  These injuries to the Center's members, as plead in Plaintiff's First Amended Complaint ("Am. Compl.") as well as the declarations filed by members of the Center in support of its motion for summary judgment, are actual and ongoing, affecting Plaintiff's members in ways that are specific and personalized.

As shown below, Plaintiff's Amended Complaint surpasses the standard for defeating a Rule 12(b)(1) motion to dismiss for lack of standing, as it sets forth the material jurisdictional facts needed to establish plausible injuries-in-fact to the protected interests of Plaintiff's members in a legally compliant "America the Beautiful Pass—The National Parks and Federal Recreational Lands Pass" under § 805(a)(4) of the Federal Lands Recreation Enhancement Act, 16 U.S.C. § 6804(a)(4) ("America the Beautiful Pass" or "Annual Pass").

As set forth in Plaintiff's Amended Complaint and further discussed in declarations from four of its members in support of Plaintiff's motion for summary judgment, Defendants' use of the Trump Image on the 2026 Pass directly places these members in the concrete-yet-impossible position of, on the one hand, having to choose between purchasing a statutorily noncompliant pass or, on the other hand, incurring additional costs in pursuing their recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests in

---

[1] *See* www.biologicaldiversity.org.

entering and using Federal recreation areas with the benefit of the America the Beautiful Pass.

These are not subjective or generalized, merely emotional, political, or ideological grievances about government policy.  They are specific, particularized, and continuing injuries-in-fact to judicially cognizable interests of the Center's members caused by the actions of the Defendants that impact their use of public lands.  Such harms present the quintessential "Hobson's Choice" that is a well-established injury-in-fact giving rise to Article III standing for Plaintiff.

For these and all the following reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion, lift the stay of briefing, and order Defendants to produce the administrative record and respond to Plaintiff's Motion for Summary Judgment within 14 days of the order.

## LEGAL BACKGROUND

### A. Motions to Dismiss under Rule 12(b)(1)

To defeat Defendants' Motion, Plaintiff's Amended Complaint must show:

> (A) that it has members who could sue in their own right because they have:
>
>> (1) suffered an injury in fact;
>> (2) that is traceable to the challenged conduct of Defendants; and
>> (3) which is likely to be redressed by a favorable decision by the Court.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) ("*Lujan*").  In addition, Plaintiff must show:

> (B) that the interests of these members are germane to those of the Center's mission to protect public lands; and
>
> (C) that neither the Center's claim nor requested relief requires that its members participate in the lawsuit as individually named plaintiffs, as no third parties are required to adjudicate Plaintiff's claim for relief.

*Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

Thus, to defeat Defendants' Motion, Plaintiff need show that when taken as true, the factual allegations in its Amended Complaint allow a reasonable inference that the actions taken by Secretary Burgum and NPS have affected the judicially cognizable interests of Center members in personal and individualized ways, and that they will continue to do so without effective relief from this Court. *Lujan*, 504 U.S. at 560 & n.1; *Pope v. Yazam, Inc.*, No. 1:24-CV-03540 (CJN), 2026 WL 877484, at *6 (D.D.C. Mar. 31, 2026) (standing requires "a plaintiff [to] have a 'personal stake' in the case") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("*TransUnion*")) (citation altered).

As the Court may consider documents outside the Amended Complaint to assure that it has jurisdiction, *Sandoval v. U.S. Dep't of Justice*, 322 F.Supp.3d 101, 104 (D.D.C. 2018), Plaintiff urges the Court to consider declarations filed by members of the Center in support of its Motion for Summary Judgment, ECF No. 16. ECF No. 16-5 (Declaration of Ryan Deibert ("Deibert Decl.")); ECF No. 16-6 (Declaration of Stephen Raher ("Raher Decl.")); ECF No. 25-1 (Declaration of Melanie Topham ("Topham Decl.")); ECF No. 16-8 (Declaration of Brett Hartl ("Hartl Decl.")); *see also* ECF No. 16-4 (Declaration of Kierán F. Suckling, Executive Director, Center for Biological Diversity ("Suckling Decl.")).

## B. <u>The Federal Lands Recreation Enhancement Act</u>

FLREA sets forth a comprehensive scheme for the Secretaries and "Federal Recreation Agencies" (or "Federal Recreation Agencies") – including NPS, Fish and Wildlife Service ("FWS"), Bureau of Land Management ("BLM"), Bureau of Reclamation ("BuRec"), and the Forest Service ("USFS"), *see* 16 U.S.C. § 6801(3) – to administer a recreation fees program to collect fees from visitors who enter and use recreation sites on Federal lands (i.e., "Federal

recreational lands and waters"). *Id.* § 6802(a) (authorizing Secretary to "establish, modify, charge, and collect recreation fees at Federal recreational lands and waters"). "Federal recreational lands and waters" are "lands or waters managed by a Federal land management agency." *Id.* § 6801(4). FLREA § 803 specifies how the agencies may expend the revenues they collect under the program. *Id.* § 6802(b) (criteria for establishing and changing recreation fees); *id.* § 6802(d) (limitations on recreation fees); *id.* § 6807 (limitations on expenditures).

1.  **The America the Beautiful—The National Parks and Federal Recreational Lands Pass**

Section 805 of FLREA directs the Secretaries to establish and sell:

> an interagency national pass to be known as the 'America the Beautiful Pass—The National Parks and Federal Recreational Lands Pass' which shall cover the entrance fee and standard amenity recreation fee for all Federal recreational lands and waters for which an entrance fee or a standard amenity recreation fee is charged.

16 U.S.C. § 6804(a)(1). By establishing one national interagency annual pass, Congress intended to consolidate myriad overlapping passes then sold by various Federal Recreation Agencies. *See Recreation Fees: Hearing on S. 2473 and S. 2607 Before the Subcomm. on Energy and Nat. Res.*, 107th Cong. 17 (2002) ("*Sen. Com. Hrg. (2002)*") 9, 13 (statement of Asst. DOI Secretary Lynn Scarlett) (proposing "a new annual interagency pass" to "consolidate the Golden Passes" and "expand the National Parks Pass to all participating agencies and seamless service to the citizen"); *Federal Lands Recreation Enhancement Act: Hearing Before the Subcomm. on Nat'l Parks of the Com. on Energy and Natural Resources*, 109th Cong. 11*, at* 12-13 (2005) ("*S. Com. Hrg. (2005)*") (comments of Asst. DOI Secretary Lynn Scarlett) (explaining the America

4

the Beautiful Pass will "eliminate[] confusion over the various current passes").[2]

Hence, and in response to the Secretaries' urging, Congress established the "America the Beautiful Pass," and deemed it the sole national interagency pass going forward. *See id.* at 13 (advocating for "a new interagency national pass that would provide visitors with a convenient and economical way to enjoy recreation on federal lands while at the same time, serve to educate the American public about their federal lands and available recreational opportunities").  Where applicable, free and discounted Pass Types would provide "convenient and cost-effective way[s] for people to visit multiple agencies' recreation fee sites." *Id*. at 56.  However, the national interagency America the Beautiful Pass (also "ATB Pass" or "Pass") would remain the one and only "durable and convenient" option to "serve multiple purposes" for all types of passholders. ECF No.16-20 (3RD TRIENNIAL RPT.) 56.[3]

### 2.  Free and Discounted Pass Types, and the Digital Version

Section 805(b) of FLREA requires the Secretaries to provide free or discounted ATB Passes to specified groups of people.  Thus, the Secretaries must "make the National Parks and Federal Recreational Lands Pass available": to American senior citizens and U.S.-domiciled persons aged 62 years or older, for a discounted price, *id.* § 6804(b)(1)(A) and (B); to Americans with disabilities, without charge for the lifetime of the passholder, *id.* § 6804(b); to veterans and

---

[2] *See also* ECF No. 16-2 (Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment) 12-14 & n. 8-14 (describing statutory background and FLREA's legislative history).

[3] For instance, with the ATB Pass, sightseers in Utah and Nevada "can visit the majestic rock formations of Bryce and Zion National Parks, explore Flaming Gorge National Recreation Area on the Ashley National Forest and hike through BLM-managed Red Rock Canyon National Conservation Area using a single pass." S. REP. NO. 110-377 (2008) 16; *accord*, ECF No. 16-19 (2ND TRIENNIAL RPT.) 26.

Gold Star families, without charge for the lifetime of the passholder, *id.*; and to members of the Armed Forces and their dependents without charge on an annual basis, *id.* § 6804(b)(2)-(3).  In addition, the Secretaries "may issue a … Pass to a volunteer in exchange for significant volunteer services." *Id.* § 6810(c).  These groups of "free and discounted" America the Beautiful Passes are also referred to by the Secretaries as "Pass Types." *See*, *e.g.*, ECF No. 16-16 (6TH TRIENNIAL RPT.) 3, 28 (describing free and discounted pass types); *accord,* ECF No. 16-21 (4TH TRIENNIAL RPT.) 14; ECF No. 16-22 (5TH TRIENNIAL RPT.) 25.  "The Secretary may not establish any national recreation pass, except as provided in this section." 16 U.S.C. § 6804(a)(9).

FLREA § 805 was amended by the Expanding Public Lands Outdoor Recreation Experiences Act of 2024 to require the Secretaries to sell the America the Beautiful Pass online and to provide a "digital version" for passholders. Pub. L. No. 118-234, 138 Stat. 2836 (2024); *id.* § 322(b) (directing Secretaries to "establish a digital version of the National Parks and Federal Recreational Lands Pass that is able to be stored on a mobile device, including with respect to free and discounted passes").

### 3.  **The Annual Image Competition**

To generate revenue for the Federal Recreation Agencies, Congress directed the Secretaries to professionally market and sell the America the Beautiful Pass as an aesthetically appealing recreation pass which serves to educate and inform Americans through its "collectible image[s] of public lands." *See* 110 S. Rpt. 350, at 6 (2008) (statement of Stevenson, NPS assistant director); S. Hrg. 109-11 (assistant DOI secretary Scarlett discussing goal of "implement[ing] an [ATB] Pass program, including its production and marketing, which benefits the public, expand[ing] awareness of our federal lands, and build[ing] additional support for

federal lands").

Similarly, Congress included FLREA § 805, which requires the Secretaries to hold an image competition annually, to select the image that will appear on the Annual Pass for a year. 16 U.S.C. § 6804(a)(2); *id.* § 6801(3) (defining "Federal recreational lands and waters" as "lands or waters managed by a Federal land management agency"). It also requires the Contest to be open to the public and "used as a means to educate the American people about Federal public lands." 16 U.S.C. § 6804(a)(2).

## **FACTUAL BACKGROUND**

Since FLREA's passage, the Annual Pass Program has been a great success. It is purchased annually by hundreds of thousands of people, draws tens of thousands of Contest entries every year, and generates tens of millions of dollars for maintenance of recreational areas on public lands. ECF No. 15 (Am. Compl.) ¶¶ 5, 32; ECF No. 16-16 (6TH TRIENNIAL RPT.) 3, 31, 32; ECF No. 16-22 (5TH TRIENNIAL RPT.) 25.

The same is true for the Recreation Fees Program. ATB Pass revenues generally have increased over the years. In Fiscal Year 2023, the agencies collected $601.7 million in total, $119.4 million of which came from sales of Annual Passes. ECF No. 16-16 (6TH TRIENNIAL RPT.) 21-22. Most revenue came from NPS, with lesser amounts from FWS, BLM, BuRec, and USFS. *Id.* at 21. These revenues have funded maintenance, repair, and enhancement projects at recreation areas around the nation. *See*, *e.g.*, ECF No. 16-6 (Raher Decl.) ¶ 13; ECF No. 16-19 (2ND TRIENNIAL RPT.) 7, 9; ECF No. 25-1 (Topham Decl.) ¶¶ 19, 23; ECF No. 16-20 (3RD TRIENNIAL RPT.) 26 (describing projects).

In general, until 2026 the Secretaries administered the ATB Pass and image competition

7

in compliance with FLREA. ECF No. 15 (Am. Compl.) ¶ 43; ECF No. 16-4 (Suckling Decl.) ¶ 18 (Table of Annual Passes 2014-2025).  As the referenced table shows, each Pass has featured an image appearing to capture a moment on Federal recreational lands or waters, is unaltered, aesthetically pleasing, educational, and not controversial or inappropriate. *Id.*; ECF No. 16-14 (2024 Contest Rules).  Defendants would not be able to produce another Annual Pass, going back to 2007, that features an image of a living partisan politician and did not feature any Federal public lands or waters with the aesthetic, educational, and cultural attributes as Congress intended when it passed FLREA.

## A.  The 2024 Share the Experience Contest

On June 17, 2025 the National Park Foundation ("NPF") announced the first-place winner of the 2024 Share the Experience Photo Contest, an image of Glacier National Park attributed to photographer Akshay Joshi ("Glacier NP Image"):



ECF No. 15 (Am. Compl.) ¶ 45; ECF No. 16-12 (Contest Winner Announcement) 2; ECF No. 16-13 (Glacier NP Image).  The agencies described the winning image as "[a] breathtaking view at Glacier National Park unfold[ing] as towering mountain peaks rise above alpine waters." ECF No. 16-12 (Contest Winner Announcement) 2.  They stated further that the Glacier NP Image

"will be featured on the 2026 America the Beautiful Annual Pass." *Id.*

### B. The 2026 Annual America the Beautiful Pass

Yet, DOI Secretary Burgum and NPS took a dramatically different approach just five months later. ECF No. 15 (Am. Compl.) ¶ 46-50.  In a November 25, 2025 news release and video announcement, the Secretary and NPS revealed that the Glacier NP Image on the 2026 America the Beautiful Pass would be "refresh[ed]," *id.* ¶ 48 – meaning, completely replaced – with "modernized graphics" featuring "bold, patriotic designs that honor America's landscapes, heritage and outdoor legacy." ECF No. 16-11 (DOI News Release).  DOI's News Release also announced that the 2026 version would be made available for purchase online and offered in the new digital version, as required under the 2025 FLREA amendments. EXPANDING PUBLIC LANDS OUTDOOR RECREATION EXPERIENCES ACT, 138 Stat. 2836, 2910; 16 U.S.C. § 6804(a)(10).  In the release, DOI did not unveil the newly "refreshed" and "modernized graphics." ECF No. 16-11 (DOI News Release).

In a video released the same day, for the first time Secretary Burgum revealed what he described as "refreshed artwork" and "commemorative new designs" on the 2026 "Resident Annual Pass." ECF No. 25-2 (Atwood Decl. (corrected)) ¶ 4 (Burgum video transcription). Through the video, Secretary Burgum announced that the Annual Pass itself as well as its price were being divided in two national interagency passes, including: (1) a "Resident" Annual Pass, for American citizens and residents, featuring the Trump Image, at a cost of $80 per year; and (2) a "Nonresident" Annual Pass, for nonresidents of the U.S., featuring the Glacier NP Image, at a cost of $250 per year. *Id.*; ECF No. 15 (Am. Compl.) ¶¶ 6-8, 18-19; *see also* ECF Nos. 16-10, 16-15, 16-23–16-24, 16-25–16-27.  Then, Secretary Burgum announced a new price of $250 for

"our international visitors" to "ensure[] they contribute their fair share to help preserve and maintain these treasured places." ECF No. 25-2 (Atwood Decl.) ¶ 4 (Burgum video transcription).  Forty seconds into the video, the $250 Nonresident Annual Pass is portrayed, featuring the Glacier NP Image:



ECF No. 16-25 (Screenshot: 2026 Nonresident Annual Pass).

As a result of Defendants' actions, the America the Beautiful Pass now consists of two different "versions," as they characterize them: (1) a "Resident Annual Pass" featuring the Trump Image, and (2) a "Nonresident Annual Pass" featuring the Glacier NP Image. ECF No. 17-2 (Memo. in Supp. Mot. to Dismiss) 1.  Consequently, U.S. citizens and residents cannot purchase the America the Beautiful Pass in 2026 that features the Contest-winning image of Glacier National Park.

In June 2025, the Contest Sponsors – NPF and Booz Allen "in partnership with" the Federal Recreation Agencies – announced the launch of the 2025 Contest. ECF No. 16-12 (Contest Winner Announcement) 6.  The 2025 Share the Experience Photo Contest ended December 2025. *Id.* at 2, 3.  As of today's date, Defendants have yet to announce their plans for the image that will be featured on the 2027 Annual Pass or future years' Passes.  Thus,

Defendants have not stated when, or whether, the Secretary will once again return to featuring the Share the Experience Contest-winning images as FLREA requires. 16 U.S.C. § 6804(a)(2).

## ARGUMENT

As demonstrated below, the Amended Complaint alleges sufficient factual allegations which, accepted as true, allow a determination that the Center's injuries are plausible. Consideration of declarations from four of its members and its executive director as well as certain materials cited below, will make abundantly clear that the Center has associational standing to challenge the 2026 America the Beautiful Pass for violations of FLREA and the APA. *Cape Cod Charter Boat Ass'n v. Burgum*, 810 F.Supp.3d 1, 10 (D.D.C. 2025) (plaintiff bear[s] the burden of establishing jurisdiction by a preponderance of the evidence); *Kotab v. BLM*, 546 F.Supp.3d 1012, 1017 (D. Nev. 2021 (for purposes of Article III standing, a plaintiff must show its injury is "'concrete and particularized, as well as 'actual or imminent, not conjectural or hypothetical'").  The Center's individual members have legally protected interests that have been, are being, and will continue to be harmed as a direct result of Defendants' highly unusual decisionmaking process that culminated in the image used on the 2026 Resident Annual Pass.

   **I. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES FACTS THAT ESTABLISH EACH ELEMENT OF ARTICLE III ASSOCIATIONAL STANDING WHICH MAY BE FURTHER CONFIRMED BY THE DECLARATIONS FROM ITS MEMBERS.**

As explained below: (1) the Center has members who would have standing to sue in their own right because the Secretaries' conduct has harmed and continues to harm their recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests, and will continue to cause such injuries-in-fact unless and until their decision to feature the Trump

Image on the 2026 America the Beautiful Pass is set aside and remanded, as the Center requests; (2) the interests of these members are germane to those of the Center's mission to protect public lands; and (3) neither the Center's claim nor requested relief requires that an individual member of the association participate in the lawsuit. *Sierra Club v. EPA*, 292 F.3d at 898.  Consequently, the Center has associational standing to prosecute the Claim for Relief in its Amended Complaint.

### A. The Center Has Members Who Could Sue in Their Own Right Due to Actual and Ongoing Injuries to Their Legally Protected Interests That Are Caused by Defendants' Conduct and Redressable by a Favorable Ruling from The Court.

As set forth in its Amended Complaint, Plaintiff has individual members who have judicially cognizable interests in a legally compliant America the Beautiful Pass in 2026 and future years. *See* ECF No. 15 (Am. Compl.) ¶¶ 12-19.  These members are American citizens who typically purchase the America the Beautiful Pass to have, enjoy, and use in furtherance of their recreational, environmental, and spiritual as well as monetary and economic interests at Federal recreation areas, and for the educational, cultural, and aesthetic qualities of a legally compliant Pass in its own right.  They would purchase a 2026 Pass but are not, due to Defendants' use of the Trump Image rather than an image of Federal recreational lands or waters that was selected through the Share the Experience Photo Contest.  As a result, their recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests in the America the Beautiful Pass, and in the Federal recreation areas they use the Annual Pass as a license to visit and use, are harmed. *See Nat'l Parks Cons. Assn. et al. v. U.S. Dep't of the Interior*, No. 1:26-CV-10877-AK, 2026 WL 1601790 (D. Mass. June 4, 2026) ("*NPCA v. DOI*") (holding conservation groups have standing to challenge the removal of information about

12

climate change, slavery and Indigenous history from national park sites).

Notably, these individuals are prevented from purchasing the 2026 Pass and mitigating the impact to their educational, cultural, and aesthetic interests by obscuring the Trump Image – for example, by using stickers or decals or a sleeve for the 2026 Pass – as doing so would void the pass or result in them being denied entry. ECF No. 16-31 (FAQs) 14.  As a result, they would have no option but to purchase and repeatedly use, without alteration, the 2026 "Resident Annual Pass" featuring the Trump Image.

### 1. Plaintiff's Members Have a Personal Stake in a Legally Compliant Annual Pass.

In the following ways, the Center's individual member declarants have judicially cognizable interests in a legally compliant ATB Pass.

First, the Center's individual members have recreational, monetary, economic, environmental, educational, cultural, spiritual, and aesthetic interests in visiting and using Federal recreation areas, and in using the ATB Pass as a license to do so according to its terms. ECF No. 15 (Am. Compl.) ¶¶ 12-13; ECF No. 16-5 (Deibert Decl.) ¶¶ 15-16; ECF No. 16-6 (Raher Decl.) ¶¶ 10, 13, 19; ECF No. 25-1 (Topham Decl.) ¶¶ 13-14, 22; ECF No. 16-8 (Hartl Decl.) ¶¶ 5, 9-11, 14.

For example, Plaintiff alleges that Center member Ryan Deibert has purchased the Annual Pass twice and intended to purchase it again in 2026. ECF No. 15 (Am. Compl.) ¶ 16. As he attests, Mr. Deibert and his family have purchased the Pass due to the value and convenience it provides their vacations to Federal recreation areas. ECF No. 16-5 (Deibert Decl.) ¶ 16 (explaining "we particularly appreciated the value and convenience that it offered us in

13

visiting multiple national parks and taking dozens of trips … in the same year" throughout the Pacific Northwest and American Southwest).

Center member Melanie Topham grew up in Utah and has purchased an Annual Pass for many years to take her family to five national parks in Utah known as the "Big 5" – Arches, Bryce Canyon, Canyonlands, Capital Reef, and Zion National Parks – as well as other national parks, national monuments, and national forests. ECF No. 15 (Am. Compl.) ¶ 17; ECF No. 25-1 (Topham Decl.) ¶¶ 5-11, 23-24.  As the District Court of Massachusetts just held in an analogous case in which many of the Defendants here challenged the associational standing of conservation organizations, the groups were allowed proceed with their challenge to DOI's decision to remove information about climate change, slavery and Indigenous history from national park sites. *See NPCA v. DOI*, *supra*, at 12 (at \*7) (finding injury-in-fact to legally protected interests of group's member wherein "she allege[d] she has visited at least 66 park sites, and that these visits are a regular and significant part of her parenting method and lifestyle").

Other members purchase and use the Pass for similar reasons, as the Center describes in its Amended Complaint. ECF No. 15 (Am. Compl.) ¶¶ 11-13.  Specifically, member Stephen Raher attests that he frequently visits national forests in Oregon and Washington as well as national parks, monuments, historic sites, and wilderness areas by using his Annual Pass due to the convenience it offers. ECF No. 16-6 (Raher Decl.) ¶¶ 6-7, 9-10.  And Center member Brett Hartl has purchased the ATB Pass annually since 2018. ECF No. 16-8 (Hartl Decl.) ¶ 9.  A former seasonal NPS park ranger (and now the Center's government affairs director), in his declaration Mr. Hartl states that he carries it in his wallet to visit national forests or national parks, mostly in Arizona, almost weekly. *Id*. ¶¶ 4-6, 10.

14

As Plaintiff further alleges, the Center's members visit Federal public lands to recreate, exercise, enjoy the environment, vacation with their families, create memories, take photographs, find plants and wildlife species, and learn about biodiversity, U.S. culture and history; and they avail themselves of the Pass's benefits and attributes as a way of improving these experiences. ECF No. 15 (Am. Compl.) ¶¶ 11, 13; *see also* ECF No. 16-5 (Deibert Decl.) ¶ 10, 15-18; ECF No. 16-6 (Raher Decl.) ¶¶ 10-13; ECF No. 25-1 (Topham Decl.) ¶¶ 13, 22; ECF No. 16-8 (Hartl Decl.) ¶¶ 9-11.  They appreciate the cost-effectiveness and convenience that the ATB Pass provides. ECF No. 15 (Am. Compl.) ¶ 13; ECF No. 16-5 (Deibert Decl.) ¶¶ 15-16; ECF No. 16-6 (Raher Decl.) ¶ 10; ECF No. 25-1 (Topham Decl.) ¶ 22; ECF No. 16-8 (Hartl Decl.) ¶ 9.  In effect, these interests are uniquely licensed by the America the Beautiful Pass; in exchange for the annual cost and adherence to its terms, passholders are provided with recreation, cost savings, convenience, material economic benefits, and convenience as well as aesthetic, cultural, and educational attributes in the images featured on the Passes.

In addition, the Center's members value the FLREA-compliant imagery for its tangible aesthetic benefits – i.e., as a "collectible image[] of public lands," S. REP. NO. 110-377 – and for the serenity, natural beauty, and landscapes it typically depicted. ECF No. 15 (Am. Compl.) ¶¶ 15-19; *see also* ECF No. 25-1 (Topham Decl.) ¶ 21, 25, 28; ECF No. 16-5 (Deibert Decl.) ¶ 20; ECF No. 16-6 (Raher Decl.) ¶ 11.  As Mr. Deibert explains, the passes "have become keepsakes in their own right" for "the incredible adventures we shared as a family during each of those years." ECF No. 16-5 (Deibert Decl.) ¶ 17; *see also* ECF No. 16-6 (Raher Decl.) ¶ 11 ("I save my Annual Passes after their expiration as keepsakes" and "tangible reminder[s] of my time in that place").  Furthermore, the images foster in them a sense of pride and shared reverence for

15

the special places they depict – a reverence shared with other visitors to these places including Americans of all political stripes. ECF No. 16-6 (Raher Decl.) ¶ 11, 16-17; ECF No. 25-1 (Topham Decl.) ¶ 27; ECF No. 16-5 (Deibert Decl.) ¶ 12, 20.

Second, the Center's members appreciate knowing that the revenue collected by the Federal Recreation Agencies, including revenue from ATB Pass sales, is used to maintain and enhance recreation sites and other projects that directly benefit public lands that they visit. ECF No. 15 (Am. Compl.) ¶ 12; *see also* ECF No. 16-5 (Deibert Decl.) ¶ 14; ECF No. 16-6 (Raher Decl.) ¶ 13; ECF No. 25-1 (Topham Decl.) ¶ 23; 16 U.S.C. § 6806(d) (authorizing collection of revenues from ATB Pass sales and distribution of fees and revenues); *id.* § 6807 (delineating allowable expenditures). Indeed, this includes projects that benefit them directly. ECF No. 15 (Am. Compl.) ¶ 12-13; *see also* ECF No. 16-6 (Raher Decl.) ¶ 13; ECF No. 25-1 (Topham Decl.) ¶¶ 14, 23.

They further appreciate how most (80 percent) of what they pay for their Annual Pass ($80) goes toward funding for maintenance projects carried out at the same recreation area where they purchased their pass, 16 U.S.C. § 6806(c)(1)(A). ECF No. 16-6 (Raher Decl.) ¶ 13; ECF No. 25-1 (Topham Decl.) ¶ 23; ECF No. 16-8 (Hartl Decl.) ¶ 11. Particularly given that these members would, but for the Secretaries' conduct, avail themselves of what amounts to an annual license to enter and use Federal recreation areas according to its terms, these too constitute judicially cognizable economic interests in the Annual Pass.

Third, the Center's standing declarants have educational, cultural, and aesthetic interests in obtaining an ATB Pass with a legally compliant image, because imagery on ATB Pass that conforms to the statute will serve the Act's express purpose of educating Americans about

16

Federal public lands and waters, including wildlife, habitat, and places of historical and cultural significance. ECF No. 15 (Am. Compl.) ¶¶ 13, 17-18; ECF No. 16-6 (Raher Decl.) ¶ 11-12 (Center member Stephen Raher attesting that the images "have educated me about federal lands that I did not previously know about").

As Lynn Scarlett, the Assistant DOI Secretary for Policy, Management and Budget in Senate testimony in 2002, testified to a Senate subcommittee about draft legislation that was a precursor to FLREA, "we want to ensure" through recreation fee authority that "federal lands continue to play [an] important role in American life and culture." *Sen. Com. Hrg. (2002)*, *supra*, at 4.  As she further elaborated:

> … our federal lands boast scenic vistas, breathtaking landscapes, and unique natural wonders. On these lands, many patriotic symbols, battlefields, memorials, historic homes, and many other types of sites tell the story of America. Federal lands have provided Americans and visitors from around the world special places for recreation, education, reflection and solace. The family vacation to these destinations is an American tradition.

*Id*.  And furthermore, as USDA Undersecretary Mark Rey testified to a House subcommittee in 2008, "[t]he new [ATB] passes are more convenient to purchase, are more durable, and are designed with a collectible image of public lands." S. REP. NO. 110-377 (2008).

In summary, these various recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests are the very same interests that Congress intended for FLREA to protect. ECF No. 15 (Am. Compl.) ¶¶ 42-43; *see also Kotab v. BLM*, 546 F.Supp.3d at 1019 ("In [*Nat'l Wildlife Fed'n*], the Supreme Court reasoned that 'recreational use and aesthetic enjoyment' are among the *sorts* of interests that [statutes like NEPA and FLREA] were specifically designed to protect.") (emphasis in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990)); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (observing

17

that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts—such as … monetary harm …") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-341 (2016)); *id*. at 414 (finding "monetary harms readily qualify as concrete injuries under Article III"); *see also Summers v. Earth Is. Inst.*, 555 U.S. 488, 494 (2009) ("[I]f … harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice").[4]

### 2. Plaintiff's Protected Interests in a Lawful Annual Pass are Being Injured by Defendants' Use of the Trump Image on the 2026 Pass.

The interests of the Center's individual members are injured by the challenged conduct of Defendants, and these injuries-in-fact are both concrete and particularized as well as actual and imminent and will persist unless overturned or reversed. *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1225 (D.C. Cir. 2024) (citing *Laidlaw*, 528 U.S. at 180).

Thus, in their declarations the Center's members describe the Hobson's Choice they face as a result of the Secretaries' unlawful decision: either purchase a pass that will cause them ongoing aesthetic injury every time they use it, or refrain from purchasing the 2026 America the

---

[4] Indeed, the Center's individual members exemplify how the Annual Pass has been successful in achieving the policy objectives which led Congress to enact FLREA more than 20 years ago. ECF No. 15 (Am. Compl.) ¶ 16-17; *Compare* ECF No. 25-1 (Topham Decl.) ¶ 13 (describing trips to Arches, Bryce Canyon, Canyonlands, and Capital Reef National Parks, Grand Staircase Escalante National Monument, and the Uinta-Wasatch-Cache National Forest using the ATB Pass) *with* S. REP. NO. 110-377 (2008) 16 (with the ATB Pass, [a] sightseer in Utah and Nevada can view the majestic rock formations of Bryce and Zion National Parks, explore Flaming Gorge National Recreation Area on the Ashley National Forest and hike through the BLM-managed Red Rock Canyon National Conservation Area using a single pass"); *see also* ECF No. 16-5 (Deibert Decl.) ¶¶ 16-18 (describing trips to Painted Hills Unit of the John Day Fossil Beds, Steens Mountain Wilderness, Alvord Desert Wilderness Study Area, Malheur National Wildlife Refuge and Hart Mountain National Antelope Refuge).

Beautiful Pass, with attendant adverse effects on their finances and ability to visit public lands, due to the Secretaries' decision to use the Trump Image rather than statutorily required, Contest-winning image of Federal recreational lands and waters. ECF No. 15 (Am. Compl.) ¶¶ 15, 19; ECF No. 16-5 (Deibert Decl.) ¶¶ 20-22; ECF No. 16-6 (Raher Decl.) ¶ 17; ECF No. 25-1 (Topham Decl.) ¶ 27-30; ECF No. 16-8 (Hartl Decl.) ¶ 12.  This injury is directly analogous to those that have been recognized by the Supreme Court. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 184 (2000) ("*Laidlaw*")  (finding standing when members submitted declarations averring that the defendant's unlawful actions caused them "to curtail their recreational use of [a] waterway" out of concerns that such use "would subject them to "aesthetic" as well as other "harms").

Without the benefits of the 2026 Pass, when they do visit public lands, they must pay more to enter and use such places, causing monetary harm that is actual, imminent, and ongoing. ECF No. 15 (Am. Compl.) ¶¶ 15, 18-19; ECF No. 16-5 (Deibert Decl.) ¶¶ 19-22; ECF No. 16-6 (Raher Decl.) ¶¶ 19-23; ECF No. 25-1 (Topham Decl.) ¶¶ 29-30; ECF No. 16-8 (Hartl Decl.) ¶¶ 14-15. Alternatively, they must pay more to enter and use such places, causing monetary harm that is actual and ongoing, ECF No. 16-6 (Raher Decl.) ¶ 22-23, and imminent as it is substantially probable in the future, ECF No. 16-5 (Deibert Decl.) ¶¶ 21-22; ECF No. 25-1 (Topham Decl.) ¶ 29-30; ECF No. 16-8 (Hartl Decl.) ¶ 15.  Either that, or they will have to reduce or eliminate future visits, causing actual and imminent injuries to their recreational, environmental, educational, cultural, and aesthetic interests in continuing to frequent such areas. ECF No. 25-1 (Topham Decl.) ¶ 29-30; ECF No. 16-8 (Hartl Decl.) ¶ 15 ("I will either have to spend more money or reduce my use of public lands.").  Again, being forced to choose among

19

such options, each of which is harmful to their concrete, longstanding interests, is a cognizable injury for standing purposes. *Laidlaw*, 528 U.S. at 184.

In addition, the injuries to the interests of Plaintiff's member declarants are actual and imminent, i.e., ongoing.  ECF No. 15 (Am. Compl.) ¶ 19. Ryan Deibert, whose last pass expired December 31, 2025, has been without a new annual pass since January 1, 2026. ECF No. 16-5 (Deibert Decl.) ¶¶ 20-22.  Without the option to purchase the 2026 Pass, he will have to rely on a Northwest Forest Pass and "a hodgepodge of standard entrance and amenity fees" at each recreation area on Federal public lands. *Id*. ¶ 22.  He estimates this will cost him $50 more annually than he would have paid with an Annual Pass. *Id*.

Melanie Topham's pass recently expired, and because she too refuses to buy the 2026 Pass due to the Trump Image, she expects to pay additional money for one-time entrance fees – this year, about $410 instead of $80. ECF No. 25-1 (Topham Decl.) ¶¶ 29.  Either that, or she must avoid visiting some recreation areas she otherwise would have visited. *Id*.

Brett Hartl's current pass expires in June 2026. ECF No. 16-8 (Hartl Decl.) ¶ 11. Because he uses his Pass weekly, *id*. ¶¶ 6, 10, he will have to pay $45 more annually for his frequent visits to national forests and national parks, *id*. ¶ 14.

Thus, the harms to the interests of these individual members of the Center are not speculative; they have already occurred and are ongoing and will continue unless and until they are remedied by the Court.

### 3.  The Injuries to the Center's Members are Fairly Traceable to Defendants' Unlawful Use of the Trump Image on the 2026 Pass.

With the Trump Image, the 2026 America the Beautiful Annual Pass lacks the qualities, features, and benefits they had come to expect from the Annual Pass each year, placing them in

the untenable position of either purchasing a pass that causes them serious aesthetic harm each time they use it, or avoiding purchasing and thereby securing monetary and other benefits as they planned. ECF No. 15 (Am. Compl.) ¶ 14-19; ECF No. 16-5 (Deibert Decl.) ¶¶ 20-22; ECF No. 16-6 (Raher Decl.) ¶¶ 17-20; ECF No. 25-1 (Topham Decl.) ¶¶ 27-29; *see also* ECF No. 16-8 (Hartl Decl.) ¶ 14 ("I will decline to purchase a new Interagency Annual pass in July of this year").

As a result of the Secretaries' unlawful action, the Center's members will not purchase the 2026 Pass.  They are avoiding purchasing the 2026 Pass because it fails to feature the aesthetic, educational, and cultural attributes they expect and have come to value (and which are required by law), and instead features an image that causes – and, were they to purchase the Pass, would continue to cause on an ongoing basis – aesthetic harm from anger, dismay, sadness, alienation, and confusion. ECF No. 15 (Am. Compl.) ¶¶ 11, 13, 15-18; ECF No. 16-5 (Deibert Decl.) ¶¶ 20-22; ECF No. 16-6 (Raher Decl.) ¶ 17; ECF No. 25-1 (Topham Decl.) ¶ 27; ECF No. 16-8 (Hartl Decl.) ¶ 15.

For example, Ryan Deibert recalls how a New Year's Day calendar reminder prompted him to buy a new pass, at which time he was "dismayed, shaken and deeply angered to see that this pass, which had come to symbolize open access to our revered, shared and nonpartisan public lands, has been replaced with such partisan political imagery." ECF No. 16-5 (Deibert Decl.) ¶ 20; *id.* ¶ 21 ("… I currently cannot bring myself to purchase this Annual Pass with its offensively partisan imagery").  Melanie Topham, whose last pass expired March 31, 2026, "felt angry to learn that this pass, which has become an emblem of so many of my best memories and experiences, had been co-opted and used by a partisan politician in this way." ECF No. 25-1

(Topham Decl.) ¶ 27; *id.* ("I will not buy a pass until his (or any politician's) image is not on the pass."). Stephen Raher too "[wa]s dismayed that the Secretaries … decided to feature a picture of the current president on the 2026 Annual Pass[,]" ECF No. 16-6 (Raher Decl.) ¶ 15. As Brett Hartl states, "I do not want to see a picture of President Trump every time I use my pass or open my wallet[,]" so "I will not purchase a pass that features an image of President Trump." ECF No. 16-8 (Hartl Decl.) ¶ 12.

They are avoiding purchasing the 2026 Pass because rather than fostering a shared cultural connection to or informing them about Americans' shared public lands, as Congress intended, use of the Trump Image conveys a message that "[o]ur public lands are not actually ours; they belong only to the political supporters of our current President." ECF No. 16-5 (Deibert Decl.) ¶ 20; *id.* ¶ 22 (the 2026 Pass "has already eroded my sense of belonging with and within [our shared public lands]"); ECF No. 16-6 (Raher Decl.) ¶¶ 17, 18 ("I … find the use of the image of President Trump on the 2026 pass to be an act of hostility by my own government toward anyone who, like me, does not support the current administration's policies … ."). To avoid purchasing the 2026 Pass with the Trump Image and suffer the aesthetic and visceral effects of doing so, Stephen Raher felt compelled to purchase a new pass before he needed to, which caused him monetary harm as it has resulted in him paying twice as much for one month. ECF No. 16-6 (Raher Decl.) ¶¶ 19-23. These aesthetic and monetary harms are "de facto"—i.e., they "actually exist[]"—thus, they are "sufficiently concrete to qualify as injury-in-fact." *Animal Legal Def. Fund*, 111 F.4th at 1226.

Moreover, each member makes clear that they cannot purchase a pass that would confer tangible benefits due to the unlawful imagery, and that they would feel the same way even if it

22

was another politician's image on the Pass. ECF No. 15 (Am. Compl.) ¶ 19; ECF No. 16-5 (Deibert Decl.) ¶ 20; ECF No. 16-6 (Raher Decl.) ¶¶ 17, 21-22; ECF No. 25-1 (Topham Decl.) ¶¶ 27-28; ECF No. 16-8 (Hartl Decl.) ¶ 12.  Their aversion to purchasing the 2026 Pass is attributable *only* to Defendants' unlawful conduct, not to the actions of the Center's member declarants or any other third parties.

Contrary to Defendants' claims, this is no more a self-inflicted injury than that deemed sufficient in *Laidlaw*, where the organizational members, due to the defendant's conduct, felt obligated to avoid a resource they would otherwise have enjoyed (and had enjoyed in the past). Indeed, the circumstances here are functionally identical to the members in *Laidlaw* whose sworn statements were that they would elect to use and enjoy a resource but for the unlawful conduct of the defendant. *See* 528 U.S. at 184; *see also ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003) (explaining that, applying *Laidlaw*, "an injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions").

In summary, the injuries-in-fact to the legally protected interests of the Center's members are "fairly traceable" to the Secretaries' decision to use the Trump Image on the 2026 America the Beautiful Pass, and thus easily satisfy the "fairly traceable" threshold *Murthy v. Missouri*, 603 U.S. at 44 (citing *Clapper*, 568 U.S. at 409); *Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (plaintiffs show associational standing when they "show that, 'absent the [government's allegedly unlawful actions], there is a substantial probability that they would [not be injured] and that, if the court affords the relief requested, the [injury] will be removed'") (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)) (additional citations omitted).

23

**4.    The Requested Relief Will Redress the Injuries of Plaintiff's Members.**

As explained above, the injuries to the protected interests of the Center's member declarants are ongoing and will persist unless overturned or reversed, hence they are also "actual and imminent." *Animal Legal Def. Fund*, 111 F.4th at 1225 (citing *Laidlaw*, 528 U.S. at 180).  Without the benefits of the 2026 Pass, when they do visit public lands, they must pay more to enter and use such places, causing monetary harm that is actual, imminent, and ongoing. ECF No. 15 (Am. Compl.) ¶¶ 15-17; ECF No. 16-5 (Deibert Decl.) ¶¶ 19-22; ECF No. 16-6 (Raher Decl.) ¶¶ 19-23; ECF No. 25-1 (Topham Decl.) ¶¶ 29-30; ECF No. 16-8 (Hartl Decl.) ¶¶ 14-15.  Either that, or they will have to reduce or eliminate future visits, causing actual and imminent injuries to their recreational, environmental, educational, cultural, and aesthetic interests in such areas. ECF No. 25-1 (Topham Decl.) ¶ 29-30; ECF No. 16-8 (Hartl Decl.) ¶¶ 11, 15 ("I will either have to spend more money or reduce my use of public lands.").

Ryan Deibert, whose last pass expired December 31, 2025, has been without a new annual pass since January 1, 2026. ECF No. 16-5 (Deibert Decl.) ¶ 19-22.  Without the option to purchase the 2026 Pass, he will have to rely on a Northwest Forest Pass and "a hodgepodge of standard entrance and amenity fees" at each recreation area on Federal public lands. *Id*. ¶ 22.  He estimates this will cost him $50 more annually than he would have paid with an Annual Pass. *Id*.

Melanie Topham's pass expired at the end of March 2026, and because she too refuses to buy the 2026 Pass with the Trump Image, she expects to pay additional money for one-time entrance fees – as she estimates it, about $410 in 2026 instead of $80. ECF No. 25-1 (Topham Decl.) ¶¶ 29.  Either that, or she must avoid visiting some recreation areas she otherwise would

24

have visited. *Id.* Brett Hartl's current pass expires in June 2026. ECF No. 16-8 (Hartl Decl.) ¶ 11. Because he uses his Pass weekly, *id.* ¶¶ 6, 10, he will have to pay $45 more annually for his usual visits to national forests and national parks. *Id.* ¶ 14.

Therefore, to remedy Defendants' FLREA violations, the Center is requesting declaratory relief, vacatur of the Secretaries' decision to use the Trump Image on the 2026 Pass, or any image other than a Contest-winning image of Federal recreational lands or waters. ECF No. 15 (Am. Compl.) 18 (Prayer for Relief). If the Court affords the relief the Center is requesting, there is a substantial probability – indeed, a certainty – that the injuries to their interests "will be removed." *Chamber of Commerce*, 642 F.3d at 201 (plaintiff has standing when "it can show that, 'absent the [government's allegedly unlawful actions], there is a substantial probability that they would [not be injured] and that, if the court affords the relief requested, the [injury] will be removed'") (quoting *Warth v. Seldin*, 422 U.S. at 504). As the Center's declarants attest, this relief will remedy the injuries to the protected interests of the Center's members explained above.

### B.  The Interests of the Center's Members are Germane to its Organizational Interests.

The monetary, recreational, educational, environmental, cultural, spiritual, and aesthetic interests of its members that the Center "seeks to protect are germane to [its] purpose." *Chamber of Commerce*, 642 F.3d at 199; ECF No. 15 (Am. Compl.) ¶¶ 10-14 . As discussed by the Center's co-founder and executive director Kieran Suckling in his declaration, the Center for Biological Diversity is a 501(c)(3) organization founded in 1989 with over 93,000 active members. ECF No. 16-4 (Suckling Decl.) ¶¶ 5-6. The Center's mission is to work through science, law, and creative media to secure a future for all species, great or small, hovering on the

brink of extinction. *Id.* ¶ 7. Central to the Center's work is the protection of the lands, waters, and climate that species need to survive and thrive. *Id.* ¶ 8.

A major portion of the Center's work focuses on protecting public lands due to their rich legacy of biological diversity and their critical importance in providing habitat and refuge for so many of the species the Center works to save from extinction. *Id.* ¶ 9. As well as protecting public lands from destructive resource extraction, the organization campaigns to ensure that federal funds earmarked by Congress for public lands conservation are fully expended towards this purpose. *Id.* ¶ 10. A public engaged and educated about the value of public lands for recreation and wildlife habitat, as fostered by the ATB, furthers the Center's mission to protect these public lands. *Id.* ¶¶ 15, 20.

### C. Neither the Center's Claim Nor Its Requested Relief Require its Members to Participate in this Lawsuit.

Last, neither the Center's claim nor requested relief require the participation of its members as individually named plaintiffs. There are no third parties, not before the Court, whose actions or choices have affected or will determine whether the interests of the Center and its members continue to be harmed.

## II.    DEFENDANTS' ARGUMENTS ARE WITHOUT MERIT.

Defendants' motion is an attempt to minimize the concrete and continuing injuries-in-fact of Plaintiff's member declarants caused by Defendants' violations of FLREA, yet their arguments lack merit as explained further below.

### A. The Harms to Plaintiff's Interests Are Neither Attenuated Nor Speculative; They Have Already Manifested.

Far from speculative, these injuries have manifested already and are ongoing, and stem

directly from the Secretaries' violations of FLREA. ECF No. 16-5 (Deibert Decl.) ¶ 21 (stating "I currently cannot bring myself to purchase this Annual Pass with its offensively partisan imagery"); ECF No. 16-6 (Raher Decl.) ¶ 20 (explaining "I find the use of a politically partisan image on the 2026 pass to be deeply offensive and therefore refuse to own one in my name"); ECF No. 25-1 (Topham Decl.) ¶¶ 27-28; ECF No. 16-8 (Hartl Decl.) ¶ 12 ("Because I believe that the conservation of our public lands, the right of every person to enjoy and recreate on those lands in whatever way they deem fit, and the conservation legacy of those lands, should never be political, I will not purchase a pass that features an image of President Trump."). All such injuries sustained by the Center's member declarants are attributable to the Secretaries' illegal act in using the Trump Image on the 2026 America the Beautiful Pass.

### B. The Harms to Plaintiff's Individual Members Are Not Subjective or Merely Emotional, Ideological, or Political.

Defendants criticize the injuries to the interests of the Center's individual members, attempting to reduce them to subjective or generalized objections based on mere emotion, political ideology, or moral objections, or variations thereof (e.g., that Plaintiff's members' injuries are "self-inflicted"). *See, e.g.*, ECF No. 9 (Motion) 2, 8, 9.

It is as though Defendants do not fully apprehend the facts as the Center is alleging them regarding the injuries to the judicially cognizable interests of its members. Either that, or Defendants seek to mislead with such strawmen. Yet, they frustrate any chance at a coherent – let alone persuasive – argument that responds to the facts as alleged which, for the reasons herein, do demonstrate Plaintiff's Article III standing. Either way, Defendants' arguments boil down to the simple idea that Plaintiff's members' injuries are purely subjective in nature, but this threadbare argument does not support the conclusion that the Court lacks subject matter

27

jurisdiction under Rule 12(b)(1).

Nevertheless, Plaintiff provides the following points in response to this line of argument.

One, there is no support for Defendants' claim that there is a break in the causal chain simply because the Center's individual members have some choice in how they respond to Defendants' actions.[5]  Nor does the fact that they have a perspective about the Trump Image, one that is necessarily informed by their identity as Americans and based on the thoughts and emotions they experience every time they view it, change the fact that, but for Defendants' conduct, they would not have any such reaction at all (beyond their usual appreciation for the image of their Pass).  Again, Plaintiff's members face a bona fide Hobson's Choice in response to Defendants' acts.  Although they may have some choice in what they do or feel about it, none of the options available to them avoids all injuries-in-fact to their legally protected interests.

Moreover, it is not the Center but Defendants who have introduced partisan politics where politics do not belong in connection with this matter.  They did so, first, by using the image of a living politician on a license for all Americans to use to access public lands shared by all.  Given the current political landscape in the U.S. is widely considered to be divided, at least in part due to the conduct of recent presidential administrations, it is objectively reasonable for Plaintiff's individual members to interpret the 2026 "Resident Annual Pass" with the Trump Image – again, the only America the Beautiful Pass that can be purchased in 2026 by an American – as they do. ECF No. 16-5 (Deibert Decl.) ¶ 21 ("… I currently cannot bring myself

---

[5] For instance, Defendants make the absurd claim that the Center's members can just go view the Contest-winning image of Glacier National Park online if they want to see it (*see* ECF No. 9 (Motion) 8 & n.5), as if that comprised the entirety of the injuries-in-fact to the members' aesthetic interests in a legally compliant ATB Pass.

28

to purchase this Annual Pass with its offensively partisan imagery"); ECF No. 25-1 (Topham Decl.) ¶ 27 ("I will not buy a pass until his (or any politician's) image is not on the pass."). As Mr. Hartl states, "I do not want to see a picture of President Trump every time I use my pass or open my wallet[,]" so "I will not purchase a pass that features an image of President Trump." ECF No. 16-8 (Hartl Decl.) ¶ 12.

In that perception, it appears that they were not unique. ECF No. 16-30 (Amanda Heidt, *Trump's face on national parks pass is illegal, experts say*, SFGate.com (Dec. 4, 2025)) ("The announcement that the 2026 America the Beautiful Passes will feature President Donald Trump, along with other nontraditional designs, prompted vehement reactions across social media last week."); *see also* ECF No. 16-4 (Suckling Decl.) ¶ 20 ("Much of the membership and staff of the Center share my extreme distaste – indeed, aversion – to the 2026 annual pass with Trump's image.").

In short, it was Defendants who decided to wholly supplant the will of Congress with the individual desires of an elected politician – in the process, supplanting what was to be a "breathtaking view at Glacier National Park unfold[ing] as towering mountain peaks rise above alpine waters" which are shared by all Americans, ECF No. 16-12 (Contest Winner Announcement), with a glowering portrait of a divisive president. In any event, Plaintiff's members make clear that they would have the same reaction were it a politician other than the current president. ECF No. 16-5 (Deibert Decl.) ¶ 21; ECF No. 25-1 (Topham Decl.) ¶ 27; ECF No. 16-8 (Hartl Decl.) ¶ 12. Thus, this argument too is simply another strawman.

Plaintiff's argument does not require the Court to find that FLREA conveys a legally protected interest in aesthetically pleasing images on the ATB Pass. Instead, the relevant point is

that FLREA does convey a legally protected interest in an annual recreation pass that features an image of Federal recreational lands or waters, not one that features a portrait of an elected politician.

Defendants once again either misapprehend or intentionally mischaracterize the basis of the injuries to the Center's individual members. Those injuries are not just the result of the unlawful insertion of politically themed imagery on what has been and should continue to be a fundamentally nonpartisan recreation pass, but they are also the result of Defendants' elimination of what should have been there instead: a collectible image of public lands in which all Americans can share pride. As a result of Defendants' illegal conduct, no American can obtain an Annual Pass as of today's date that features the image as FLREA requires. That is the crux of the ongoing injuries that are being caused to the Center's members as a direct result of Defendants' conduct.

### C. Plaintiff's Amended Complaint Alleges Plausible Economic Injuries-in-Fact from Reduced Revenues from Annual Pass Sales Due to Use of the Trump Image on the 2026 Pass.

Finally, Defendants question the basis for economic injuries to Plaintiff's individual members' interest in seeing that sales of the ATB Pass continue at consistent levels, so that the resulting revenues may continue to be predictably available to maintain, repair, and enhance facilities and services at Federal recreation sites. As then-DOI Assistant Secretary Scarlett emphasized to a Senate committee in 2002:

> Fulfilling [DOI's] mission [to ensure that the federal lands continue to play th[e] important role in American life and culture of providing Americans and visitors from around the world special places for recreation, education, reflection and solace,] requires that we maintain visitor-serving facilities and services, preserve natural and historic resources, and enhance visitor opportunities. *Such efforts require an adequate and steady source of funding*.

30

*Sen. Com. Hrg. (2002)*, *supra*, at 4 (emphasis added).

The Secretaries' use of the Trump Image sets the 2026 Pass apart from every other Annual Pass that came before it, in that it does not feature the Contest-winning photograph nor any image of Federal recreational lands or waters for that matter, and because it is politically themed.

It is reasonable, then, to infer that any diminishment in revenue from sales of the Annual Pass in 2026 may be attributed to the Secretaries' decision to use the Trump Image on the 2026 Pass. Certainly, it would be implausible to assume that the Center's member declarants are the only would-be passholders in this predicament: i.e., Americans who would purchase the 2026 Pass, but are electing not to do so due to the Secretaries' use of the Trump Image. ECF No. 15 (Am. Compl.) ¶ 10; *see also* ECF No. 16-30 (Heidt, SFGate.com) ("The announcement that the 2026 America the Beautiful Passes will feature President Donald Trump, along with other nontraditional designs, prompted vehement reactions across social media last week.").

The Secretaries track such revenues and report funding levels to Congress triennially and use it to assess the potential effects of external factors on revenue levels. *See*, *e.g.*, ECF No. 16-16 (6TH TRIENNIAL RPT.) 29. Based on a decline in fee revenue to about $340 million in FY 2020, from about $442 million in FY 2019, the Secretaries inferred that the "in 2020 the COVID-19 pandemic and severe natural disasters resulted in a reduction to 1.1 million passes sold and about $76 million in revenue." ECF No. 16-22 (5TH TRIENNIAL RPT.) 26. Here too, with the difference in imagery being the sharpest objective difference between the 2026 Pass and all previous America the Beautiful Passes, it is reasonable to infer that a corresponding reduction in Pass sale revenues, when compared to years prior, would be partially attributable to the

31

Secretaries' use of the uniquely different Trump Image on the 2026 Pass. ECF No. 15 (Am. Compl.) ¶ 12.  There is no mechanism that would automatically cover a shortfall in Pass sale revenues to cover the costs of future maintenance and repair projects.

Hence, it is further reasonable to infer that at least some necessary maintenance, repair, and enhancement, etc. projects will not be funded and carried out, including at sites that are used by the Center's individual members, if Defendants' use of the Trump Image on the 2026 Pass results in a similarly significant reduction in revenues. *See Texas Corn Producers v. U.S. Env't Prot. Agency*, 141 F.4th 687 (2025) (reviewing tangible monetary harm that courts have consistently recognized as satisfying the injury-in-fact requirement including reductions in revenue, in which even a dollar of economic harm suffices).  The injury must be fairly traceable to the challenged action of Defendants, and not the result of the independent action of some third party not before the court, as is the situation here. *Lujan*, 504 U.S. at 560-61.

In summary, presuming that the Trump Image is depressing sales of the Annual Pass as Plaintiff alleges, the Center raises a plausible basis for economic or monetary injury-in-fact. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (per curiam) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)) ("Because the government 'challenge[s] standing at the pleading stage without disputing the facts alleged in the complaint, we accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor.'").  When accepted as true, it is plausible to conclude that the economic interests of the Center's individual members in a continued and predictable source of funding for projects that directly benefit them will be impacted in a particularized way by the Secretaries' use of the Trump Image on the 2026 Pass. ECF No. 15 (Am. Compl.) ¶ 12.

32

Such economic harm constitutes legitimate injury-in-fact.

### III.    IF THE COURT GRANTS DEFENDANTS' MOTION IT SHOULD DISMISS WITHOUT PREJUDICE AND PROVIDE LEAVE TO AMEND.

Plaintiff contends that Defendants' Motion lacks merit and must be denied.  However, should the Court decide to grant Defendants' Motion and dismiss Plaintiff's Amended Complaint, Plaintiff respectfully requests that it do so without prejudice and with leave for the Center to file a second amended complaint, Fed. R. Civ. P. 15(a)(2). *Cf. Animal Legal Def. Fund*, 111 F.4th at 1225 (noting Court's dismissal of complaint for lack of standing was without prejudice); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

### CONCLUSION

For all the foregoing reasons, Plaintiff has Article III associational standing to bring this case.  Therefore, Defendants' Motion to Dismiss must be denied.  In so doing, Plaintiff respectfully requests that the Court lift the stay of Plaintiff's Motion for Summary Judgment and order Defendants to produce an administrative record and file their response to Plaintiff's Motion for Summary Judgment within 14 days of the Court's ruling.

DATED:        June 5, 2026                Respectfully submitted,


                                          */s/ Amy Atwood*
                                          Amy R. Atwood Greenwald (D.C. Bar No. 470258)
                                          CENTER FOR BIOLOGICAL DIVERSITY
                                          P.O. Box 11374
                                          Portland, OR 97211-0374
                                          (971) 717-6401
                                          atwood@biologicaldiversity.org

Ivan Ditmars (D.C. Bar No. CA00243)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7100
iditmars@biologicaldiversity.org


*Attorneys for Plaintiff*