**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVER-
SITY,

       Plaintiff,

    v.

DOUGLAS BURGUM, SECRETARY,
U.S. DEPARTMENT OF THE INTERIOR,
et al.,

       Defendants.

Case No. 1:25-cv-4285-CJN

**REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT.....................................................................................................................1

I.      Plaintiff Fails to Establish Associational Standing ..................................................1

        A.      None of Plaintiff's alleged harms establish injury-in-fact.........................2

                i.      Plaintiff's alleged interest in a legally compliant pass is a generalized grievance.................................................................3

                ii.     Plaintiff's aesthetic and other interests fail to establish injury-in-fact...............................................................................4

                iii.    Plaintiff's reduced-revenue argument is too speculative ...............7

II.    Plaintiff's Challenge to the Interagency Pass Imagery is Not Germane to its Mission ..................................................................................................................10

CONCLUSION ................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ..................................................................................................9

*Bain v. Off. of Att'y Gen.*,
648 F. Supp. 3d 19 (D.D.C. 2022) .........................................................................................1

*Beshir v. Holder*,
840 F. Supp. 2d 379 (D.D.C. 2012) .......................................................................................7

*Bhd. of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.*,
457 F.3d 24 (D.C. Cir. 2006) ..................................................................................................6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).......................................................................................................7, 8, 9

*Common Purpose USA, Inc. v. Obama*,
227 F. Supp. 3d 21 (D.D.C. 2016) .........................................................................................2

*Ctr. for Sustainable Econ. v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ........................................................................................10, 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).............................................................................................................2, 3

*Friends of the Earth v. Laidlaw Env't Services*,
528 U.S. 167 (2000)................................................................................................................6

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)................................................................................................................3

*Huron v. Berry*,
12 F. Supp. 3d 46 (D.D.C. 2013) ..........................................................................................6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)..............................................................................................................10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................................................3

*Murthy v. Missouri*,
603 U.S. 43 (2024)..................................................................................................................8

*N.Y. Republican State Comm. v. Sec. & Exch. Comm'n*,
927 F.3d 499 (D.C. Cir. 2019) ...............................................................................................3

*Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ...............................................................................................6

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*,
   1:26-cv-10877, 2026 WL 1601790 (D. Mass. June 4, 2026) ...................................................4

*Pub. Emps. for Env't Resp. v. Zeldin*,
   174 F.4th 183 (D.C. Cir. 2026) ....................................................................................10

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016)........................................................................................................5

*Texas Corn Producers v. U.S. EPA*,
   141 F.4th 687 (5th Cir. 2025)........................................................................................9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................................................3

*Weissman v. Nat'l R.R. Passenger Corp.*,
   21 F.4th 854 (D.C. Cir. 2021) ......................................................................................5

*West v. Lynch*,
   845 F.3d 1228 (D.C. Cir. 2017) ...................................................................................8

*Winpisinger v. Watson*,
   628 F.2d 133 (D.C.Cir.1980) .......................................................................................7

**Statutes**

16 U.S.C. § 6804(a)(2) .......................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1)....................................................................................................11

Fed. R. Civ. P. 12(h)(3)....................................................................................................11

## INTRODUCTION

Plaintiff's attempt to manufacture Article III standing by claiming that the use of President Trump's image on the 2026 Interagency Pass harms their "recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests" [1] runs into roadblocks at every turn. To start, Plaintiff's asserted interest in a legally compliant 2026 Interagency pass is a generalized grievance. The purported "Hobson's Choice" its members face is simply a self-inflicted injury. Its members have not suffered any legally cognizable aesthetic or other harms. Its members' reduced-revenues argument is far too speculative to establish injury-in-fact, traceability, or redressability. And it fails to show how its members' interest in the image used on the 2026 Interagency Pass is germane to its organization purpose in protecting biodiversity. Pl.'s Mem. at 1. The Court should reject Plaintiff's attempt to litigate its aesthetic and ideological preferences and dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I.  Plaintiff Fails to Establish Associational Standing.[2]

To establish associational standing, an organization must show that (1) one of its "members has standing to sue in her own right;" (2) the interest it seeks to protect is "germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires" individual

---

[1] *See* Dkt. 29, Pl.'s Mem. Points & Auths. Opp'n to Mot. Dismiss ("Pl.'s Mem."), at 2.

[2] Because Defendants raise a facial challenge to the Court's subject-matter jurisdiction, the Court should not consider materials outside the Amended Complaint. *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 38 (D.D.C. 2022) (facial challenge disputes "whether the plaintiff pleaded facts sufficient to establish jurisdiction" and "is confined to the four corners of the complaint"); *see also* Dkt. 27-1, Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 7 n.6. The Court should thus disregard Plaintiff's references to materials outside the Amended Complaint, such as the Motion for Summary Judgment and its associated exhibits. *See* Defs.' Mem. at 5 n.4 (citing Dkt. 16).

members to participate in the lawsuit. *Common Purpose USA, Inc. v. Obama*, 227 F. Supp. 3d 21, 27 (D.D.C. 2016) (citations omitted). Plaintiff fails to show that its members have standing and that the interests it seeks to protect are germane to its organizational purpose.

### A.  None of Plaintiff's alleged harms establish injury-in-fact.

Plaintiff's asserted injuries fall into two general categories: (1) its members' so-called "Hobson's choice" between buying an Interagency Pass with an image view as "unlawful partisan activity" or foregoing the monetary and other benefits of the Interagency Pass, *see* Am. Compl. ¶ 15, Dkt. 15; and (2) its speculation that its members and the public will purchase fewer Interagency Passes because of the use of the Challenged Image, which it assumes will lead to reduced revenues and diminished visitor amenities on the federal lands its members intend to visit, *see id.* ¶¶ 11-12. But neither alleged injury suffices to support injury-in-fact.

Plaintiff's "Hobson's Choice" theory suffers from two defects. To the extent that Plaintiff asserts that its members have an interest in a "legally compliant annual pass," that is precisely the sort of generalized grievance that the Supreme Court has time and again held does not support standing. *See*, *e.g.*, *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And Plaintiff's argument that the Defendants' decision to use the Challenged Image on the 2026 Interagency Pass will harm its members' "recreational, environmental, aesthetic, monetary, economic, educational, cultural, and spiritual interests," Pl.'s Mem. at 1, fails to explain *how* that decision affects those interests. Thus, the decision by Plaintiff's members to not buy the Interagency Pass is not an Article III injury. Likewise, Plaintiff's argument that the use of the Challenged Image will lead to reduced revenues that will eventually lead to less resources being used to maintain or improve visitor facilities they rely on when visiting federal lands falls far short of

showing a "sufficiently imminent" injury necessary to support standing. *N.Y. Republican State Comm. v. Sec. & Exch. Comm'n*, 927 F.3d 499, 504 (D.C. Cir. 2019) (citation omitted).

### i. Plaintiff's alleged interest in a legally compliant pass is a generalized grievance.

Even though it is black-letter law that plaintiffs lack standing to "ensure a defendant's 'compliance with regulatory law,'" *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (citations omitted), Plaintiff claims that the Defendants' use of the Challenged Image on the 2026 Interagency Pass violates FLREA and forms the "crux of the ongoing injuries" to its members, Pl.'s Mem., at 30; *see also* Am. Compl. ¶¶ 6, 14-16, 19. But even if the Court agrees with Plaintiff's reading of FLREA, Plaintiff's asserted interest in a legally compliant Interagency Pass is no more than the "generalized grievance[s]" that the Supreme Court has "repeatedly held … no matter how sincere," are "insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). Plaintiff's desire to see FLREA administered in a particular way is a quintessential generalized grievance: a complaint about the legality of government action shared equally by all members of the public who buy or view the pass.[3] Because Plaintiff has not shown that the use of the Challenged Image harms them "in a personal and individual way," distinct from the public at large, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992), it fails to establish an injury necessary to support standing. *Hippocratic Med.*, 602 U.S. at 381 (a plaintiff "does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally.").

---

[3] Indeed, Plaintiff asks this Court to infer that the public will experience the same generalized grievance. *See* Pl.'s Mem at 31 ("Certainly, it would be implausible to assume that the Center's member declarants are the only would-be passholders in this predicament: i.e., Americans who would purchase the 2026 Pass, but are electing not to do so due to the Secretaries' use of the Trump Image.").

3

### ii.  Plaintiff's aesthetic and other interests fail to establish injury-in-fact.

*Aesthetic Interests.* Plaintiff toggles between alleging that its members have an aesthetic interest in the image used on the Interagency Pass and that its members' aesthetic interest in viewing federal lands will be diminished if they choose not to visit federal lands as often as they would if they purchased the Interagency Pass. *See*, *e.g.*, Pl.'s Mem. at 18-19 (describing Hobson's Choice its members face to "purchase a pass that will cause them ongoing aesthetic injury every time they use it" or curtail their recreational use of public lands.). Neither argument has merit. First, Plaintiff has no legally protected interest in an image that appeals to its members' aesthetic interest. *See* Defs.' Mem. at 8-10. Second, the use of the Challenged Image on the Interagency Pass in no way impairs Plaintiff's members' access, use, or enjoyment of the federal lands they desire to visit. For that reason, Plaintiff's reliance on *National Parks Conservation Association v. U.S. Dep't of the Interior (NPCA)*, No. 1:26-cv-10877, 2026 WL 1601790, at *7 (D. Mass. June 4, 2026), is inapt. In *NPCA*, the plaintiff derived aesthetic value from the historical signs that would be imminently removed from various parks. But here, unlike in *NPCA*, Plaintiff's members continue to have ac-cess to all federal lands, so the alleged aesthetic harm fails to support an Article III injury.

*Educational Interests.* Plaintiff argues that its members have an educational interest in obtaining an Interagency Pass with a contest winning image because it conforms with FLREA's purpose of educating Americans about federal public lands and waters. Pl.'s Mem. at 16-17. But Plaintiff misstates FLREA's educational mandate. *See* 16 U.S.C. § 6804(a)(2). FLREA requires that the competition—not the Interagency Pass itself—educate the public about federal recrea-tional lands and waters. *Id.* ("The competition shall be open to the public and *used as a means to educate the American people* about Federal recreational lands and waters." (emphasis added)).

Thus, contrary to Plaintiff's claim, there is no educational interest in the use of a specific image on the Interagency Pass that could form the basis of an Article III injury.[4]

*Recreational, Cultural, and Spiritual Interests.* Plaintiff also asserts largely unexplained injuries to its recreational, cultural, and spiritual interests. As for its members' recreational and spiritual interests, Plaintiff relies on blanket assertions alone to claim that those interests have been impaired. *See* Pl.'s Mem. at 1; *see generally id.* Plaintiff's asserted cultural interest fairs only slightly better—it suggests that its members may have a cultural interest in buying the pass as a collectible item. *See id.* at 16. Even so, such vague and conclusory allegations are insufficient to show "actual or imminent" injuries, nor do they constitute the types of harms that have "traditionally been regarded as providing a basis" to support Article III standing. *See Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339, 341 (2016). And as for Plaintiff's asserted cultural interest, there is no basis for converting an individual's interest in treating certain items as collectible into a legally protected interest to support standing. *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 860 (D.C. Cir. 2021) ("Some impacts on desired products are too insignificant to produce Article III harm.").

*Monetary and Economic Interests.* Plaintiff's remaining monetary and economic interests do not suffice to establish Article III injury.[5] At bottom, Plaintiff argues that its members' interests are harmed because they decided to not to buy the 2026 Interagency Pass to avoid all of the previously discussed harms to their aesthetic, educational, recreational, cultural, and spiritual harms.

---

[4] Plaintiff claims its members cannot mitigate "the impact to their educational, cultural, and aesthetic interests by obscuring the" image. Pl.'s Mem at 13. But the inability to alter a government-issued card impairs no legal right. The Interagency Pass functions exactly as Congress intended: it grants access to federal lands at a flat rate. The image itself does not restrict or burden that access. Even if there were an educational benefit in the image itself, the image is available for viewing on the Non-Resident version of the 2026 Interagency Pass, and online at https://www.sharetheexperience.org/spotlights.

[5] Plaintiff appears to refer to monetary and economic harms interchangeably. *See generally* Pl.'s Mem.

But Plaintiff fails to show any invasion of its members *legally protected interests*, so their independent decision to forego the benefits associated with the 2026 Interagency Pass and to incur more expenses visiting federal lands is purely self-inflicted and not a cognizable injury. *See Nat'l Family Planning & Reprod. Health Ass'n, v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a cognizable "injury," nor is it "fairly traceable to the defendant's challenged conduct").[6]

Plaintiff's continued reliance on *Friends of the Earth v. Laidlaw Env't Services* to show that the harms its members suffer are not self-inflicted misses the mark. *See* Pl.'s Mem. at 23. *Laidlaw* held that the plaintiffs had a concrete and particularized injury that was traceable to the defendant because the defendant discharged excessive pollutants into a river which made the resource unsafe and unpleasant. 528 U.S. at 181-83. That is, the defendant's conduct impaired the plaintiff's intended use and enjoyment of the river. But Defendants' decision here simply does not affect Plaintiff's members' ability to visit, enjoy, or use federal recreation areas. It is instead their independent decision, stemming from their personal objections to the Challenged Image, that is the source of any harm they experience. That is worlds apart from the aesthetic injuries that *Laidlaw* found sufficient to find an Article III injury.

---

[6] For similar reasons, Plaintiff fails to show that any injury it suffered was fairly traceable to Defendants' challenged conduct, rather than the independent decision of its members not to purchase the Interagency Pass. *Huron v. Berry*, 12 F. Supp. 3d 46, 52 (D.D.C. 2013) ("Causation cannot exist when the injury alleged is self-inflicted."), *aff'd sub nom Huron v. Cobert*, 809 F.3d 1274 (D.C. Cir. 2016); *Bhd. of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.*, 457 F.3d 24, 28 (D.C. Cir. 2006) (self-inflicted injuries do not support standing where they are "so completely due to the [complainant's] own fault as to break the causal chain")(citation omitted).

### iii.  Plaintiff's reduced-revenue argument is too speculative.

Standing does not exist where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect [the] alleged injury with [the challenged conduct]." *Beshir v. Holder*, 840 F. Supp. 2d 379, 382 (D.D.C. 2012) (citing *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C.Cir.1980)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (reliance on "highly attenuated chain of possibilities[] does not satisfy [Article III's] requirement that threatened injury must be certainly impending"). Yet here Plaintiff asks the Court to draw a similarly speculative chain of inferences: (1) a substantial portion of the public will share its members' alleged objections to the Challenged Image; (2) a substantial portion of their members and the public will choose to not buy the Interagency Pass; (3) this reduction in sales will not be offset by members of the public who might choose to purchase a resident Interagency Pass because they like the Challenged Image or by the members of the public who buy the non-resident Interagency Pass; (4) the reduction in sales will result in material losses of revenue to federal recreation agencies; and (5) the reduction in revenues will lead to diminished amenities at the federal lands Plaintiff's members visit and rely upon. Pl.'s Mem. at 31-32. This involves precisely "attenuated chain of possibilities" courts find insufficient to support standing. *See, e.g.*, *Clapper*, 568 U.S. at 410; *Beshir*, 840 F. Supp. 2d at 382.

***Reduced Sales.*** Despite having no basis to support this *prediction*, Plaintiff asks this court to infer that Interagency Pass sales will decline because of the Challenged Image. *See* Pl.'s Mem. at 31 (asking the court to infer that the public is in the same "predicament" as its members "who would purchase the 2026 Pass, but are electing not to do so due to the Secretaries' use of the Trump Image."). Plaintiff argues that this extraordinary inference is warranted for two reasons. First, because the image is so different from the prior passes, Plaintiff argues that it is reasonable to attribute

7

any loss in sales to the changed image. *Id.* at 31. Second, Plaintiff argues that because there was a drop in pass sales during the COVID-19 pandemic, it is reasonable to assume that the use of the Challenged Image will lead to a similar reduction in pass sales. *Id.*

Both arguments miss the mark. Plaintiff offers only conjecture to support its claim that pass sales will decrease. There are simply no plausible allegations to support Plaintiff's prediction about how its members—and the public—will respond to the use of the Challenged Image. *See Clapper*, 568 U.S. at 410. Setting aside the misplaced comparison between the COVID-19 pandemic and the changed imagery on the Interagency Pass, there are several equally plausible alternative possibilities that Plaintiff simply fails to consider—there could be no change in pass sales or pass sales could increase if members of the public like the Challenged Image. Plaintiff's reduced revenue argument thus fails to show a cognizable injury.[7]

***Impact on Maintenance.*** Plaintiff next asks this Court to infer that the use of the Challenged Image will lead to some maintenance projects not being funded or carried out. *See*, *e.g.*, Pl.'s Mem. at 32. But there is no basis to assume that revenues will drop and thus no basis for the additional inference that funding for maintenance will drop as well. Likewise, this Court has no basis to assume that this attenuated chain of possibilities will affect the specific federal lands that

---

[7] For similar reasons, this Court cannot redress Plaintiff's alleged reduced revenue injury. It is a bedrock principle that a court may not redress an injury that stems from the independent actions of a third party not before the Court. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Courts "have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id*. at 57. "Rather than guesswork, the plaintiffs must show that the third-party platforms 'will likely react in predictable ways' to the defendants' conduct." *Id.* at 57-58 (citation omitted). Even if this Court credit's Plaintiff's reduced-revenue theory, any injury to Plaintiff's members hinges on the purchasing decisions of third parties not before the Court. While the Court could theoretically order Defendant's to replace future Interagency Passes with the Glacier National Park image, it cannot assure any increase in revenue nor can it dictate how federal agencies and specific parks allocate funds or choose what projects to pursue. "When conjecture is necessary, redressability is lacking." *West v. Lynch*, 845 F.3d 1228, 1237 (D.C. Cir. 2017). Plaintiff's reduced-revenue injury rests entirely on conjecture and is thus not redressable.

Plaintiff's members plan to visit and impact their use and enjoyment of those lands. Plaintiff relies on *Texas Corn Producers v. United States Environmental Protection Agency*, 141 F.4th 687 (5th Cir. 2025), but that case lends no support to Plaintiff's speculative argument. In *Texas Corn Producers*, the Court held that the Environmental Protection Agency's promulgation of a regulation that intended to decrease demand for gasoline products caused an economic harm sufficient to support standing. *Id.* at 696. But unlike in *Texas Corn Producers*, there is no evidence of any sufficiently imminent reduction in revenues or any reduced funding to projects or maintenance activities that could impair Plaintiff's members' use and enjoyment of any federal lands.

In sum, Plaintiff's alleged injury stemming from reduced revenues rests solely on its prediction, which is subject to a "more rigorous burden" to establish standing. *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015); *see also Clapper*, 568 U.S. at 408. While the Court takes the complaint's allegations "of facts, historical or otherwise demonstrable," as true, it treats 'allegations that are really predictions' differently." *Id*. "When considering any chain of allegations for standing purposes," the Court "may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)," as well as predictions of future injury that are "not normally susceptible of labelling as 'true' or 'false.' " *Id*. The Court should decline to accept these baseless predictions as true to establish standing.

*    *    *

In sum, because Plaintiff has not shown that any of its members have Article III standing to challenge the Interagency Pass, it failed to carry its burden to establish jurisdiction. *See*

9

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For this reason, the Court should grant Defendants' motion to dismiss with prejudice.

## II.  Plaintiff's Challenge to the Interagency Pass Imagery is Not Germane to its Mission.

Even if Plaintiff had shown that one of its members had Article III standing, Plaintiff would still fail to establish associational standing because its members' aesthetic and other interests in the Interagency Pass are not germane to Plaintiff's organizational purpose. Pl.'s Mem. at 1, 26; *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015). "Associational standing rests on the assumption that there is a meaningful alignment of an organization's interests and the interests of a constituency that the organization seeks to protect." *Pub. Emps. for Env't Resp. v. Zeldin*, 174 F.4th 183, 188 (D.C. Cir. 2026). This alignment is apparent "where the organization's purpose is to advance the interests of its members, those members are the primary beneficiaries of its activities, and the organization is sufficiently subject to their influence to ensure it represents their views." *Id.* (citations omitted).

Plaintiff alleges that its purpose is dedicated to protecting endangered species. Pl.'s Mem. at 1; *see also* Am. Compl. ¶ 10 ("The Center's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through education, science, policy, and environmental law."). But Plaintiff fails to explain how the image on the Interagency Pass is related to its organizational mission to protect biodiversity. Instead, Plaintiff simply asserts that "protecting public lands" is critical to its work, *id.* at 26, and that "a public engaged and educated about the value of public lands for recreation and wildlife

habitat, as fostered by the [Interagency Pass], furthers the center's mission to protect these public lands." *Id.* at 26 (citing Dkt. 16-4).

Nothing in Plaintiff's Amended Complaint alleges that the image used on the Interagency Pass affects federal lands' biodiversity. Nor do any of Plaintiff's listed organizational interests have anything to do with the aesthetic presentation or graphic design of the Interagency Pass. *See* Pl.'s Mem. at 1 n.1. And finally, Plaintiff's mission does not say anything about ensuring that the image used on the Interagency Pass is aesthetically pleasing or politically neutral. *Id.*

While the germaneness requirement is "modest," it is important to prevent "litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care." *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015) (citations omitted). Here, Plaintiff's members' objections are not germane to its organizational interest. Rather, they are individualized, subjective reactions to the Challenged Image by some of Plaintiff's individual members. In other words, it is the policy preference of some of Plaintiff's individual members dressed up as mission-related advocacy. Plaintiff thus fails to satisfy the second prong of the associational standing test.

## CONCLUSION

Plaintiff failed to establish Article III standing, so this Court should dismiss Plaintiff's Amended Complaint with prejudice.[8] *See* Fed. R. Civ. P. 12(b)(1), (h)(3) .

Respectfully submitted this 12th day of June, 2026.

---

[8] Plaintiff asks the Court for another chance to amend its complaint if this Court grants Defendants' motion. Pl.'s Mem. At 33. Even though Rule 15(a)(2) requires courts to grant leave to amend "when justice so requires[,]" it does not require the Court to do so when, as here, it would be futile. Plaintiff has already had two bites at the apple, this Court should not grant it a third. As explained above, Plaintiff cannot establish Article III standing, so dismissal with prejudice is appropriate.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

PETER M. TORSTENSEN, JR.,
Deputy Assistant Attorney General

*/s/ Jennifer A. Najjar*
JENNIFER A. NAJJAR, Trial Attorney (CO 50494)
ALEXA V. PENALOSA, Trial Attorney (AZ 038005)
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tele: (202) 598-9032 (Najjar)
Jennifer.najjar@usdoj.gov

*Attorneys for Defendants*

12